# EXHIBIT B

Hearing Date: No hearing scheduled.
Location: <<CourtRoomNumber>>
Judge: Calendar, 4

Case: 1:25-cv-04443 Document #: 37-3 Filed: 09/09/24 Page 2 of 28 PageID #:237

FILED
8/2/2024 6:02 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH00675
Calendar, 4
28794525

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

|  |  |  |
|---|---|---|
| RAYMOND E. BUTLER II | ) | |
| | ) | |
| Plaintiff, | ) | No. 2022 CH 675 |
| | ) | |
| V. | ) | |
| | ) | |
| ILLANA EDDI & ELY EDDI, | ) | Hon J. Alison C. Conlin |
| Individually and as Trustees of the | ) | |
| Jack Finn Irrevocable Trust | ) | |
| | ) | |
| Defendants. | ) | |

### PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE

Plaintiff Raymond E. Butler II ("Mr. Butler" or "Plaintiff"), by and through his attorney presents his Memorandum in Opposition to Defendants' Motion for Summary Judgment filed with this Court on March 25, 2024, and in support states as follows:

### INTRODUCTION

Defendants' motion for summary judgment should be denied for both procedural and substantive reasons. First Defendants' motion for summary judgment should be stricken for failure to present undisputed material facts and arguments warranting summary judgment. Second Defendants' arguments for summary judgment are premature and rely upon the disputed fact that all trusts in this matter have been produced. Discovery in this matter is still ongoing, and Plaintiff has yet to receive all pertinent documents and information essential for a fair determination. Despite the Defendants' claims that all trust documents have been produced, Plaintiff has obtained other identified trusts that were not disclosed by the Defendants. Further Defendants have moved for summary judgment with contradicting arguments that Mr. Butler was never a beneficiary but that he had somehow waived these rights as September 2009.

1

The entire basis of Defendants' motion rests on the erroneous assumption that all relevant trusts have been disclosed. This assumption is directly contradicted by the undisputed fact that a 2009 disbursement was made to Plaintiff as a beneficiary of a trust created by Jacob A. Finn a/k/a "Jack Finn." Moreover, Defendants' argument that all trusts have been produced is disputed by its own argument that Plaintiff waived his interest in a trust created by Jacob Finn aka Jack Finn.

Further, Defendants' reliance on a purported release, which they claim Plaintiff signed, is not supported by any affidavit. Plaintiff's submitted affidavits and discovery in this matter dispute the authenticity and validity of this release. Specifically, Plaintiff's evidence indicates that the release was created by Defendant's attorney Jeffrey Gutman, and Plaintiff has no recollection of ever knowingly signing a document of this nature. Coupled with Defendants' failure to provide the original release document and their inability to offer any evidence of who authored the release, there are significant questions about the releases' authenticity and relevance.

Given these substantial issues of fact, including the existence of the 2009 disbursement and the questionable validity of the release, Defendants' motion for summary judgment must be denied. The absence of affidavits to support their arguments further underscores the premature nature of their motion. As the non-moving party, Plaintiff is entitled to a full and fair opportunity to complete discovery and present his case. Accordingly, Plaintiff respectfully requests that this Court deny Defendants' motion for summary judgment or strike it for failure to present any undisputed material facts.

## PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Jacob Aaron Finn is also known as "Jack Finn" ("Jack Finn"). Aff. of Pessa Finn at ¶2 ("Exhibit A").

2. Plaintiff Raymond E. Butler II is the beneficiary of a trust established by Jack Finn.

3. Defendants Illana Eddi and Ely Eddi are trustees of at least one of the trusts established by Jack Finn. Sep. 21, 2009 disbursement ("Exhibit B").

2

4. On September 21, 2009, a disbursement occurred which listed Plaintiff as a beneficiary. Ex. A at ¶8; Aff. of Raymond Butler at ¶7 ("Exhibit C"); Aff. of Hannah Finn at ¶3 ("Exhibit D").

5. The September 21, 2009 directions to disburse identify Plaintiff as a beneficiary and Defendants as trustees of a trust funded with capital. Ex. C at ¶9; Ex. A at ¶12; Ex. D at ¶7.

6. Not all trusts in this matter have been produced.

7. None of the disclosed trusts meet the criteria set forth in the directions to disburse.

8. Defendants do not possess a copy of all relevant trust documents.

9. Throughout his life, Jack Finn created numerous trusts. The following is a list of trusts created on the following dates:

   a. November 14, 1990 "Illana Finn Irrevocable Trust"
   b. December 3, 1993 "Jack and Pessia Finn Irrevocable Trust"
   c. December 3, 1993 "Jack Finn Irrevocable Trust"
   d. May 11, 1994 "Jack Finn Self Declaration of Trust"
   e. May 11, 1994 "Pessie Finn Irrevocable Trust"
   f. June 21, 1996 "Jack Finn Irrevocable Trust"
   g. June 21, 1996 "Jack Finn Self Declaration of Trust"
   h. May 12, 2004 "Jack Finn Marital Trust"
   i. September 25, 2007 "Jacob A. Finn a/k/a Jack Finn Revocable Trust"
      - established by Jeffrey Gutman.

10. In February 2023, Plaintiff Raymond Butler obtained the 1990 Illana Finn Irrevocable Trust and both 1994 irrevocable trusts. Ex. C at ¶15.

11. Pessa Finn was present at the September 21, 2009 disbursement. Ex. A at ¶11.

12. Hannah Finn was present at the September 21, 2009 disbursement. Ex. D at ¶6.

13. Silver Finn was present at the September 21, 2009 disbursement. Ex. D at ¶6.

14. Defendants' attorney Jeffrey K. Gutman oversaw the signing of the September 21, 2009 disbursement. Ex. A at ¶12; Ex. D at ¶7.

15. On September 21, 2009, Jeffrey Gutman oversaw the finalizing and signing of documents to for the divorce between Jack Finn and Pessi Finn. Ex. C at ¶15.

16. In addition to Raymond Butler, Raymond Butler's biological sister Shoshanna Finn aka Silver Finn received money from Jack on September 21, 2009. Ex. A at ¶14; Ex. D at ¶8.

17. Defendants claimed only two trust documents existed when they filed their motion for summary judgment. Defs' Mtn. for Summ. J.

3

18. An original version of the purported release signed by Raymond Butler on September 23, 2009, has not been produced. Ex. C at ¶12.

19. Raymond Butler has no recollection of signing the purported release dated September 23, 2009. Ex. C at ¶12.

20. Raymond Butler was not informed at any point in time that he was waiving his rights as a beneficiary to a trust. Ex. C at ¶12.

21. Defendants have not provided an affidavit from Jeffrey Gutman regarding the September 21, 2009 disbursement.

22. Defendants have not provided an affidavit from Jeffrey Gutman regarding the September 23, 2009 release.

23. Defendants have not provided an affidavit from Ilana Finn Eddi regarding the September 21, 2009 disbursement.

24. Defendants have not provided an affidavit from Ilana Finn Eddi regarding the September 23, 2009 release.

## LEGAL STANDARD

Summary judgment is only appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005 (West 2016). Although summary judgment is encouraged as an aid in the expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation and should only be allowed when the right of the moving party is clear and free from doubt. *Loyola Acad. v. S & S Roof Maintec, Inc.*, 146 Ill. 2d 263, 271(1992). The purpose of summary judgment is not to try a question of fact but to determine if one exists. *Robidoux v. Oliphant*, 775 N.E.2d 987, 994 (Ill. 2002).

In determining whether moving party is entitled to summary judgment, court must construe pleadings, depositions, admissions and affidavits strictly against movant and liberally in favor of opponent. *Loyola Acad.*, 146 Ill. 2d 263. As the non-moving party, Plaintiff is not required to prove his case at the summary judgment stage. *Allegro Serv. Ltd. v. Metrop. Pier & Expo. Auth.*, 172 Ill.2d 243, 256 (Ill. 1996). Affidavits in support of, and in opposition to, a motion for summary

4

judgment must be made on the personal knowledge of the affiants and set forth with particularity the facts upon which the claim, counterclaim, or defense is based. 145 Ill.2d R. 191(a).

Affidavits serve as a substitute for testimony at trial, necessitating strict compliance with Rule 191(a) to ensure that trial judges are presented with valid evidentiary facts upon which to base a decision. *Robidoux*, 775 N.E.2d at 994 (citing *Fooden v. Bd. of Gov. of State Colleges & Univ.*, 48 Ill.2d 580, 587 (Ill. 1971)). Defendants' failure to provide such affidavits to establish the authenticity and reliability of the documents relied upon precludes the granting of summary judgment in their favor.

## ARGUMENT

Defendants motion for summary judgment rests on the unsupported assumptions that all applicable trusts in this matter have been tendered and that a September 23, 2009 release purportedly signed by Plaintiff is a valid and authentic document. Despite their claims and conclusory arguments, Defendants failed to present any undisputed facts entitling them to summary judgment. Here, the Defendants fail to present any material facts supported by references to affidavits or the record that establish that all relevant trusts in this matter have been produced and that the September 23, 2009 release is an authentic document. *U.S. Bank, Nat. Ass'n v. Avdic*, 2014 IL App (1st) 121759 at ¶22 (noting that "affidavits submitted in support of a motion for summary judgment must be based on personal knowledge, set forth specific facts, and attach sworn or certified copies of relevant documents.").

Further, the Defendants' "even if" argument that Plaintiff waived his rights as a beneficiary establishes an issue of fact that renders summary judgment in appropriate at this time. Specifically, Defendants claim that all relevant trusts have been disclosed, yet ignore the fact that none of the identified trusts account for the 2009 disbursement naming Plaintiff as a beneficiary. Further, Defendants initially asserted only two trusts existed when they filed this motion, but discovery has

5

since revealed additional trusts. The failure to produce a relevant trust document and accounting for Plaintiff's 2009 disbursement prevents summary judgment and raises an issue of material fact as to whether all trusts have been produced in this matter.

Moreover, the authenticity of the purported September 23, 2009 release is in serious doubt. Plaintiff does not recall signing this release and was never informed that he was waiving any rights. Throughout this matter, Defendants have not produced the original September 2009 release agreement or an affidavit from the attorney overseeing the transaction. This lack of verification raises significant concerns about the 2009 release's authenticity as a genuine document, and thus cannot be a basis for a motion to dismiss. Plaintiff is also obtaining a document expert to challenge the release's authenticity, and thus should be permitted the opportunity to present this evidence to a fact finder. Due to these unresolved issues, Defendants' motion for summary judgment should be denied.

**I.      Defendants Motion for Summary Judgment Should be Stricken for Failure to Present Any Material Facts or Any Affidavits to Support Their Motion for Summary Judgment.**

Defendants' motion for summary judgment fails to present any material facts in that are supported or presented in a manner that can be responded to. Specifically, Defendants have not supported their motion with affidavits or specific references to the record to present material facts, as required by Illinois Supreme Court Rule 191(a). Defendants' failure to provide such affidavits to establish the authenticity and reliability of the documents relied upon precludes the granting of summary judgment in their favor. Due to this, the Defendants' motion should be denied because it fails to establish any material facts in compliance with Rule 191(a).

Rule 191(a) mandates that affidavits submitted in support of, or in opposition to, a motion for summary judgment:

> shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim,

6

counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all papers upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto.

145 Ill.2d R. 191(a). This rule ensures that trial judges are presented with valid evidentiary facts upon which to base a decision. *Robidoux v. Oliphant*, 775 N.E.2d 987, 994 (Ill. 2002).

In the present case, Defendants fail to provide any affidavits or specific references to the record that would establish the authenticity of the documents they are relying upon. *U.S. Bank, Nat. Ass'n*, 2014 IL App (1st) 121759 at ¶22. ("The circuit court may not consider evidence that would be inadmissible at trial when assessing a motion for summary judgment."). For example, Defendants rely heavily on a purported release signed by Plaintiff on September 23, 2009 to support their argument for summary judgment. However, Defendants have not identified or provided an affidavit from the purported author of the agreement or the attorney that oversaw the transaction. This absence of other affidavits raises significant questions about the authenticity and validity of the September 23, 2009 release purportedly signed by Plaintiff, and thus cannot be a basis for summary judgment.

Despite this, documents and testimony obtained by Plaintiff indicate that Defendants' counsel was the author of the purported release and oversaw the 2009 disbursement that named Plaintiff as a beneficiary. Based on the affidavits of the Plaintiff, Pessie Finn, Hanna Finn, and a release signed by Pessia Finn dated September 21, 2009, by Defendants' attorney, Jeffrey Gutman, oversaw the signing of the disbursement to Plaintiff. *See* Undisputed Material Facts, *supra* at ¶¶14-15 ("UMF"). Given the proximity to the disbursement and the divorce settlement by Pessa Finn both taking place on September 21, 2009, it appears that Defendants' counsel could also have been the author of the purported September 23, 2009 release.

7

The Illinois Supreme Court emphasizes the necessity of strict compliance with Rule 191(a) in the summary judgment context to ensure that the court is presented with valid evidentiary facts. *Roubidoux*, 201 Ill. 2d 324, 336 ("[I]t is necessary that there be strict compliance with Rule 191(a) "to insure that trial judges are presented with valid evidentiary facts upon which to base a decision."). In the absence of affidavits and specific references to the record, Defendants' motion for summary judgment is procedurally deficient and should be stricken because it fails to present evidence authenticating the documents it relies upon by providing testimony from the document's author a witness of knowledge about the signing of the release. In addition, there is an issue of fact as to whether this document is legitimate or a forgery based on Plaintiff's testimony that he never signed the document. UMF at ¶¶18-19.

Therefore, due to the lack of supporting affidavits and the failure to present specific references to the record to establish material facts, Defendants' motion for summary judgment should be denied as procedurally improper.

## II. Defendant's Fail to Establish Grounds for Summary Judgment Based on the 1993 Trust.

In addition to failing to present undisputed material facts to authenticate the documents they rely upon, Defendants' motion for summary judgment is rife with contradictions and unsupported assertions. Defendants claim that all relevant trusts have been produced, yet none of these documents account for the 2009 disbursement naming Plaintiff as a beneficiary. Initially asserting the existence of only two trusts at the filing of their motion for summary judgment, Defendants have since been contradicted by the identification of additional trusts through discovery. Further, the produced trusts, from either party, fail to explain the 2009 disbursement. Moreover, Defendants' "even if" argument tacitly concedes Plaintiff's beneficiary status, undermining their position. Defendants cannot dismiss the undeniable fact of the 2009 disbursement without providing the relevant trust documentation and accounting. Defendants

failure to produce such evidence strongly suggests that all trust documents have been produced is factually disputed.

Plaintiff acknowledges that the Amended Complaint refers generally to the "Jack Finn Irrevocable Trust" without specifying which trust he claims as a beneficiary. This lack of specificity stems from Defendants' own failure to disclose all relevant trust documents. Plaintiff has identified multiple trusts through discovery. The identification of these trusts raises significant questions about the completeness and accuracy of Defendants' disclosures.

Defendants' assertion that Plaintiff is not a named beneficiary under the 1993 and the 1996, Jack Finn Irrevocable Trust is contradicted by the undisputed fact of a 2009 disbursement listing Plaintiff as a beneficiary. UMF at ¶¶ 11-15. This disbursement, was reportedly overseen by Defendants' attorney Jeffrey Gutman, and was the in the presence of witnesses Pessa Finn and Hanna Finn; who are prepared to testify regarding Plaintiff's beneficiary status and the absence of mistake that day. The existence of this disbursement suggests that additional trust documents relevant to Plaintiff's claims have not been produced by Defendants.

Moreover, Defendants' assertion that Plaintiff has no evidence of being a beneficiary under the December 3, 1993, trust is misleading. Plaintiff has repeatedly requested complete trust documentation and sought discovery from third parties to which the Defendants objected to. The fact that additional trusts have been identified, none of which account for the 2009 disbursement, demonstrate that the Defendants are not entitled to summary judgment based on an incomplete record.

In addition, Defendants' argument that the December 3, 1993, Jack Finn Irrevocable Trust excludes Plaintiff as a beneficiary if he is not legally adopted fails to address the existence of other trusts and the possibility that Plaintiff may be a beneficiary under those trusts. The identification of multiple trusts through discovery undermines the claim that Plaintiff is not entitled to benefit

from any of Jacob Finn aka Jack Finn's trusts. UMF at ¶¶9-10. As a result, the language of the December 3, 1993, trust cannot be dispositive of Plaintiff's claims without considering the full scope of Jack Finn's estate planning documents and all related trusts, which Defendants have failed to produce or have objected to producing under attorney-client privilege.

Finally, Defendants' "even if" argument, which concedes that Plaintiff might be a beneficiary, is internally contradictory and undermines their position. Defendants cannot claim and simultaneously argue that Plaintiff is not a beneficiary, while conceding the possibility that he is. This inconsistency highlights the need for a thorough examination of all relevant trust documents and further highlights the issues of fact supporting the denial of Defendants' motion for summary judgment.

In summary, Defendants' motion for summary judgment is procedurally and substantively flawed. The failure to establish that all relevant trust documents and accounting have been produced, the existence of a 2009 disbursement naming Plaintiff as a beneficiary, and the contradictory nature of Defendants' arguments all demonstrate that there are genuine issues of material fact that preclude summary judgment. Plaintiff respectfully requests that this Court deny Defendants' motion for summary judgment and allow this case to proceed to trial.

III. **The September 23, 2009 Release's Authenticity Issues and Surrounding Context of the Release Prevent Summary Judgment.**

As noted above, Defendants' assertion that Plaintiff fully released them from all claims related to any Jack Finn Trust cannot be the sole basis for summary judgment due to significant questions surrounding the authenticity and validity of the purported release. Plaintiff does not recall signing this release and contends that he would not have if he had been, but, assuming *arguendo* even if he did: (1) he was not provided with any notice or information regarding the rights he was allegedly waiving; (2) he did not have independent counsel from the trustees; and (3) consideration was not fairly provided. UMF at ¶¶18-20. Defendants have not produced the

10

original version of the release or an affidavit from the author or attorney that oversaw the transaction. UMF at ¶18. This failure to provide the original and the Plaintiff's testimony raises serious concerns about the release's authenticity. Courts consistently hold that releases must be scrutinized closely to ensure they were executed knowingly and voluntarily. *Carlile v. Snap-On Tools*, 271 Ill. App. 3d 833, 839 (1995) (noting that courts should review a financial release's "surrounding circumstances to ascertain whether it was fairly made and accurately reflected the intention of the parties.") (internal citation omitted).

The circumstances under which the release was allegedly signed further undermine its validity. Per Plaintiff's affidavit, Plaintiff has "never been in a situation where someone told me that I was waiving my right to receive money from a trust." Ex. C at ¶12. Even if there was an affidavit authenticating the agreement, the circumstances and nature of Plaintiff's testimony preclude summary judgment as a matter of law.

Furthermore, Defendants' reliance on the release is internally contradictory. Defendants argue that Plaintiff released all claims against them yet acknowledge the existence of a 2009 disbursement naming Plaintiff as a beneficiary. Discovery suggests that Defendants' attorney Jeffrey Gutman oversaw the disbursement that was witnessed by Pessa Finn and Hanna Finn. The witnesses' testimony suggests a lack of mistake and that additional trust documents relevant to Plaintiff's claims have not been produced by Defendants--further calling into question the completeness of the information provided to Plaintiff at the time of the purported release.

Defendants' argument that the release was executed in connection with Jack Finn and Pessa Finn's divorce obligations is irrelevant to Plaintiff's claims. The release of obligations between Jack and Pessa Finn does not affect Plaintiff's rights as a beneficiary under any Jack Finn trust. The fact that Pessa Finn signed a release related to her divorce settlement does not bind Plaintiff or affect his legal claims.

11

Moreover, the Trustees' assertion that they are unaware of why the Second Direction to Disburse was directed to them underscores the incomplete and inadequate disclosure of relevant trust documents. Defendants' own statements indicate they have not provided a full accounting of all relevant trust documents, which is essential for determining the validity of any purported release.

Additionally, Plaintiff is in the process of obtaining a document expert to challenge the authenticity of the purported release. Plaintiff should be entitled to present this expert evidence to a fact finder to determine the document's validity and enforceability. The examination of this expert evidence is crucial in resolving the significant questions surrounding the purported release.

In light of these substantial issues of fact and the lack of clear, authentic evidence supporting the validity of the purported release, Defendants' motion for summary judgment should be denied. Defendants have failed to meet their burden of proving that the release was executed knowingly and voluntarily. Plaintiff respectfully requests that this Court deny Defendants' motion for summary judgment and allow this case to proceed to trial, where the authenticity and validity of the purported release can be thoroughly examined, including the presentation of expert evidence challenging the document.

IV. **Defendants' Statute of Limitations Argument Relies Entirely on the Validity of the Purported September 23, 2009 Release.**

Defendants' assertion that the statute of limitations bars Plaintiff's claims is unfounded and fails to consider the critical issues regarding the authenticity and completeness of the relevant trust documents. Defendants argue that Plaintiff's claims are barred by the ten-year statute of limitations under 735 ILCS 5/13-206. However, Defendants' statute of limitations argument fails because it is premised on the assumption that Plaintiff was fully informed of his rights and the existence of all relevant trust documents at the time the purported release was signed.

12

Plaintiff has consistently maintained that he did not sign the purported September 23, 2009 release, and thus this is a disputed fact that prevents summary judgment on Defendants' statute of limitations argument. Further, Defendants fail to provide any evidence or an affidavit establishing the authenticity of the September 23, 2009 release or evidence establishing that Plaintiff was provided with the necessary information regarding his beneficial interest or the relevant trust documents when he purportedly signed the release. Even if the agreement was valid, without full disclosure, Plaintiff could not have knowingly waived his rights or be aware of any cause of action that might have accrued. As a result, the purported release agreement without a supporting affidavit or documentation that Plaintiff was advised of his rights, cannot support Defendants' claim for summary judgment.

Further, Defendants' reliance on the purported release to negate their obligation to provide an accounting is misplaced. As previously discussed, the release's authenticity and validity are in serious doubt. Plaintiff is in the process of obtaining a document expert to challenge the purported release, and this expert testimony is crucial in determining the document's validity. Until the authenticity of the release is established, it cannot serve as a basis for dismissing Plaintiff's claims on statute of limitations grounds.

Defendants' statute of limitations argument also ignores the fact that Plaintiff identified additional trust documents through discovery that were not initially disclosed by Defendants. The existence of these additional trusts, coupled with the 2009 disbursement naming Plaintiff as a beneficiary, suggests that Plaintiff's claims are based on ongoing and continuous breaches of fiduciary duty that extend beyond the date of the purported release. Continuous breaches or concealment of relevant information can toll the statute of limitations, allowing Plaintiff to file his claims within a reasonable period after discovering the breaches. *Doe v. Hastert*, 2019 IL App (2d) 180250, at ¶40 ("*Hastert*").

Finally, Defendants' argument that Plaintiff was required to file suit by September 21, 2019, fails to account for the discovery rule, which tolls the statute of limitations until the Plaintiff knows or reasonably should know of his injury and its wrongful cause. *Hastert*, 2019 IL App (2) 180250, at ¶40 ("To claim the benefit of equitable estoppel, a plaintiff must have had no knowledge or means of knowing the true facts within the applicable limitations period."). Given that Plaintiff was not fully informed of his rights or the existence of all relevant trust documents and the death of Jacob Finn, the statute of limitations should be tolled until Plaintiff had the opportunity to uncover the true extent of Defendants' actions and omissions.

In light of this dispute of material fact, Defendants' statute of limitations argument is insufficient to bar Plaintiff's claims. The unresolved questions regarding the authenticity of the purported release, the incomplete disclosure of relevant trust documents, and the potential for continuous breaches of fiduciary duty necessitate a full examination of the facts at trial. Plaintiff respectfully requests that this Court deny Defendants' motion for summary judgment and allow this case to proceed, ensuring that all material facts are thoroughly examined.

V.     **Defendants Arguments Related to the 1996 Trust Fail for the Same Reasons as the Defendants Arguments Related to the 1993 Trust.**

Defendants' argument that Plaintiff is not a named beneficiary of the June 21, 1996 Jack Finn Irrevocable Trust is also fundamentally flawed for the same reasons as Defendants' arguments related to the 1993 Trust.

First, Defendants' reliance on the exclusionary language within the June 21, 1996 trust document does not negate Plaintiff's claims. While the trust document specifies that foster children, including Plaintiff, shall benefit from the trust only if they are legally adopted, this provision must be scrutinized in light of the full context. The existence of additional trust documents and the 2009 disbursement naming Plaintiff as a beneficiary significantly undermines the Defendants' argument that the 1993 or the 1996 trusts are the only ones in operation.

14

Plaintiff presents evidence that the September 21, 2009 disbursement was overseen by Defendants' attorney Jeffrey Gutman, along with the presence of witnesses Pessa Finn and Hanna Finn. These facts indicate a lack of mistake and that Plaintiff is recognized as a beneficiary of some trust created by Jacob Finn a/k/a "Jack Finn." This disbursement suggests that there are other trust documents relevant to Plaintiff's claims that have not been produced by Defendants, further calling into question the completeness of the information provided by them. Despite Defendants' attorney's role as a key witness in this matter, Defendants' attorney has objected to producing any additional documents on attorney client privilege or has claimed that he was never in possession of any relevant documents.

Furthermore, the Defendant Ilana Finn Eddi's assertion that she is not aware of why the Second Direction to Disburse was directed to them highlights the incomplete and inadequate disclosure of relevant trust documents provided by Defendant. Defendants' own arguments indicate they have not provided a full accounting of all relevant trust documents, which is essential for determining Plaintiff's status as a beneficiary. As a result, summary judgment cannot be granted because there is a factual issue as to whether all relevant trust documents have been produced.

Additionally, Plaintiff is in the process of obtaining a document expert to challenge the authenticity and validity of the purported release. This expert evidence is crucial to determining whether Plaintiff knowingly and voluntarily waived his rights. Plaintiff should be entitled to present this evidence to a fact finder, as it directly impacts the legitimacy of Defendants' exclusionary claims.

Finally, Defendants' motion overlooks the principle that a trustee has an ongoing duty to provide a full and accurate accounting to all beneficiaries. Even if the specific language in the 1993 and 1996 trusts sought to exclude Plaintiff, the factual context, including the recognition of Plaintiff as a beneficiary in the 2009 disbursement, necessitates a thorough examination.

Continuous breaches or concealment of relevant information can toll the statute of limitations and extend the period within which Plaintiff can seek an accounting.

In light of these substantial issues, Defendants' argument that Plaintiff is not a beneficiary of the June 21, 1996 Jack Finn Irrevocable Trust fails. The unresolved questions regarding the authenticity of the purported release, the incomplete disclosure of relevant trust documents, and the potential for continuous breaches of fiduciary duty necessitate a full examination of the facts at trial. Plaintiff respectfully requests that this Court deny Defendants' motion for summary judgment and allow this case to proceed, ensuring that all material facts are thoroughly examined.

<u>CONCLUSION</u>

For the reasons stated above, Defendants' motion for summary judgment should be denied or stricken for failure to comply with Rule 191(a). Defendants have failed to present any affidavits or specific references to the record to support their motion, as required by Illinois Supreme Court Rule 191(a). Additionally, the contradictions and unsupported assertions regarding the 1993 and 1996 trusts, the unresolved authenticity issues surrounding the purported September 23, 2009 release, and the improper application of the statute of limitations all demonstrate that there are genuine issues of material fact that preclude summary judgment. Plaintiff respectfully requests that this Court deny Defendants' motion and allow this case to proceed with discovery, ensuring a thorough examination of all relevant facts and evidence. Therefore, for the foregoing reasons, Plaintiff respectfully request this Court to deny Defendants' motion for summary judgment with prejudice and award such other and further relief as this Court deems just and equitable.

Dated: August 2, 2024

Respectfully submitted,

/s/ *Benjamin C.R. Lockyer*
Benjamin C.R. Lockyer
Lockyer Law LLC
6515 W. Archer Ave.
Chicago, Illinois 60638
ben@lockyerlaw.com

16

(773) 340-0011

*Attorney for Raymond E. Butler II*
*Plaintiff*

17

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

|  |  |  |
|---|---|---|
| RAYMOND E. BUTLER II | ) ) ) ) | |
| Plaintiff, | ) ) | No. 2022 CH 675 |
| v. | ) ) ) | |
| ILLANA EDDI & ELY EDDI, Individually and as trustees of the Jack Finn Irrevocable Trust | ) ) ) ) ) | Hon J. Alison C. Conlin |
| Defendants. | ) | |

### AFFIDAVIT OF PESSA FINN

I, Hannah Finn, stating under the penalty of perjury declare that if called to testify, I would state as follows:

1. My name is Pessa Finn, and I am over the age of 18 and competent to testify to the matters stated herein.

2. I am the ex-wife of Jacob Finn a/k/a "Jack Finn" and am the stepmother of Illana Finn Eddi. I am also the foster mother of Raymond Butler, and view Raymond as my son.

3. I was married to Jack Finn for 24 years, from 1985 to 2009.

4. Prior to our marriage, Jack was a door-door heating oils salesman. Jack came into wealth around our marriage.

5. During our marriage, Jack Finn was friends with Raymond, Hannah, and Silver's grandfather, Jonas Neufeld.

6. Throughout our marriage, Jack created numerous trusts for the benefit of himself, his children, and his former wives.

7. During our marriage, I attended various meetings with lawyers and accountants about Jack's trusts and estate.

8. On September 21, 2009, I was present at a disbursement event where Plaintiff Raymond E. Butler II was listed as a beneficiary.

9. I was present that day to sign off on the trust and formalize my divorce with Jack.

10. Present at the meeting was myself, Jack, Raymond, my daughters Silver, Hannah, and Illana (via phone), and Mr. Gutman.

1



11. That day, I travelled from Milwaukee to the office of Jack's attorney Jeffrey Gutman.

12. Mr. Gutman was present and was the attorney that oversaw the trust disbursement to Raymond and Silver.

13. Hannah Finn was also present at the September 21, 2009 disbursement.

14. Defendants' attorney, Jeffrey K. Gutman, oversaw the signing of the disbursement on September 21, 2009.

15. Mr. Gutman also oversaw the signing and finalizing of my divorce with Jack on September 21, 2009.

16. In addition to Raymond E. Butler II, Raymond Butler's biological sister, Shoshanna Finn (also known as Silver Finn), received a trust disbursement on September 21, 2009.

17. Jack Finn and I were on very good terms after our divorce, and I helped him significantly. However, after Illana gained Power of Attorney over Jack Finn's finances, she placed him in a nursing home and restricted my access to him.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: July 30, 2024

*Pessa Finn* _____
Pessa Finn

2

# Butler v. Eddi--Pessa Finn Affidavit

Final Audit Report　　　　　　　　　　　　　　　　　　　　　2024-08-02

| Created: | 2024-08-02 |
|---|---|
| By: | Benjamin Lockyer (ben@lockyerlaw.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAfj7sm7_oW2bVyW_ImYjlcvfYCbVVPhvd |

## "Butler v. Eddi--Pessa Finn Affidavit" History

Document created by Benjamin Lockyer (ben@lockyerlaw.com)
2024-08-02 - 9:28:28 PM GMT

Document emailed to Pessa Finn (pkf120@gmail.com) for signature
2024-08-02 - 9:28:32 PM GMT

Email viewed by Pessa Finn (pkf120@gmail.com)
2024-08-02 - 9:29:04 PM GMT

Document e-signed by Pessa Finn (pkf120@gmail.com)
Signature Date: 2024-08-02 - 9:29:36 PM GMT - Time Source: server

Agreement completed.
2024-08-02 - 9:29:36 PM GMT

**Adobe Acrobat Sign**

## JACK FINN IRREVOCABLE TRUST
## FORM OF DIRECTION TO DISBURSE

To:    Trustee of Jack Finn Irrevocable Trust ("Trust")
Illana Eddy, Trustee
Ely Eddy, Trustee
Fax No: (732)-346-1825

You are hereby requested and directed to disburse to Raymond E. Butler the sum of Thirty Thousand Dollars ($30,000). The undersigned release and hold harmless Illana Finn Eddi, and Ely Eddi, individually and as Trustee for any claims of any kind in connection with this distribution. The undersigned represents that this distribution from the Trust is made at the request and with the consent of Jack Finn, Silver Butler-Finn, and Helen Butler-Finn to disburse the funds as follows:

By Wire Transfer to: Chase Bank- Account Name: Shoshana Finn and Jack Finn- funds being deposited in this account and then delivered to the undersigned beneficiary.

Account No: 822012498

Routing No: 07100013

This direction made September 21, 2009

_____
Raymond E. Butler

_____
Jack Finn

_____
Silver Butler-Finn

_____
Helen Butler-Finn

_____
Pessa Finn

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

|  |  |  |
|---|---|---|
| RAYMOND E. BUTLER II | ) ) ) ) | No. 2022 CH 675 |
| Plaintiff, | ) ) | Hon J. Alison C. Conlin |
| v. | ) ) ) | |
| ILLANA EDDI & ELY EDDI, Individually and as trustees of the Jack Finn Irrevocable Trust | ) ) ) ) | |
| Defendants. | ) | |

## AFFIDAVIT OF HANNAH FINN

I, Hannah Finn, being first duly sworn, depose and state as follows:

1. My name is Hannah Finn, and I am over the age of 18 and competent to testify to the matters stated herein.

2. I am biological sister of Plaintiff Raymond E. Butler II and the adopted daughter of Jacob Finn a/k/a "Jack Finn."

3. On September 21, 2009, I was present at a disbursement event where Plaintiff Raymond E. Butler II was listed as a beneficiary.

4. That day I was told to go to the office of my adopted father's lawyer, Jeffrey Gutman, to sign some documents.

5. That day my brother Raymond and my sister Shoshana a/k/a Silver were receiving money from the trust. I remember being upset because I was told that I was not old enough to receive money yet.

6. Present at the meeting was myself, my brother Raymond, adopted mother and father Jack and Pessa Finn, my sister Silver Finn, my step-sister Ilana (via phone), and Mr. Gutman.

7. Mr. Gutman, oversaw the signing of the disbursement that day.

8. In addition to Raymond, Silver received money on September 21, 2009.

9. From speaking to my father, it was always my understanding that Raymond had a trust.

10. I was never aware that my brother gave up his claim to any trust.

1



11. In 2011, I was told by Jack I would be given $50,000 so that I could purchase a house.

12. Jack met me at the bank instead to give me half of the money. During this meeting, I learned that I was receiving a disbursement from my trust.

13. During the bank visit, I was also presented a release form with similar language to the release form that is alleged to be signed by Raymond.

14. When I was given the document, no one explained to me what the release was or what the language of it meant.

15. When I was given the disbursement, I was not presented with an accounting of the trust or given an explanation of what rights I would be signing away.

16. I actually did not sign the release agreement because it included the wrong amount that I was being given that day, and the terms of the agreement to buy a house were changed.

17. The document was never presented to me again.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 2, 2024

Hannah Finn

2

# Butler v. Eddi--Hannah Finn Affidavit_Final

Final Audit Report | 2024-08-02

| | |
|---|---|
| Created: | 2024-08-02 |
| By: | Benjamin Lockyer (ben@lockyerlaw.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAaa7zXLYcjUTj4l7nOiQbUsZG0cjyX3gX |

## "Butler v. Eddi--Hannah Finn Affidavit_Final" History

🖰 Document created by Benjamin Lockyer (ben@lockyerlaw.com)
2024-08-02 - 4:27:50 PM GMT

🖃 Document emailed to Hannah Finn (hjrfinn2020@gmail.com) for signature
2024-08-02 - 4:27:54 PM GMT

🖰 Email viewed by Hannah Finn (hjrfinn2020@gmail.com)
2024-08-02 - 4:40:02 PM GMT

✑ Document e-signed by Hannah Finn (hjrfinn2020@gmail.com)
Signature Date: 2024-08-02 - 4:42:25 PM GMT - Time Source: server

✅ Agreement completed.
2024-08-02 - 4:42:25 PM GMT

**⬛ Adobe Acrobat Sign**

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

|  |  |  |
|---|---|---|
| RAYMOND E. BUTLER II | ) | |
| | ) | |
| Plaintiff, | ) | No. 2022 CH 675 |
| | ) | |
| v. | ) | |
| | ) | |
| ILLANA EDDI & ELY EDDI, | ) | Hon J. Alison C. Conlin |
| Individually and as trustees of the | ) | |
| Jack Finn Irrevocable Trust | ) | |
| | ) | |
| Defendants. | ) | |

## AFFIDAVIT OF RAYMOND BUTLER II

I, Raymond E. Butler II, being first duly sworn, depose and state as follows:

1. I was born in 1986, the biological child of Raymond E. Butler Sr. and Robin Sue Butler nee Neufeld. I am the biological brother of Hannah Finn and Shoshana Finn a/k/a Silver Finn.

2. My grandfather, Jonas Neufeld, was a businessman from Poland who immigrated to Chicago, Illinois, as a Jewish holocaust survivor and refugee. He married Zorene L. Mizell in 1959, and they had one daughter, Robin Sue Neufeld.

3. My mother, Robin Sue Butler, struggled with substance abuse and became estranged from Jonas Neufeld, leading him to disinherit her in the late 1980s.

4. I spent a significant amount of time with Jonas Neufeld, who would often take me to the bank when I was child to show me safety deposit boxes filled with jewelry and heirlooms, telling me I would be "a very rich man someday."

5. Despite various issues within the Finn family over the years, I stayed in touch with the Finns and was treated as part of the family, even though I was never formally adopted by Jack and Pessa Finn. Throughout my childhood and adult life, I maintained a relationship with them, often assisting Jack Finn and spending significant time with him. These interactions and the shared history fostered a familial bond that persisted despite the lack of formal adoption. My connections with the Finns have been a substantial part of my life and are integral to my understanding of my familial and trust-related rights.

6. In September 2009, I had an unplanned meeting with Jack Finn in Chicago. During this meeting, Jack Finn informed me that I had a trust created for my benefit and suggested that it would be allowed under the terms of the trust agreement to take out some money early to help me start a business. Specifically, he referred to making an early disbursement from the trust to assist me in buying a car for a taxi and livery service. Jack Finn then arranged

1



for us to meet at his lawyer's office on September 21, 2009, providing me with the address of his attorney, Jeffrey K. Gutman.

7. On September 21, 2009, I went to the offices of Jack Finn's attorney, Jeffrey K. Gutman, located at 4018 N. Lincoln Ave., Chicago, Illinois 60618. During this meeting, Pessa Finn and Hannah Finn were also present. Mr. Gutman oversaw the signing of the disbursement.

8. During this meeting, Jack Finn and Mr. Gutman presented me with a Form of Direction to Disburse, which I signed along with Jack Finn. Direction to Disburse ("Exhibit A").

9. On the document, Illana Eddi and Ely Eddi, as trustees, were directed to disburse $30,000 to me from the Jack Finn Irrevocable Trust. Despite signing three iterations of this form, the first version stating the money would be subtracted from any additional amounts that may be owed under the terms of the trust agreement, the final iteration included a release of any claims against the trustees for that disbursement only.

10. Despite being told I would receive funds to start a business, I was never provided a copy of a trust or given an accounting of any money in any accounts. I was never told that I was waiving any rights at any point during the signing of the documents on September 21, 2009.

11. After September 21, 2009, I never returned to Mr. Gutman's law office and did not see him or meet him until this case was filed. I did not sign any legal documents regarding the disbursement after I signed for the disbursement on September 21, 2009.

12. I reviewed the release I am alleged to have signed on September 23, 2009 and I did not sign this agreement. I was never presented with this agreement. To the extent that I signed this document unknowingly, I have never been in a situation where someone told me that I was waiving my right to receive money from a trust.

13. I believe the September 23, 2009 document is a forgery.

**Discovery and Additional Evidence Needed**

13. Despite my requests through my lawyers, Defendants have produced only a few trust documents despite the existence of multiple trusts created by Jack Finn. Discovery is ongoing, and I have yet to receive all pertinent documents and information essential for a fair determination of this case, including the original Jack Finn Irrevocable Trust agreement from 1990 or any form of accounting for any trusts whatsoever.

14. During this matter, I have had to spend significant amounts of money and time to get documents from third parties. These documents include trust documents that have not been disclosed or provided by the Defendants.

15. In speaking to third parties, I was able to obtain additional trust documents. In February 2023, I contacted Joel Rothman the former attorney for Jacob Finn a/k/a "Jack Finn." I obtained the following documents that were not provided by the Defendants:

   a. 1990 Pessa Finn Irrevocable Trust

2

    b.   1990 Hanna Finn Irrevocable Trust

    c.   1994 Jack Finn Self Declaration of Trust

    d.   1994 Pessie Finn Irrevocable Trust

16. Due to objections by Defendants citing attorney-client privilege and claims of not possessing all relevant trust documents, I require additional discovery including but not limited to bank accounts and trust accounts related to Jacob Finn aka Jack Finn to identify the relevant trusts.

17. I am in the process of obtaining a document expert to challenge the authenticity of the purported September 23, 2009 release. This expert evidence is crucial in determining the document's validity and enforceability.

18. Until full discovery is completed, I cannot fully respond to Defendants' motion for summary judgment, as essential information is still outstanding.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 30, 2024

/s/ Raymond Butler II
Raymond E. Butler II

3