**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

RAYMOND E. BUTLER II, )
      Plaintiff, )
      v. )   Case No. 1:25-cv-04443
ILLANA EDDI and ELY EDDI, individually )
and as Trustees of the Jack Finn Irrevocable )
Trust, )
      Defendants. )
      )
      )
      )

## DEFENDANT'S RULE 11 MOTION FOR SANCTIONS

Defendant Ilana Eddi ("Movant") moves this Court to impose sanctions against Plaintiff Raymond E. Butler II[1], pursuant to Federal Rule of Civil Procedure 11(c) and the Court's inherent authority to control the pending litigation. In support, Movant states as follows:

## INTRODUCTION

Plaintiff has engaged in abuse of the judicial system. Plaintiff's Motion to Disqualify Attorney Robin Maher Due to Conflicts of Interest (Dkt. 226.) and the related Motion for Sanctions Against Attorney Robin Maher (Dkt. 233.) are just two examples. As the Circuit Court of Cook County, Chancery Division, in Case No. 2022CH00675 found, there is no basis for disqualification and the motion improperly "impugns [Ms. Maher's] integrity without any basis whatsoever that is articulated in anything that [Plaintiff] submitted to this Court." (Dec. 16, 2025 Tr. at 19:3-19.) Plaintiff's frivolous motions and harassment have become a hallmark of Plaintiff's litigation strategy and must be stopped.

The Motions were filed on September 10, 2025 (Dkt. 226.) and October 31, 2025 (Dkt. 233). This case was stayed, so no response is due until June 4, 2026. (Dkt. 265.) On April 9,

---

[1]    Movant reserves the right to also separately seek sanctions against counsel for Plaintiff.

2026, this Court held a hearing and directed the parties to withdraw any frivolous motions. (Dkt. 250 at 15:19-16:1) Rather than withdraw the frivolous motions, Plaintiff directly threatened Ms. Maher, Levenfeld Pearlstein ("LP") – the law firm where Ms. Maher is employed – and numerous other partners and employees of LP.

On May 13, 2026, Plaintiff sent an email to Ms. Maher; Jeffrey Hoffenberg, LP's Managing Partner; Jessa Baker, LP's Chief Executive Officer; Gary Blackman, LP's General Counsel; and approximately 150 other LP partners and employees. (*See* Affidavit of Jordan D. Backey, attached hereto as **Exhibit A**.) In the email communication, Mr. Butler demanded that Ms. Maher and LP withdraw from representation of Movant within ten days "or face addition as RICO defendants, firm-wide sanctions, and ARDC referrals" and specifically stated the following:

> Levenfeld Pearlstein, LLC, Robin D. Maher, and every partner or agent who authorized, ratified, or acquiesced in this misconduct will be added as named Defendants in a federal RICO action for tortious interference, breach of fiduciary duties to a prospective client, and RICO predicate acts; Plaintiff will seek maximum sanctions against the firm and all responsible attorneys under Fed. R. Civ. P. 11, 28 U.S.C. § 1927, and the Court's inherent authority, including but not limited to monetary sanctions, disqualification of all LP attorneys, and referral for criminal contempt if warranted.

*See* May 13 Email, attached as **Exhibit 1 to Ex. A**. On May 14, 2026, Ms. Maher sent a letter to Plaintiff's then counsel, Racine Miller, requesting that Plaintiff withdraw the Motion to Disqualify and the Motion for Sanctions before the May 21 hearing and reserving the right to file a motion for sanctions under Rule 11(c)(2) if Plaintiff failed to do so. (*See* May 14 Letter to Racine Miller, attached hereto as **Exhibit B**.)

In response, on May 17, 2026, Plaintiff sent an email to Mr. Hoffenberg, Ms. Baker, and Mr. Blackman stating:

2

There will not be a withdrawal of the Motion for Disqualification or Sanctions, and I will show NO mercy for Robin Mahar (sic), (or for Levenfeld Pearlstein if you allow her to continue unethically).

*See* May 17 Email, attached as **Exhibit 2 to Ex. A**. At the May 21 hearing, Plaintiff was granted leave to appear pro se and indicated that he intends to proceed on the Motion to Disqualify. (Dkt. 265.) This Court set a briefing schedule on the Motion to Disqualify. (*Id.*)

For the reasons stated herein, sanctions are not only appropriate but necessary to get control over this litigation and to stem Plaintiff's ongoing harassing and vexatious behavior.

## **RELEVANT PROCEDURAL HISTORY**

On January 26, 2022, Plaintiff filed a Complaint for Accounting of the Jack Finn Irrevocable Trust against Defendant Ilana Eddi and her husband Ely Eddi in the Circuit Court of Cook County, Chancery Division, Butler v. Eddi, et. al., Case No. 2022CH00675 (the "Cook County Case").[2] Attorney Jeffrey Gutman appeared for Defendants. Plaintiff filed his First Amended Complaint on October 6, 2022. Defendants answered and filed a Counterclaim on May 11, 2023. The parties were "at issue" in November 2023 when Plaintiff answered the Counterclaim. On June 12, 2024, Plaintiff filed a Second Amended Complaint attempting to add Defendants' attorney, Jeffrey Gutman, as a defendant. The Second Amended Complaint was filed without leave of court and was struck on June 14, 2024.

Complicating matters, on August 6, 2024, Plaintiff initiated this Federal lawsuit by filing a 72-page complaint against the Eddis (the Defendants in the Cook County Case), Mr. Gutman

---

[2]     This Court may take judicial notice of the filings in the Cook County Case. Fed. R. Evid. 201. *See also, Limestone Dev. Corp. v. Vill. of Lemont*, 473 F. Supp. 2d 858, 868 (N.D. Ill. 2007), *aff'd sub nom. Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797 (7th Cir. 2008) ("court has the power to take judicial notice of proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue. This is true even though those proceedings were not made a part of the record before the district court.") The filings, which are voluminous, are not attached. However, Movant will provide copies of any filing from the Cook County Case upon request.

(Defendants' attorney in the Cook County Case) and 28 other individuals, alleging RICO violations related, in part, to the administration of the Jack Finn Irrevocable Trust (the same trust at issue in the Cook County Case).

On September 25, 2024, this case was stayed pending the resolution of the Cook County Case. (Dkt. 79.) Undaunted, Plaintiff filed numerous motions to lift the stay and to issue discovery. (Dkts. 82, 85, 96.) Plaintiff also engaged in a pattern of harassment of parties and potential witnesses, in response to which a protective order was entered prohibiting Plaintiff from directly contacting witnesses in light of his inappropriate and threatening communications. (Dkt. 101.) After an evidentiary hearing, the Court entered an order finding that "Plaintiff acted inappropriately" and there was "a clear justification here for a protective order: Plaintiff was harassing litigants and potential witnesses" and that, "Plaintiff testified to his actions in front of this court, and his assertions that he was neither threatening nor harassing are not credible." (Dkt 113.)

Approximately a year ago, Plaintiff began a campaign to improperly use motions to disqualify as an attempted tactical litigation advantage filing numerous motions to disqualify the judges and lawyers involved in the cases. On June 16, 2025, Plaintiff filed a motion to disqualify Defendants' then attorney, Mr. Gutman, in the Cook County Case. Mr. Gutman voluntarily withdrew because Defendants chose to engage new counsel.

On September 10, 2025, Plaintiff filed the instant Motion to Disqualify Robin Maher – the new counsel engaged by Defendant Ilana Eddi. (Dkt. 223.)

On September 10, 2025, Plaintiff also filed motions to disqualify Judge Georgia Alexakis (Dkt. 226) and Judge Nancy L. Maldonado (*see* Butler v. Eddi, et al., Dkt. 13, Case No. 25-2589 (7th Cir. Sept. 10, 2025)) based on a new RICO lawsuit filed on the same date (Case No. 1:25-

4

cv-10904, Butler v. Alexakis, et al. (N.D. Ill. Sept. 10, 2025)). In the new lawsuit, Plaintiff asserted that:

> The enterprise, a cesspool consisting of corrupt elements within the federal judiciary in the Northern District of Illinois and the Seventh Circuit Court of Appeals, has been hijacked by these unethical "judges" to brutally strip Plaintiff of his constitutional rights, maliciously block his access to fair judicial proceedings, and shamelessly favor their crooked allies in the underlying litigation, Butler v. Eddi, et al., Case No. 1:25-cv-04443 (N.D. Ill.). This cabal's despicable actions have inflicted devastating harm on Plaintiff's property interests including refusing to freeze trust assets allowing dissipation of $544 Million from the trust corpus, delayed legal remedies, and substantial legal expenses exceeding $100,000 with damages in excess of $500 Million.

(Dkt. 1.) On October 3, 2025, the Seventh Circuit denied the motion to disqualify Judge Maldonado. (*See* Butler v. Eddi, et al., Dkt. 19, Case No. 25-2589 (7th Cir. Sept. 10, 2025).)

On September 23, 2025, Plaintiff filed a Motion to Disqualify Attorney Robin D. Maher (the "Cook County Motion to Disqualify") in the Cook County Case, ***which was based on the exact same grounds as the instant Motion to Disqualify***.

On November 7, 2025, the United States Court of Appeals for the Seventh Circuit entered an order sanctioning Plaintiff's counsel, Ms. London, for filing "a motion to disqualify Judge Maldonado, levying scurrilous and unfounded accusations of judicial misconduct and ideological bias" and a "similar motion with similarly egregious allegations against Judge Alexakis in the district court." (*See* Butler v. Eddi, et al., Dkt. 42, Case No. 25-2589 (7th Cir. Sept. 10, 2025).) The United States Court of Appeals for the Seventh Circuit specifically found that Ms. London "has repeatedly shown disrespect for members of this court and knowingly misrepresented facts in court" and ordered Ms. London to pay $750, issued a public reprimand, and referred Ms. London to the Attorney Registration and Disciplinary Commission of the Illinois Supreme Court for any action it deems appropriate. (*Id*.)

5

On December 16, 2025, the Honorable Allen P. Walker ***denied*** the Cook County Motion to Disqualify after a full hearing. The December 16, 2025 Order and transcript of the hearing are attached hereto as **Exhibit C** and **Exhibit D**, respectively.

On January 16, 2026, Plaintiff filed a Motion to Disqualify Judge Walker, making wholly unfounded accusations of bias, which was denied on April 24, 2026.

On March 11, 2026 Plaintiff attempted to amend the complaint in Case No. 1:25-cv-10904 to add Judge Walker (the current judge in the Cook County Case), Judge Allison C. Conlon (the judge who had previously presided over the Cook County Case), and the Cook County Clerk's Office Chancery Division as alleged defendants (*see* Butler v. Alexakis, et al., Dkt. 44, Case No. 1:25-cv-10904 (N.D. Ill. Sept. 10, 2025)).

On March 13, 2026, Judge Alexakis entered an order finding "[t]here is no legitimate basis for Plaintiff's suit against this Court. Nonetheless, in an abundance of caution, the Court recuses itself pursuant to 28 U.S.C. 455(a)." (Dkt. 239.)

The case was assigned to Judge April Perry on March 19, 2026 (Dkt. 241.) Plaintiff immediately filed a frivolous Motion to Disqualify Judge Perry (Dkt. 245), which was denied on April 9, 2026 (Dkt. 249).

On April 17, 2026, Ms. London was suspended from the practice of law in the United States District Court, Northern District of Illinois for her inappropriate conduct, until she pays the $750 sanction to the United States Court of Appeals for the Seventh Circuit, until the Attorney Registration and Disciplinary Commission resolves its investigation, and until further order of court. (Dkt. 251.)

On May 21, 2026, Plaintiff was granted leave to appear pro se. (Dkt. 265.)

**LEGAL STANDARD**

Rule 11 provides that every pleading or motion must be signed by at least one attorney of record in the attorney's name – or by a party personally if the party is unrepresented – certifying that it is "not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation" and that the legal contentions are warranted by the law and the factual contentions have, or will likely have, evidentiary support. Fed. R. Civ. P. 11(a) and (b). This Court is tasked with enforcing Rule 11 and awarding an appropriate sanction for violations. Fed. R. Civ. P. 11(c). A sanction imposed may include non-monetary directives, an order to pay a penalty into court and/or an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation. Fed. R. Civ. P. 11(c)(4).

I.     **Sanctions are Warranted Because Plaintiff's Motion to Disqualify and Motion for Sanctions are Frivolous and in Bad Faith.**

   **A.  The Motion to Disqualify and Motion for Sanctions are Frivolous.**

Sanctions are appropriate because the Motion to Disqualify and the Motion for Sanctions are not supported by the law or the facts and are wholly frivolous. As fully articulated in the Defendants' Response to Motion to Disqualify, there is absolutely no basis for disqualification.

When assessing whether a party's motion is frivolous, the Court must "undertake an objective inquiry into whether the party or his counsel should have known that his position is groundless." *Cuna Mut. Ins. Soc. v. Off. & Pro. Emps. Int'l Union, Loc.* 39, 443 F.3d 556, 560 (7th Cir. 2006) (citations omitted). There can be no doubt that Plaintiff should have known that the Motion to Disqualify is groundless: the exact same motion was denied by the Cook County Court.

7

**B. The Motion to Disqualify and Motion for Sanctions were Brought in Bad Faith.**

A court may use its inherent authority to sanction a party who acts in "bad faith, vexatiously, wantonly, or for oppressive reasons." *Fuery v. City of Chicago*, 900 F.3d 450, 463 (7th Cir. 2018) (citations omitted). "Courts traditionally have broad authority through means other than contempt—such as by ... entering default judgment—to penalize a party's failure to comply with the rules of conduct governing the litigation process." *Id*. (citations omitted).

There can be no doubt that Plaintiff pursued the Motion to Disqualify and Motion for Sanctions in bad faith. Although the Cook County Order is not a final order with res judicata or collateral estoppel effect, Plaintiff's persistence with the Motion to Disqualify, despite knowing it lacks merit, demonstrates that he is improperly attempting to use the motion for purposes of harassment and as a tactical weapon in this litigation. *SK Handtool Corp. v. Dresser Industries, Inc.*, 246 Ill.App.3d 979 (1993) ("attorney disqualification motions should not be used as tactical weapon in litigation").

Moreover, the tone of Plaintiff's Motion to Disqualify confirms that it was brought in bad faith. Plaintiff's Motion is replete with personal, unprofessional, and unfounded attacks asserting, among other accusations: "Ms. Maher's shameless involvement;" "…her opportunistic departure to Levenfeld Pearlstein…;" "[Ms. Maher] carries the stench of this conflict with her;" and "Ms. Maher's conduct here is not mere oversight; it's a deliberate assault on integrity." (Dkt. 226 at p. 1; ¶¶ 3 and 5.)  Judge Walker in the Cook County Case admonished plaintiff that he "takes a dim view of conduct" like Plaintiff's and that the motion was "incendiary" "impugns [Ms. Maher's] integrity" and was "wholly and completely unnecessary in this [Cook County] Court's view." (Dec. 16, 2025 Tr. at 19:3-19). Plaintiff's bad faith conduct should not be tolerated by this Court, either.

8

Further, Plaintiff's threats to Ms. Maher and LP amply demonstrate his bad faith. Plaintiff threatened Ms. Maher and numerous of her partners that he would "show NO mercy," that he would add them as Defendants "in a federal RICO action for tortious interference, breach of fiduciary duties to a prospective client, and RICO predicate acts," and that he would seek "monetary sanctions, disqualification of all LP attorneys, and referral for criminal contempt if warranted" if Ms. Maher did not withdraw representation of her client. (*See* Exs. B and D.) These kinds of threats are wholly inappropriate and cannot go unaddressed by this Court.

### C. The Motion to Disqualify and Motion for Sanctions are Part of a Larger Pattern of Filing Improper and Frivolous Motions.

There is extensive evidence of a pattern of bad faith filings by Plaintiff in this litigation. "Past practice" of a party and his counsel may inform the court that a motion was "designed to harass." *Eberhardt v. Walsh*, 122 F.4th 681, 686 (7th Cir. 2024) (sanctions were appropriate because plaintiff's "hyperactive motions practice," most of which were denied, was determined to "scream bad faith.") Further, sanctions are appropriate for successive filings attempting "to ring changes on points [a party] has advanced before." *Alexander v. United States*, 121 F.3d 312, 315 (7th Cir. 1997). *See also, Fries v. Helsper*, 146 F.3d 452 (1998) (affirming sanctions against a party who filed successive complaints raising previously rejected claims) and *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11-CV-1590-LTS, 2021 WL 4443962, at *10–11 (S.D.N.Y. Sept. 28, 2021) (party sanctioned where party repeated arguments in successive motions for reconsideration).

As detailed above in the procedural history section, Plaintiff has filed numerous frivolous motions, including at least seven motions to disqualify either judges or lawyers, for improper purposes. The instant Motion to Disqualify is part of a practice of attempting to use

disqualification for tactical gamesmanship. Sanctions are appropriate to deter such conduct in the future.

### D. Plaintiff Should Be Sanctioned for his Attorney's Conduct as Well as his Own.

Plaintiff cannot defend against a sanction award by arguing that the motions were filed by his attorney. Plaintiff bears responsibility for its counsel's misconduct. "[I]t is well established that attorneys' actions are imputed to their clients, even when those actions cause substantial harm. A litigant bears the risk of errors made by his chosen agent." *Xped LLC v. Entities Listed on Exhibit 1*, 690 F. Supp. 3d 831, 860–618 (N.D. Ill. 2023) (quoting Hinterberger v. City of Indianapolis, 966 F.3d 523, 529 (7th Cir. 2020)). Further, Plaintiff is now representing himself pro se and has refused to withdraw the Motion to Disqualify or the Motion for Sanctions.

## II. This Court Should Impose Both Monetary and Nonmonetary Sanctions.

### A. Sanctions Should Include a Monetary Award of Fees in Favor of Movant.

The Court should impose a meaningful monetary sanction in the amount of Movant's attorneys' fees and costs incurred in relation to the Motion to Disqualify and this motion for sanctions. Monetary sanctions against Plaintiff are necessary. Plaintiff has submitted dozens of frivolous filings to this Court even though a stay has been in place since September 25, 2024, causing Movant and the other defendants to incur substantial, unnecessary legal fees. Plaintiff has demonstrated that he will continue to make frivolous filings despite any order from this Court to the contrary. Even after this Court's April 9 admonishment, Plaintiff filed three additional frivolous motions within one week (Dkts. 254, 256, and 257).

Movant submits that the only way to stop the cycle is to award a meaningful monetary sanction and order Plaintiff to pay Movant an amount sufficient to reimburse the legal fees incurred in relation to the Motion to Disqualify and this motion for sanctions.[3]

### B.  Sanctions Should Include a Filing Bar in this Case.

Movants also request that this Court put teeth into the monetary sanction and impose a filing bar until the monetary sanction is paid. "In general, the district court enjoys broad discretion in setting a sanction award that it believes will serve the deterrent purpose of Rule 11." *Divane v. Krull Elec. Co.*, 319 F.3d 307, 314 (7th Cir. 2003) This Court has authority to fashion a filing bar that will serve the deterrent purpose of Rule 11. *See e.g., Portman v. Andrews*, 249 F.R.D. 279, 284 (N.D. Ill. 2007) (appropriate sanctions included requirement that a party seek leave of court before filing any paper); *Jean v. Dugan*, 29 F. Supp. 2d 939, 940, 942 (N.D. Ind. 1998) (imposing sanctions prohibiting Plaintiff's counsel from filing any paper on their behalf until payment of monetary sanctions is complete and requiring payment of bond for any further filings thereafter, where party engaged in lengthy history of "delay, distraction, personal attacks, obfuscation, and obstinance" to "harass their opponents"); *Universitas Educ., LLC*, 2021 WL 4443962, at *11 (imposing sanctions requiring that counsel obtain leave from the Court to file any further motions, where a party "cause[d] unnecessary expense on [opposing parties] and an undue burden on the Court."); *Sassower v. Am. Bar Ass'n*, 33 F.3d 733, 736 (7th Cir. 1994) (imposing sanctions granting Defendants leave to ignore Plaintiff's filings unless explicitly ordered otherwise by the Court and requiring a filing bond on all of Plaintiff's complaints thereafter deemed by the Court to state a "colorable claim"); *Yan v. Individuals, Partnerships &*

---

[3]    If this motion is granted, Movant will submit evidence of the total amount of fees incurred in relation to the Motion to Disqualify and this motion for sanctions.

*Unincorporated Assoc'ns Identified on Sched. "A," No. 24 C 5403*, 2025 WL 2098801, at \*5 (N.D. Ill. July 25, 2025) (dismissing with prejudice a party's action may be an appropriate sanction).

Specifically, Movant requests that the filing bar (i) prohibit Plaintiff, either pro se or through counsel, from any further filings until Movant certifies that the monetary sanctions awarded to her have been paid by Plaintiff; (ii) after the monetary sanction is paid, require Plaintiff, either pro se or through counsel, to seek leave of court before making any further filings in this case; (iii) order that any filing in violation of the order will be presumptively frivolous and automatically stricken from the record and treated as a nullity; and (iv) order that any filing in violation of the order will result in automatic dismissal of the case, with prejudice.

**C. Sanctions Should Include a Filing Bar Against the Lawyers in this Case.**

Additionally, Movant requests that this Court enter an order barring Plaintiff from asserting any cause of action against the attorneys or law firms who represent the parties in this lawsuit for actions taken, or not taken, in relation to such representation (or in the alternative, requiring Plaintiff to seek leave of this Court to file any such cause of action). The requested filing bar is appropriate and within this Court's authority.

The Seventh Circuit recently confirmed that this Court's authority includes imposition of a prospective filing bar against a vexatious litigant. *Smith v. United States Cong.*, No. 25-1148, 2025 WL 2887021, at \*2 (7th Cir. Oct. 10, 2025) (confirming that "the judiciary has 'ample' authority to curtail abusive filing practices" and affirming a filing bar against a vexatious litigant.) Further, the Seventh Circuit has affirmed a district court's ability to impose significant monetary sanctions for filing baseless RICO complaints. *Brandt v. Schal Associates, Inc.*, 960

F.2d 640 (1992) (affirming Rule 11 sanctions in the amount of $443,564.66, the total reasonable attorneys' fees and expenses incurred by defendants, for filing a baseless RICO complaint).

Such a filing bar is necessary and appropriate in this case. Plaintiff has specifically threatened Ms. Maher, LP, and numerous other partners and attorneys employed by LP with the filing of a frivolous RICO action in an attempt to gain leverage and to cause Ms. Maher to withdraw from representation in this case. (Ex. B.) Plaintiff has also demonstrated that he can – and will – initiate separate frivolous RICO lawsuits against participants in this litigation. Plaintiff initiated such a frivolous RICO lawsuit against Judge Alexakis and Judge Maldonado (*See* Case No. 1:25-cv-10904, Butler v. Alexakis, et al.). Recently, Plaintiff attempted to add Judge Walker and Judge Conlon as defendants in that lawsuit. (*See* Butler v. Alexakis, et al., Dkt. 59, Case No. 1:25-cv-10904 (N.D. Ill. Sept. 10, 2025).)

Permitting a vexatious litigant to sue lawyers defending parties in a lawsuit for such representation for the express purpose of causing the lawyers to withdraw from such defense cannot be permitted by the judicial system as it could have a chilling effect on representation. This Court should exercise its ample discretion to prevent Plaintiff from misusing the judicial system in the manner specifically threatened by him.

Movant submits that the filing bar should (i) prohibit Plaintiff, either pro se or through counsel, from initiating a cause of action against any lawyer or law firm representing a party in this case for actions taken, or not taken, in relation to such representation and/or from adding any lawyer or law firm representing a party in this case as a defendant in Case No. 1:25-cv-10904; (ii) or in the alternative requiring Plaintiff to seek leave of this Court prior to filing any such cause of action; and (iii) order that any filing in violation of the order will result in automatic dismissal of this case, with prejudice.

13

Dated: May 26, 2026

Respectfully submitted,

**ILANA EDDI**

By:     *Robin D. Maher*            

         One of Her Attorneys

Robin D. Maher (6283440)
Erin M. Mayer (6313447)
Levenfeld Pearlstein, LLC
120 S. Riverside Plaza, Suite 1800
Chicago, Illinois 60606
(312) 346-8380 – Telephone
Attorney No. 57133
rmaher@lplegal.com
emayer@lplegal.com

*Attorneys for Defendant Ilana Eddi*

14

## <u>CERTIFICATE OF SERVICE</u>

I, Kay N. Flynn, a non-attorney, hereby certify that on this 26th day of May 2026, a true and correct copy of the foregoing was served by e-mail on all parties of record and by email and U.S. Mail to Raymond Earl Butler II at 14320 Shirley Rd, Baraga, Michigan 49908 and RaymondEButler@protonmail.com.



*Kay N. Flynn*
Kay N. Flynn

**CERTIFICATE OF SERVICE**

I hereby certify that on June 18, 2026, I electronically filed the foregoing Rule 11 Motion for Sanctions with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Robin D. Maher*

# EXHIBIT A

**IN THE UNITED STATES DISTRICT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RAYMOND E. BUTLER, II, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:25-cv-04443 |
| | ) | |
| v. | ) | |
| | ) | |
| ELI JACKFINN EDDI a/k/a ELY EDDI, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**AFFIDAVIT**

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned, Jordan D. Backey, certifies that the statements set forth in this instrument are true and correct, except as to matters stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he believes the same to be true.

1. I am the Technical Support Manager for Levenfeld Pearlstein LLC ("LP").

2. As a part of my duties and responsibilities as Technical Support Manager, I have access to LP's electronic mail system, including mail flow records and data related to the electronic mail servers.

3. On May 13, 2026 at 9:51 p.m., an email signed by Raymond Earl Butler II was sent from RaymondEButler@protonmail.com to Jeffrey D. Hoffenberg, Gary I. Blackman, Jessa M. Baker, Robin D. Maher, and Erin M. Mayer (the "May 13 Email"). A true and correct copy of the May 13 Email is attached as **Exhibit 1**. Mr. Butler's lawyer, Katherine A. London, was copied on the May 13 Email.

4. Jeffrey D. Hoffenberg is the Managing Partner of LP.

5.      Jessa M. Baker is the Chief Executive Officer of LP.

6.      Gary I. Blackman is the General Counsel of LP.

7.      Robin D. Maher is an attorney employed by LP.

8.      Erin M. Mayer is an attorney employed by LP.

9.      Approximately one hundred and fifty other LP partners and employees were blind copied on the same, or a similar, May 13 Email.

10.     A second email was sent to Jeffrey D. Hoffenberg, Gary I. Blackman, and Jessa M. Baker from RaymondEButler@protonmail.com on May 17, 2026 (the "May 17 Email"). A true and correct copy of the May 17 Email is attached as **Exhibit 2**.

Dated: May 26, 2026

FURTHER AFFIANT SAYETH NAUGHT.

_____

Jordan D. Backey, Technical Support Manager, Levenfeld Pearlstein LLC

# EXHIBIT 1

**From:** RaymondEButler@protonmail.com

**Sent time:** 05/13/2026 09:50:46 PM

**To:** Jeffery D. Hoffenberg <jhoffenberg@lplegal.com>; Gary I. Blackman <gblackman@lplegal.com>; Jessa M. Baker <jbaker@lplegal.com>; Robin D. Maher <rmaher@lplegal.com>; Erin M. Mayer <emayer@lplegal.com>

**Cc:** klondon@kmfllaw.com

**Subject:** FINAL DEMAND FOR IMMEDIATE AND UNCONDITIONAL WITHDRAWAL

**Attachments:** LPDemand.pdf    ECF 226.pdf    ECF 252.pdf

---

Counsel(s),

Attached is your FINAL DEMAND LETTER.

Comply in full within TEN (10) days. No extensions. No excuses. Zero tolerance.

Raymond Earl Butler II

LPDemand.pdf

May 14, 2026

Levenfeld Pearlstein, LLC

120 S. Riverside Plaza, Suite 1800

Chicago, IL 60606

Attention: Jeffrey D. Hoffenberg (Managing Partner), Jessa M. Baker (Chief Executive Officer), Gary I. Blackman (General Counsel) and Robin D. Maher, Esq. (Partner)

# FINAL DEMAND FOR IMMEDIATE AND UNCONDITIONAL WITHDRAWAL

of Robin D. Maher and Levenfeld Pearlstein, LLC from ALL representation of Ilana Eddi and Ely Eddi in Cook County Case No. 2022CH00675 and federal RICO Case No. 1:25-cv-04443

ZERO TOLERANCE FOR FURTHER ETHICAL VIOLATIONS

DEMAND FOR IMMEDIATE CESSATION OF ALL CONFLICTED REPRESENTATION WITHIN TEN (10) DAYS OR FACE ADDITION AS RICO DEFENDANTS, FIRM-WIDE SANCTIONS, AND ARDC REFERRALS

Levenfeld Pearlstein, LLC and Robin D. Maher: This is a **FINAL**, non-negotiable demand. Your firm's knowing, willful, and continuing representation of Ilana Eddi and Ely Eddi (individually and as Trustees of the Jack Finn Irrevocable Trust) in the above actions is a **BLATANT**, **EGREGIOUS**, and INDEFENSIBLE violation of the Illinois Rules of Professional Conduct and constitutes active participation in tortious interference with my rights as a prospective client. There will be zero tolerance and zero extensions.

# IRREFUTABLE FACTS ESTABLISHING THE CONFLICT

On or about October 1, 2024, I consulted directly with your predecessor firm, Levin, Schreder & Carey, Ltd. ("LSC"), where Robin D. Maher was a partner specializing in trust and estate litigation. I disclosed highly sensitive, confidential details of my claims, the trust, parties, counsel, and interested persons for a conflict check. (See

Plaintiff's Motion to Disqualify Attorney Robin Maher Due to Conflicts of Interest, ECF No. 226, Exhibit A).

At the time, Maher had unfettered access to all firm communications and client intake.

On or about December 7, 2024, I directly contacted Levenfeld Pearlstein, LLC itself, emailed Lauren J. Wolven, provided a full case overview, and requested a conflict check. Your firm expressly declined representation citing conflicts AFTER a confidential consultation. (See Affidavit of Raymond E. Butler II, ECF No. 226, Exhibits C & D).

Despite this, Maher has brazenly appeared as counsel for the Defendants, and your firm has knowingly permitted and ratified this unethical representation in both the state trust case (2022CH00675) and the federal RICO action (1:25-cv-04443).

This is not a technicality. This is textbook disqualification under IRPC Rules 1.18 and 1.10. The conflict is personal, imputed, and portable. Maher cannot "unlearn" the information she obtained while I was a prospective client. See Tizes v. Curcio, 1997 U.S. Dist. LEXIS 697 (N.D. Ill. 1997).

## VIOLATIONS ARE WILLFULL AND EXPOSE THE FIRM

Your continued representation:

Violates IRPC Rule 1.18(c) (prohibiting representation materially adverse to a prospective client in the same matter);

Violates IRPC Rule 1.10 (firm-wide imputation of conflicts);

Constitutes tortious interference with my prospective economic advantage and statutory right to counsel of choice; and

Directly exposes Levenfeld Pearlstein, LLC and every partner who authorized or ratified this conduct to liability as co-defendants in the pending federal RICO action under 18 U.S.C. § 1961 et seq.

I have already placed the entire Court on notice via ECF No. 226 (Motion to Disqualify) and ECF No. 252 (Motion for Leave to Appear Pro Se and Demand for

Sanctions). Your refusal to withdraw is not oversight, it is deliberate, malicious, and sanctionable.

## NON-NEGOTIABLE DEMAND – COMPLY WITHIN TEN (10) DAYS

You must take the following actions no later than ten (10) days from the date of this letter (i.e., by May 24, 2026), with zero tolerance for delay, excuses, or half-measures:

Immediately file formal Notices of Withdrawal for Robin D. Maher and Levenfeld Pearlstein, LLC from all representation of any Defendants in Cook County Case No. 2022CH00675 and U.S. District Court Case No. 1:25-cv-04443;

Serve copies of the withdrawal notices on me and all counsel of record;

Confirm in writing (via email to RaymondEButler@protonmail.com) that all conflicted representation has ceased and that no information obtained from my prospective-client consultations will ever be used;

Provide written confirmation that the firm has taken immediate internal measures to wall off any further involvement by Maher or any other attorney who received the tainted information.

Failure to comply in full by the deadline will trigger the following immediate and irreversible consequences with no further notice:

Levenfeld Pearlstein, LLC, Robin D. Maher, and every partner or agent who authorized, ratified, or acquiesced in this misconduct will be added as named Defendants in a federal RICO action for tortious interference, breach of fiduciary duties to a prospective client, and RICO predicate acts;

Plaintiff will seek maximum sanctions against the firm and all responsible attorneys under Fed. R. Civ. P. 11, 28 U.S.C. § 1927, and the Court's inherent authority, including but not limited to monetary sanctions, disqualification of all LP attorneys, and referral for criminal contempt if warranted;

The entire matter, including this demand letter and all supporting evidence, will be referred to the Attorney Registration and Disciplinary Commission of Illinois for formal investigation, public discipline, and potential disbarment proceedings against Maher and any complicit partners.

This is your last chance. The ethical violations are already fully documented and on the public docket. Continued defiance will be met with the full force of federal RICO liability and professional discipline. Comply immediately. No extensions. No negotiations.

GOVERN YOURSELVES ACCORDINGLY,

/s/ *Raymond Carl Butler II*

Raymond E. Butler II

Plaintiff, Pro Se cc: (via CM/ECF and email)

All counsel of record in 1:25-cv-04443

Clerk, U.S. District Court, Northern District of Illinois

Clerk, Circuit Court of Cook County (2022CH00675)

Enclosures: Plaintiff's Motion to Disqualify Attorney Robin Maher (ECF No. 226) – full filing

Plaintiff's Affidavit in Support (ECF No. 226)

Plaintiff's Motion for Leave to Appear Pro Se and Demand for Sanctions (ECF No. 252)

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

RAYMOND E. BUTLER II,              )
                                   )
                 Plaintiff,        )
       v.                          )
                                   )   Case No. 1:25-cv-04443
ILLANA EDDI and ELY EDDI, individually )
and as Trustees of the Jack Finn Irrevocable )
Trust,                             )
                                   )
                 Defendants.       )

_____

## PLAINTIFF'S MOTION TO DISQUALIFY ATTORNEY ROBIN MAHER DUE TO CONFLICTS OF INTEREST

NOW COMES, Plaintiff, Raymond E. Butler, by and through his undersigned counsel, moves this Court to disqualify attorney Robin D. Maher and her current law firm, Levenfeld Pearlstein, LLC, and previous firm Levin, Schreder & Carey, Ltd. from representing any defendants in this action due to conflicts of interest arising from her current and previous firm's consultation with Plaintiff regarding this matter. Ms. Maher's shameless involvement stems from her current and previous firm's consultation with Plaintiff regarding this very matter, revealing her blatant disregard for professional ethics. This egregious conflict demands swift removal to preserve any semblance of justice in these proceedings.

In support thereof, Plaintiff states as follows:

1. This action involves claims for an accounting and allegations of fraudulent misuse of an irrevocable trust by co-trustees. The trust is valued in excess of several hundred million dollars, and Plaintiff is a beneficiary of the trust.

1

Plaintiff stands to reclaim what these opportunists have stolen, and Ms. Maher's audacious intrusion only underscores her contempt for ethical boundaries.

2. On or about October 1, 2024, Plaintiff consulted with Levin, Schreder & Carey, Ltd. (LSC), Ms. Maher's previous law firm, in a good-faith effort to secure representation for this litigation and the related federal RICO action (Case No. 1:25-cv-04443). Plaintiff divulged sensitive details of his claims to James Carey, a partner there, who cynically requested names of parties, counsel, and interested persons for the purpose of a conflict check. (See attached Exhibit A: Email correspondence dated October 1, 2024.)

3. At the time of this consultation, Ms. Maher was a partner at Levin, Schreder & Carey, Ltd, specializing in trust and estate litigation where she undoubtedly had unfettered access to firm communications and client intake details. Her opportunistic jump to Levenfeld Pearlstein, LLC (LP) in July 2025 does nothing to cleanse her tainted hands—she carries the stench of this conflict with her.

4. Ms. Maher has since appeared as counsel for Defendants in this action, Now, in a stunning display of arrogance, Ms. Maher has brazenly appeared as counsel for the Defendants, thumbing her nose at the Illinois Rules of Professional Conduct (IRPC) and injecting an intolerable conflict into this case. Her prior firm's consultation with Plaintiff as a prospective client

2

imputes a disqualification that clings to her like a shadow, exposing her as unfit for adverse representation.

**ARGUMENT**

5. Illinois courts have the inherent authority and indeed the duty—to disqualify attorneys like Ms. Maher whose conflicts erode the judicial process and mock the principles of fair representation. *Lavaja v. Carter*, 153 Ill. App. 3d 317, 321 (1st Dist. 1987) (holding that disqualification motions are addressed to the sound discretion of the trial court, with the movant bearing the burden of showing a clear conflict). Ms. Maher's conduct here is not mere oversight; it's a deliberate assault on integrity.

6. Under IRPC Rule 1.18(a), a person who consults with a lawyer about forming a client-lawyer relationship is a "prospective client." Plaintiff's consultation with Levin, Schreder & Carey, Ltd., qualifies him as a prospective client of the firm. Even absent a formal engagement, she and her firm owed unbreakable duties of confidentiality and loyalty. IRPC Rule 1.18(b) forbids the use or revelation of information gleaned from such consultations—yet Ms. Maher's appearance reeks of exploiting precisely that.

7. IRPC Rule 1.18(c) explicitly prohibits a lawyer from representing interests materially adverse to a prospective client in the same matter if harmful information was received. Plaintiff handed over critical details about the trust, claims, and parties during his consultation—information Ms. Maher, as

3

a Levin, Schreder & Carey, Ltd partner, could access and weaponize against him. Her personal involvement imputes this disqualifying knowledge.

8. A client with materially adverse interests to the prospective client in the same or substantially related matter if the lawyer received "information from the prospective client that could be significantly harmful" to that person. Here, Plaintiff disclosed details of the trust, claims, and parties to Levin, Schreder & Carey, Ltd., during the consultation, information that could be harmful if used against him. As a partner at Levin, Schreder & Carey, Ltd., Ms. Maher had access to firm communications and resources, imputing the conflict to her personally.

9. The conflict is imputed firm-wide under IRPC Rule 1.10(a), which states that while one lawyer in a firm is disqualified, no lawyer in that firm may knowingly represent the adverse party without consent or screening. Ms. Maher's firm-hopping doesn't absolve her; it only amplifies her recklessness in disregarding these rules.

10. Although Ms. Maher has moved to Levenfeld Pearlstein, LLC., the personal disqualification under Rule 1.18(c) travels with her, as she cannot unlearn or ignore the prospective client's information. See *Tizes v. Curcio*, No. 94 C 7657, 1997 U.S. Dist. LEXIS 697, at 10-12 (N.D. Ill. Jan. 28, 1997) (applying similar ABA Model Rule to disqualify counsel who consulted with prospective client and later represented adverse party). Ms. Maher's disqualification is

4

portable and inescapable—she cannot simply "forget" the confidential insights from her time at Levin, Schreder & Carey, Ltd.

11. Exceptions under Rule 1.18(d) do not apply: There is no informed consent from Plaintiff, and screening at Levenfeld Pearlstein, LLC., cannot cure the conflict since the disqualifying information was acquired at Levin, Schreder & Carey, Ltd., where no evidence suggests reasonable measures were taken to limit exposure. Plaintiff has given no consent to her betrayal, and any half-hearted screening at Levenfeld Pearlstein, LLC is laughable, as the damage originated at Levin, Schreder & Carey, Ltd with no evidence of safeguards against her prying eyes.

WHEREFORE, Plaintiff demands that this Court:

(a) Forthwith disqualify the conflicted and unethical Robin D. Maher and her current firm, Levenfeld Pearlstein, LLC, and previous firm Levin, Schreder & Carey, Ltd. from this action;

(b) Compel Defendants to secure untainted counsel within 30 days or face default; and

(c) Impose such further sanctions and relief as necessary to deter Ms. Maher's brazen misconduct and restore equity to these proceedings and;

(d) Grant such other relief as the Court deems just and proper.

5

Respectfully submitted,

/s/ _Katherine A. London_

Katherine A. London
Counsel for Plaintiff


Katherine A. London
Atty No.: 6345920
100 Illinois St. Suite 200
Saint Charles, IL. 60174
630-507-9998
klondon@kmfllaw.com

6

ECF 226.pdf

**CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2025, I served a true and correct copy of the foregoing Notice of Appeal on all parties of record by electronic filing in accordance with Rule 55(b)(2) Rule of Federal Procedure.

/s/ _____

Katherine A. London
Counsel for Plaintiff


Katherine A. London
Atty No.: 6345920
100 Illinois St.  Suite 200
Saint Charles, IL. 60174
630-507-9998
klondon@kmfllaw.com

## Affidavit of Raymond E. Butler II

I, Raymond E. Butler, II, being first duly sworn on oath, depose and state as follows:

1. I am the Plaintiff in the above-captioned matter and make this affidavit in support of my Motion to Disqualify Attorney Robin D. Maher.

2. I have personal knowledge of the facts herein and, if called as a witness, could and would testify competently thereto.

3. In good faith and with due diligence, I sought legal representation in this case.

4. On or about October 1, 2024, I initiated contact with Levin, Schreder & Carey, Ltd., to explore potential representation. I personally corresponded   directly with Jamess R. Carey "Jim", a partner, to discuss my case details, including the trust, claims, and involved parties. Jim Carey requested specific details regarding my case.

5. I further provided the requested details, including names of parties, counsel, and interested persons, in a good faith effort to retain counsel.

6. On October 2, 2024, I received a response from Mr. Carey via email stating that his firm had decided not to be considered for this engagement (attached as Exhibit B), after which I ceased further communication with them regarding representation.

7. On or about December 7, 2024, I initiated contact with Levenfeld Pearlstein, LLC., to explore potential representation. I personally sent an email to Lauren J. Wolven (attached as Exhibit C) providing an overview of my case and requesting a conflict check, acting in good faith to secure representation.

8. On December 10, 2024, I received a response from Ms. Wolven via email stating that the firm had conflicts and would be unable to assist me (attached as Exhibit D), after which I ceased further communication with them regarding representation.

9. At no time did either firm indicate during my initial contacts that a conflict existed or that representation would be declined prior to my provision of sensitive information, nor did they suggest that Ms. Maher would subsequently represent adverse parties in this matter.

ECF 226.pdf

10. I affirm that all communications with both firms were made in good faith with the intent to secure ethical and competent legal representation, and I disclosed sensitive information only to the extent necessary for that purpose.

11. I understand that this affidavit may be used in these proceedings to support my motions and aver that the statements herein are true and correct to the best of my knowledge and belief.


FURTHER AFFIANT SAYETH NAUGHT.


_____
Raymond E. Butler, II


Dated: September 8, 2025

 Gmail

**Katherine London <klondon@kmfllaw.com>**

---

## Fw: Irrevocable Trust Litigation (worth 9 figures)

---

**Raymond Butler** <RButler@cannabestinc.com>                  Tue, Aug 26, 2025 at 6:26 PM
To: Katherine London <klondon@kmfllaw.com>

---

**From:** James Carey <jim@lsclaw.com>
**Sent:** Tuesday, October 1, 2024 4:12:01 PM
**To:** Raymond Butler <RButler@cannabestinc.com>
**Subject:** Re: Irrevocable Trust Litigation (worth 9 figures)

Thank you, Ray.  I am in a
settlement conference currently.  Please send me the names of the parties, their counsel and any other interested
persons so that I can make sure that my firm does not have a conflict.

Jim


Sent from my iPhone


On Oct 1, 2024, at 2:05 PM, Raymond Butler <RButler@cannabestinc.com> wrote:


Jim,

I am writing you on a referral from one of my attorney's in Chicago, in regard to an accounting claim
pending in Cook County Chancery Court (2022CH00675) and a pending (stayed) RICO action in
Federal Court 2:22-cv-00134 . This Trust is worth in excess of several hundred million dollars, I am the
only beneficiary of the main trust and it has been fraudulently used by the co-trustees to fund a nursing
home portfolio for their own gain. If this is something you want to discuss further, please let me know at
your earliest convenience.

Thank you,

# Raymond Butler
## CannaBest Industries Inc

Chief Executive Officer
<1000005635-id-eb0d4772-0c77-4e31-8653-832f35e9556d.jpeg>

(773)-997-0328
Lansing, Michigan
http://CannaBestInc.com

 **Gmail**

ECF 226.pdf

**Katherine London <klondon@kmfllaw.com>**

## Fw: Irrevocable Trust Litigation (worth 9 figures)

**Raymond Butler** <RButler@cannabestinc.com>    Tue, Aug 26, 2025 at 6:26 PM
To: Katherine London <klondon@kmfllaw.com>

**From:** James Carey <jim@lsclaw.com>
**Sent:** Wednesday, October 2, 2024 12:22:30 PM
**To:** Raymond Butler <RButler@cannabestinc.com>
**Subject:** RE: Irrevocable Trust Litigation (worth 9 figures)

Ray:  Thank you for considering our firm.  We have decided not to be considered for this engagement.
Best of luck, Jim



**James R. Carey**

LEVIN SCHREDER CAREY

120 North LaSalle Street Floor 38 | Chicago Illinois 60602
T 312 332 6300 | F 312 332 6393

Website | Bio | vCard | Map | Email

**Confidentiality Notice:** The information contained in this e-mail message is intended for the exclusive use of the addressee. The message may contain information that is proprietary, legally privileged, confidential and/or exempt from disclosure under applicable law. If you have received this message in error, please notify the sender immediately by reply e-mail and then delete this message without copying, printing or forwarding it.

**From:** Raymond Butler <RButler@cannabestinc.com>
**Sent:** Tuesday, October 1, 2024 2:05 PM
**To:** James Carey <jim@lsclaw.com>
**Subject:** Irrevocable Trust Litigation (worth 9 figures)

Jim,

I am writing you on a referral from one of my attorney's in Chicago, in regard to an accounting claim pending in Cook

 Gmail

**Katherine London <klondon@kmfllaw.com>**

---

## Fw: Complex Multi-Billion Dollar Irrevocable Trust Litigation

**Raymond Butler** <RButler@cannabestinc.com>                    Wed, Sep 10, 2025 at 8:01 PM
To: Katherine London <klondon@kmfllaw.com>

---

**From:** Lauren J. Wolven <lwolven@lplegal.com>
**Sent:** Tuesday, December 10, 2024 9:48:36 AM
**To:** Raymond Butler <RButler@cannabestinc.com>
**Subject:** RE: Complex Multi-Billion Dollar Irrevocable Trust Litigation

Mr. Butler-

We appear to have some conflicts and would be unable to assist you in this matter.

Regards,

Lauren



| **Lauren J. Wolven** | Levenfeld Pearlstein, LLC |
|---|---|
| (she/her/hers) | 120 S. Riverside Plaza |
| T 312 476 7574 | Suite 1800 |
| M 312 965 7742 | Chicago, IL 60606 USA |
| | lplegal.com |

**LinkedIn    Twitter    YouTube**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

RAYMOND E BUTLER, II,              Case No. 1:25-cv-04443
                                       Hon. April Perry

Plaintiff,

v.

ELI JACKFINN EDDI a/k/a ELY EDDI, ILANA FINN EDDI, DORINE
MAGENCE, MANUEL MAGENCE, JEFFREY K. GUTMAN,
NACHSHON DRAIMAN, WILLIAM KANTER, JOEL S. ROTHMAN,
MOSHE SOLOVEICHIK, ALAN GREEN, JERRY CHERNEY, SHMUEL
FUERST, HAROLD KATZ, SAMUEL MASLATON, DANIEL BERGMAN,
IRVING BIRNBAUM, ARON STANTON, CHAIM RAJCHENBACH, RIVKA
RAJCHENBACH, AVRUM RAJCHENBACH, MENACHEM SHABAT, AHUVA
SHABAT, RONALD SHABAT, ERIC ROTHNER, COLMAN GINSPARG,
JAMES MAINZER, MARSHALL K. BROWN, JEFFREY FINN, MEIR
"AARON" COHEN, GARRY CHANKIN, NANCY ROSEN, MARK ANTEBI,
BARRY ANTEBI, DAVID R. RAANAN, and ELLIOT E. ANTEBEI.

Defendants.

# PLAINTIFF'S MOTION FOR LEAVE TO APPEAR *PRO SE*;
## AND
## DEMAND FOR SANCTIONS AGAINST OPPOSING COUNSEL

Plaintiff Raymond E. Butler II moves this Court pursuant to 28 U.S.C. § 1654
for leave to appear *pro se* in the above-captioned civil action. In support thereof,
and in further support of the pending Motion to Withdraw filed by Attorney
Racine Miller (ECF No. 216), Plaintiff states as follows:

1. Plaintiff commenced this civil RICO action (transferred from the Western
   District of Michigan, Case No. 2:24-cv-00134) and has at **all times** retained
   the absolute statutory right to prosecute his claims personally or through
   counsel of his choice. See 28 U.S.C. § 1654 ("In all courts of the United
   States the parties may plead and conduct their own cases personally or by
   counsel…"). This right is fundamental in civil actions and is not subject to
   the Court's discretionary denial absent extraordinary circumstances not
   present here.

2. On September 2, 2025, Plaintiff formally terminated the Michigan Law Firm (counsel Racine Miller) by written termination letter. That termination was unequivocal and immediately effective as to Plaintiff's choice of representation.

3. Consistent with Plaintiff's termination of counsel, Attorney Racine Miller filed a pending Motion to Withdraw as Attorney for Plaintiff (ECF No. 216). That motion remains pending before this Court.

4. Defendants filed a response in opposition to the withdrawal (and/or to Plaintiff's pro se appearance). That opposition is wholly frivolous, lacks any citation to controlling authority, and demonstrates no prejudice, delay, or harm to Defendants or the orderly administration of this case. More egregiously, the opposition appears to be the direct result of threats of blackmail and extortion made by agents of the opposing parties against Plaintiff and/or his former counsel. The clear and improper purpose of these threats is to force Racine Miller and the Michigan Law Firm to remain in the case so that Defendants can continue to exert improper control and influence over Plaintiff's former counsel for their own benefit, rather than permitting Plaintiff to exercise his statutory right of counsel of his choice or to self-representation.

5. This improper opposition is further compounded by the egregious conduct of Defendants' counsel and agents. On January 3, 2025, Shomshon Moskowitz of Cascade Capital Group LLC (who is not counsel of record in this action) sent an unsolicited email directly to Plaintiff's then-counsel Racine Miller, threatening "Rule 11" sanctions and insinuating that his clients would file false reports with "law enforcement" in order to obtain a civil resolution. See Plaintiff's Complaint to the Attorney Registration and Disciplinary Commission of Illinois (ARDC) dated January 5, 2025, a true and correct copy of which is attached hereto as Exhibit A. Furthermore, John Rhoades, Scott Fryzel, Kevin Conner (of Dykema Gosset, retained to represent CIBC USA ) and Julie O'Connor (General Counsel, CIBC USA) — along with Jesse Roth, Shomshon Moskowitz, Nick Callahan and Robin Mahar — engaged in continuous threatening communications with Racine Miller, Michael Haeberle and Katherine London.

6. On September 13, 2024, Jesse Roth sent a letter to Racine Miller at the Michigan Law Firm threatening criminal harassment charges against plaintiff; on September 19, 2024, John Rhoades sent a follow-up letter citing rules of professional misconduct; and on September 20, 2024, Rhoades and Fryzel called the Michigan Law Firm and threatened disciplinary grievances and additional personal litigation. These threats were directed

ECF 252.pdf

by CIBC USA General Counsel Julie O'Connor and Cascade Capital Group Associate General Counsel Shomshon Moskowitz in an attempt to interfere with ongoing civil litigation and Plaintiff's attorney-client relationship. See Plaintiff's ARDC Complaint regarding Dykema counsel dated January 5, 2025, a true and correct copy of which is attached hereto as Exhibit B. All of the foregoing conduct violates Illinois Rule of Professional Conduct ("ILRPC") Rule 8.4(g), which provides that it is professional misconduct for a lawyer to "present, participate in presenting, or threaten to present criminal or professional disciplinary charges to obtain an advantage in a civil matter."

7.  In addition, Defendants' agents and counsel filed a false report with FBI Special Agent Richard Grout falsely alleging criminal harassment and attempted bank fraud by Plaintiff. This false report was made for the improper purpose of influencing Plaintiff's counsel and interfering with the proceedings in this instant case, in violation of 18 U.S.C. § 1001. See also Plaintiff's Objection to ECF 101 filed in the related Western District of Michigan action (ECF No. 105, p. 6, n.2) (referencing the FBI agent's statement that he did not believe Plaintiff was in violation of federal law related to the relevant communications at bar).

8.  Plaintiff requests that sanctions be imposed in the amount of $25,000 per counsel that joined in the opposition response. This amount reflects the severity of the egregious nature of the filing, the approximate costs incurred by Plaintiff due to the loss of counsel, and the additional expenses required to prosecute this action pro se while potentially seeking new representation. Plaintiff further demands that this Court refer the matter to the Attorney Registration and Disciplinary Commission of Illinois (ARDC) and the Michigan Attorney Grievance Commission for formal investigation, discipline, and public reprimand of Shomshon Moskowitz, Jesse Roth, John Rhoades, Scott Fryzel, Julie O'Connor, Nick Callahan, Samantha Zuba, Robin Mahar and all other participating opposing counsel and agents for the violations detailed herein and in Exhibits A and B.

9.  Defendants' filing is therefore not only legally baseless but was interposed for an improper purpose, namely, to harass Plaintiff, interfere with his statutory right to counsel of choice (including self-representation), and perpetuate Defendants' ability to manipulate and control opposing counsel through blackmail and extortionate tactics. Such egregious conduct warrants the imposition of sanctions against opposing counsel pursuant to Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927. This court gave explicit notice to counsel to withdraw any filings that were frivolous in nature at the hearing on April 9th, 2026, satisfying the notice to cure in rule 11(b). Plaintiff requests that sanctions be imposed in the amount of $25,000

ECF 252.pdf

per counsel that joined in the opposition response. This amount reflects the severity of the egregious nature of the filing, the approximate costs incurred by Plaintiff due to the loss of counsel, and the additional expenses required to prosecute this action *pro se* while potentially seeking new representation.

10. Granting leave to appear *pro se* and granting the pending motion to withdraw will not prejudice Defendants, will not delay the proceedings, and is consistent with the clear statutory command of 28 U.S.C. § 1654. Courts in this Circuit and across the country routinely grant *pro se* status to individual civil plaintiffs upon termination of counsel; denial of such a request exceeds the Court's authority and would constitute reversible error as an abuse of discretion. See, e.g., Washington v. Sherwin Real Estate, Inc., 694 F.2d 1081 (7th Cir. 1982).

11. Plaintiff is fully prepared to prosecute this action *pro se*, has demonstrated familiarity with the Federal Rules of Civil Procedure and this Court's Local Rules and requests that the Court enter an order forthwith.

WHEREFORE, Plaintiff Raymond E. Butler II respectfully requests that this Honorable Court:

A. Grant Attorney Racine Miller's pending Motion to Withdraw (ECF No. 216);

B. Grant Plaintiff leave to appear *pro se* in this civil action pursuant to 28 U.S.C. § 1654;

C. Strike or overrule Defendants' frivolous response in opposition in its entirety;

D. Impose sanctions against Defendant's counsel that filed the response in opposition (and each counsel that joined the opposition individually) in the amount of $25,000 per counsel pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. § 1927 for filing a frivolous, baseless, harassing, and improperly motivated opposition, reflecting the severity of the conduct and Plaintiff's approximate costs and expenses caused thereby;

E. Refer Shomshon Moskowitz, Jesse Roth, John Rhoades, Scott Fryzel, Julie O'Connor, Nick Callahan, Samantha Zuba, Robin Mahar and all other participating opposing counsel and agents to the Attorney Registration and Disciplinary Commission of Illinois and the Michigan Attorney Grievance Commission for formal investigation, discipline, and public reprimand for violations of ILRPC Rule 8.4(g), 18 U.S.C. § 1001, and related professional misconduct.

E. Direct the Clerk to enter Plaintiff's appearance and update the docket to reflect Plaintiff's *pro se* status and to serve all future filings directly upon Plaintiff; and

F. Grant such other and further relief as the Court deems just and proper.

Dutifully submitted,

/s/ *Raymond Earl Butler II*

Raymond E. Butler II
Plaintiff, Pro Se
773-997-0328
RaymondEButler@protonmail.com

ECF 252.pdf

# CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5 and Local Rule 5.5, I hereby certify that on April 29, 2026, I electronically filed the foregoing PLAINTIFF'S MOTION FOR LEAVE TO APPEAR PRO SE with the Clerk of the Court using the CM/ECF system, which will automatically send electronic notification of such filing to all attorneys of record who are registered CM/ECF users.

/s/ *Raymond Earl Butler II*

Raymond E. Butler II
Pro Se Plaintiff
14320 Shirley Rd.
Baraga, MI. 49908
773-997-0328
RaymondEButler@protonmail.com

ECF 252.pdf

# EXHIBIT A

From: **Shomshon Moskowitz** <smoskowitz@cascadellc.com>
Date: Fri, Jan 3, 2025 at 4:22 PM
Subject: RE: Butler V Eddi et al.
To: Racine Miller <racine@themichiganlawfirm.com>
Cc: Jesse Roth <JRoth@maddinhauser.com>, Josh Freedman <josh@themichiganlawfirm.com>

Racine,

Thank you for your response. I believe these discussions are always more productive over the phone or in person, but if you're unavailable, email will suffice for now. Like you, I am optimistic that we can resolve this matter amicably.

We received an alert from CIBC that on or about January 2, 2025, your client, Raymond Butler, visited a CIBC branch and engaged with a banker in yet another ill-advised attempt to access Menachem Shabat's accounts and financial information. After being denied access, Mr. Butler allegedly began emailing the banker and the banker's father about this matter. These actions are what followed a series of inappropriate text messages sent to Mr. Shabat (attached) and other prior attempts to improperly access the financial information of both Mr. Shabat and Mr. Rajchenbach.

As an attorney, I trust you recognize these actions as, at minimum, harassment and at worst, potentially unlawful. While I suspect these actions are being taken without your knowledge or against your advice, the impact remains the same. My client is deeply concerned for their safety and that of their families and is escalating the matter to law enforcement. I am reaching out to you directly in an effort to de-escalate this situation before it spirals further.

The basis of your client's actions appears to rest on the erroneous claim that the GPN Family Trust (established by Mr. Rajchenbach) and the Doros Generation Trust (established by Mr. Shabat) were created by Jack Finn in 1989. However, even your client's pleadings acknowledge that these trusts were established on April 28, 2008 (*See* Amend Compl. Paragraph 27.) Jack Finn had no role in creating or managing these trusts. His financial interactions with my clients were strictly limited to their acquisition of the Lake Cook Nursing Terrace facility via bank financing and a seller's note. The claims in your client's complaint are, quite simply, baseless.

I do not expect you to take my word at face value. If needed, we can establish a mechanism to verify these facts, though litigation may force the issue. Should that path be necessary, it will become evident that your client's claims are fabricated, and your representation of these misrepresentations in federal pleadings will carry significant consequences. My client is prepared to seek Rule 11 sanctions and any other appropriate relief.

Before we reach that point, I appeal to you, lawyer to lawyer, to critically evaluate your client's claims. Ask Mr. Butler for even a single document—just one—that substantiates his assertion that the GPN or Doros trusts were established in the late 1980s or early 1990s or any of the other innumerable allegations made against my clients in your complaint and pleadings. If no such evidence exists (and I am confident it does not), I urge you to consider redirecting your client's efforts toward resolution rather than perpetuating baseless litigation.

I truly hope that we can find a way to navigate this issue that spares all parties further conflict. Please let me know how you would like to proceed.

As always, feel free to give me a call if you'd like to discuss further.

**Shomshon Moskowitz**
**Associate General Counsel | Cascade Capital Group**
3450 Oakton St., Skokie, IL 60076
**O:** 847-745-7217  |  **C:** 312.961.2336  |  smoskowitz@cascadellc.com  |  Cascadellc.com

*NOTE: This email and any attachments hereto, is intended only for use by the addressee(s) named herein and may contain information which is confidential or privileged. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited. If you have received this email in error, please notify us by telephone and immediately and permanently delete the original and any copy or printout thereof.*



ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION
of the
SUPREME COURT OF ILLINOIS

## COMPLAINT FORM

**Use this form to file a complaint about:**
**1) an Illinois lawyer;**
**2) a non-Illinois lawyer who has provided legal services in Illinois; or**
**3) a non-lawyer who you are claiming has engaged in the unauthorized practice of law in Illinois.**

**Return the completed form by e-mail, mail or facsimile to:**

| | | |
|---|---|---|
| **ARDC** | | **ARDC** |
| **130 E. Randolph Dr., Ste. 1500** | | **3161 W. White Oaks Dr., Ste. 301** |
| **Chicago, IL 60601-6219** | **or** | **Springfield, IL 62704** |
| **Phone: (312) 565-2600 or (800) 826-8625** | | **Phone: (217) 546-3523 or (800) 252-8048** |
| **Fax: (312) 565-2320** | | **Fax: (217) 546-3785** |
| **Email: information@iardc.org** | | **Email: information@iardc.org** |

**1.** Your name:  **Raymond Butler**

Street address:  **14320 Shirley Rd**

City:  **Baraga**          State: **Michigan**          Zip:  **49908**

Home phone:          Work phone:          Cell phone:  **773-997-0328**

Email address:  **rbutler@cannabestinc.com**

**2.** Name of lawyer/person you want to be investigated:  **Shomshon Moskowitz**

Name of law firm or business:  **Cascade Capital Group LLC**

Street address:  **3450 Oakton St**

City:  **Skokie**          State:  **IL**          Zip:  **60076**

Phone:  **847-745-7217**

Email address:  **smoskowitz@cascadellc.com**

**3.** Have you previously contacted the ARDC regarding this matter?    Yes ☐    No ☑

If yes, when and how did you contact us?

**4.** Did you employ the lawyer/person you are complaining about:    Yes ☐    No ☑

**4a.** If you answered yes to question 4:

When did the employment start?

What was the fee agreement?

How much have you paid the lawyer/person to date?

*over*

**4b.** If you answered no to question 4 what is your connection to the lawyer/person?

**Shomshon Moskowitz represents Chaim Rajchenbach and Menachem Shabat (and respective family members) personally and professionally as associate general counsel of cascade capital group.**
**The Rajchenbachs and Shabats are opposing litigants in Butler v. Eddi (2:24-cv-00134) and are represented by attorney of record Jesse Louis Roth of Maddin Hauser Roth & Heller, P.C.**

**5.** If your request relates to a court case or other proceeding, please provide the following:

Name of court or agency:   **Western District of Michigan & Cook County Chancery Court**

Name of case:   **Butler v. Eddi et al & Butler v. Eddi**

Case number:   **2:24-cv-00134 & 2022CH00675**

**6.** Please explain your complaint(s). Include important dates and names of witnesses and others involved. Use additional pages if necessary. Attach copies of documents that support your complaint, such as fee agreements, receipts, checks, letters and court papers.

**On 1/3/2025, one of my attorneys in the above refrenced matter, Racine Miller of The Michigan Law Firm received the unsolicited and attached email correspondonce from Shomshon Moskowitz, an Illinois Attorney who has not appeared and is not on record in either case, state or federal. Mr. Moskowitz is not liscensed or admitted to practice in any Michigan courts, yet felt it neccesary to directly threaten Racine Miller and myself with "Rule 11" sanctions and insinuating his client will be filing false reports with "law enforcement" in order to obtain a civil resolution.**

**This is in direct violation of ILRPC Rule 8.4(g) which states:**

**"provides that it is proffesional misconduct for a lawyer to "present, participate in presenting, or threaten to present criminal or proffesional disciplinary charges to obtain an advantage in a civil matter."**

**Futhermore, through counsel Jesse Roth and John Rhodes of Dykema, threats of proffesional disciplinary charges against Racine Miller were verbally conveyed over the phone as can be corroberated through the attached letters recieved.**

Signature: _____   Date: **1/5/2025**

# EXHIBIT B

ECF 252.pdf



ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION
of the
SUPREME COURT OF ILLINOIS

## COMPLAINT FORM

**Use this form to file a complaint about:**
**1) an Illinois lawyer;**
**2) a non-Illinois lawyer who has provided legal services in Illinois; or**
**3) a non-lawyer who you are claiming has engaged in the unauthorized practice of law in Illinois.**

**Return the completed form by e-mail, mail or facsimile to:**

| | | |
|---|---|---|
| **ARDC** | | **ARDC** |
| **130 E. Randolph Dr., Ste. 1500** | | **3161 W. White Oaks Dr., Ste. 301** |
| **Chicago, IL 60601-6219** | **or** | **Springfield, IL 62704** |
| **Phone: (312) 565-2600 or (800) 826-8625** | | **Phone: (217) 546-3523 or (800) 252-8048** |
| **Fax: (312) 565-2320** | | **Fax: (217) 546-3785** |
| **Email: information@iardc.org** | | **Email: information@iardc.org** |

**1.** Your name: **Raymond Butler**

Street address: **14320 Shirley Rd**

City: **Baraga**   State: **Michigan**   Zip: **49908**

Home phone:   Work phone:   Cell phone: **773-997-0328**

Email address: **rbutler@cannabestinc.com**

**2.** Name of lawyer/person you want to be investigated: **John Rhoades, Scott Fryzel, Julie O'Connor**

Name of law firm or business: **Dykema Gosset**

Street address: **10 South Wacker Drive**

City: **Chicago**   State: **IL**   Zip: **60606**

Phone: **312-876-1700**

Email address: **jrhoades@dykema.com , sfryzel@dykema.com**

**3.** Have you previously contacted the ARDC regarding this matter?   Yes **✔**   No ☐

If yes, when and how did you contact us? **via request for investigation on 1/5/2025 for Shomshon Moskowitz**

**4.** Did you employ the lawyer/person you are complaining about:   Yes ☐   No **✔**

**4a.** If you answered yes to question 4:

When did the employment start?

What was the fee agreement?

How much have you paid the lawyer/person to date?

*over*

**4b.** If you answered no to question 4 what is your connection to the lawyer/person?

**John Rhoades and Scott Fryzel of Dykema have been retained to represent CIBC USA under the direction of General Counsel Julie O'Connor. Along with Defense Counsel Jesse Roth and Cascade Capital Group Associate General Counsel Shomshon Moskowitz, these individuals all participated in professional misconduct by continousley engaging with threatening communications with my attorney Racine Miller.**

**5.** If your request relates to a court case or other proceeding, please provide the following:

Name of court or agency:   **Western District of Michigan & Cook County Chancery Court**

Name of case:   **Butler v. Eddi et al & Butler v. Eddi**

Case number:   **2:24-cv-00134 & 2022CH00675**

**6.** Please explain your complaint(s). Include important dates and names of witnesses and others involved. Use additional pages if necessary. Attach copies of documents that support your complaint, such as fee agreements, receipts, checks, letters and court papers.

**On 9/13/2024, one of my attorneys in the above refrenced matter, Racine Miller of The Michigan Law Firm received the attached letter from Jesse Louis Roth, an Michigan Attorney who has appeared as defense counsel for Chaim Rajchenbach and Menachem Shabat in Butler v. Eddi et al. Mr Roth threatened criminal harassment charges for my inquiry to the bank about my family trusts. he did so again, reiterating the same threats in a leter letter dated 12/23/24.**

**On 9/19/2024 the attached letter was received from John Rhoades of Dykema Gosset and details the same narrative as before, with the addition of thinly veiled threats in the form of citing the rules of professional misconduct. On 9/20/2024 John Rhoades and Scott Fryzel call the Michigan Law Firm under the guise of discussing the matter with Racine Miller, but instead threatend disciplinary greivances to be filed against her and additional litigation personally.**

**Both of these instances were directed by CIBC USA General Counsel Julie O'Connor and Cascade Capital Group Assosciate General Counsel Shomshon Moskowitz in an attempt to intefere with ongoing civil litigation and my attorney-client relationship.**

**This is in direct violation of ILRPC Rule 8.4(g) which states:**

**"provides that it is proffesional misconduct for a lawyer to "present, participate in presenting, or threaten to present criminal or proffesional disciplinary charges to obtain an advantage in a civil matter."**

Signature: _____   Date: **1/5/2025**

# EXHIBIT 2

**From:** RaymondEButler@protonmail.com

**Sent time:** 05/17/2026 08:25:43 AM

**To:** Jeffery D. Hoffenberg <jhoffenberg@lplegal.com>; Gary I. Blackman <gblackman@lplegal.com>; Jessa M. Baker <jbaker@lplegal.com>

**Subject:** Re: FINAL DEMAND FOR IMMEDIATE AND UNCONDITIONAL WITHDRAWAL

**Attachments:** ECF264.pdf

---

There will not be a withdrawal of the Motion for Disqualification or Sanctions, and I will show NO mercy for Robin Mahar, (or for Levenfeld Pearlstein if you allow her to continue unethically)

-------- Original Message --------

On Wednesday, 05/13/26 at 22:50 RaymondEButler@protonmail.com wrote:

Counsel(s),

Attached is your FINAL DEMAND LETTER.

Comply in full within TEN (10) days. No extensions. No excuses. Zero tolerance.

Raymond Earl Butler II

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RAYMOND E BUTLER, II,

        Plaintiff,

v.

ELI JACKFINN EDDI a/k/a ELY EDDI, ILANA FINN EDDI, DORINE
MAGENCE, MANUEL MAGENCE, JEFFREY K. GUTMAN,
NACHSHON DRAIMAN, WILLIAM KANTER, JOEL S. ROTHMAN,
MOSHE SOLOVEICHIK, ALAN GREEN, JERRY CHERNEY, SHMUEL
FUERST, HAROLD KATZ, SAMUEL MASLATON, DANIEL BERGMAN,
IRVING BIRNBAUM, ARON STANTON, CHAIM RAJCHENBACH, RIVKA
RAJCHENBACH, AVRUM RAJCHENBACH, MENACHEM SHABAT, AHUVA
SHABAT, RONALD SHABAT, ERIC ROTHNER, COLMAN GINSPARG,
JAMES MAINZER, MARSHALL K. BROWN, JEFFREY FINN, MEIR "AARON"
COHEN, GARRY CHANKIN, NANCY ROSEN, MARK ANTEBI, BARRY
ANTEBI, DAVID R. RAANAN, and ELLIOT E. ANTEBEI.

        Defendants.

Case No. 1:25-cv-04443
Hon. April Perry

## STIPULATION TO WITHDRAW RACINE M. MILLER AND THE MICHIGAN LAW FIRM, PC AS COUNSEL FOR PLAINTIFF

IT IS HEREBY STIPULATED and agreed by and between Plaintiff Raymond E.

Butler, II and Racine M. Miller/The Michigan Law Firm, PC, as evidenced by their

signatures affixed hereto, that Racine M. Miller and The Michigan Law Firm, PC may

withdraw as counsel for Plaintiff in this matter.

Plaintiff and Attorney Miller stipulate that Plaintiff terminated Attorney Miller

and The Michigan Law Firm, PC on or about September 2025 and revoked their authority

to act on his behalf in this matter. Attorney Miller appeared in this matter pro hac vice

and filed a Motion to Withdraw as Plaintiff's Counsel on September 2, 2025. ECF No.

216.

The parties to this Stipulation further stipulate that withdrawal is appropriate under Northern District of Illinois Local Rule 83.17 and Illinois Rule of Professional Conduct 1.16(a)(3), which provides that a lawyer shall withdraw if "the lawyer is discharged." The Seventh Circuit has recognized that "clients may dismiss their attorneys for any reason, good or bad," and that "a fired lawyer has no entitlement—certainly no 'fiduciary duty'—to continue acting on the ex-client's behalf." County, Mun. Emps.' Supervisors' & Foremen's Union Local 1001 v. Laborers' Int'l Union of N. Am., 365 F.3d 576 (7th Cir. 2004).

The parties to this Stipulation further stipulate that withdrawal will not prejudice ongoing proceedings.

/s/ *Raymond Earl Butler II*
RAYMOND E. BUTLER, II.
Plaintiff, Pro Se

/s/ Racine M. Miller
THE MICHIGAN LAW FIRM, PC
RACINE M. MILLER, pro hac vice
THE MICHIGAN LAW FIRM, PC
Former Counsel for Plaintiff

Dated: May 15th, 2026

2

CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5 and Local Rule 5.5, I hereby certify that on May 15th, 2026, I electronically filed the foregoing PLAINTIFF'S STIPULATION TO WITHDRAW with the Clerk of the Court using the CM/ECF system, which will automatically send electronic notification of such filing to all attorneys of record who are registered CM/ECF users.

/s/ *Raymond Earl Butler II*

Raymond E. Butler II
Pro Se Plaintiff
14320 Shirley Rd.
Baraga, MI. 49908
773-997-0328
RaymondEButler@protonmail.com

# EXHIBIT B

| **From:** | Graciela Negrete <gnegrete@lplegal.com> |
|---|---|
| **Sent time:** | 05/14/2026 05:15:48 PM |
| **To:** | racine@themichiganlawfirm.com |
| **Cc:** | Robin D. Maher <rmaher@lplegal.com>; keithaltman@kaltmanlaw.com; gdashman@aol.com; jborcia@tresslerllp.com; nick.callahan@bfkn.com; kconnor@dykema.com; mcurry@honigman.com; stuart.deming@deminggroup.com; mark.dunaevsky3@gmail.com; tfrench@plunkettcooney.com; sgarver@hallmatson.law; Thall@HallMatsonLaw.com; jhengeveld@plunkettcooney.com; bkirsch@smbtrials.com; Katherine London <klondon@kmfllaw.com>; alan@mandelaw.net; wboberts@obertsgalasso.com; jpearce@clausen.com; mradler@honigman.com; jrhoades@dykema.com; briordan@clausen.com; rosen@ashmanstein.com; jroth@maddinhauser.com; jsmith@tresslerllp.com; mrspanel@obertsgalasso.com; jsullivan@plunkettcooney.com; psullivan@hinshawlaw.com; bwassom@wnj.com; gweintraub@bartonhealthcare.org; jweller@hinshawlaw.com; samantha.zuba@bfkn.com |
| **BCc:** | {F1728591}.Active@lplegal.imanage.work |
| **Subject:** | Butler v. Eddi et al., Case No. 25-cv-4443 (N.D. Ill.) [LP-ACTIVE.50030.50030.147010.FID1728591] |
| **Attachments:** | Eddi - Rule 11 Notice.pdf    LPDemand.pdf    2026.09.23 Plaintiffs' Motion to Disqualify Attorney.pdf    2026.10.23 Defendants' Response to Motion to Disqualify.pdf    2026.12.17 Order re 12.16.26 Hearing.pdf    Butler Hearing 12-16-2025.pdf |

Hello Ms. Miller,

Please see the attached correspondence on behalf of Robin Maher, counsel for Ilana Finn Eddi.

Best regards,



**Levenfeld Pearlstein, LLC**
120 S Riverside Plaza, Suite 1800
Chicago, IL 60606 USA
lplegal.com

**Robin D. Maher**
Partner
rmaher@lplegal.com
T +1 (312) 476-7605

Racine M. Miller
135 N. Old Woodward Ave.,
Suite 270
Birmingham, MI 48009
Email: racine@themichiganlawfirm.com

   Re:  <u>Butler v. Eddi et al., Case No. 25-cv-4443 (N.D. Ill.)</u>

Ms. Miller,

Pursuant to Federal Rule of Civil Procedure 11(c)(2), we write to request that your client, Raymond E. Butler II, withdraw Plaintiff's Motion to Disqualify Attorney Robin D. Maher (DKT 226), filed September 10, 2025 and Plaintiff's Motion for Sanctions Against Attorney Robin Maher (DKT 233), filed October 31, 2025, in the United States District Court for the Northern District of Illinois, Case No. 1:25-cv-04443 before the May 21, 2026 status date set by DKT 263.

Plaintiff's motion seeking to disqualify Ms. Maher and Levenfeld Pearlstein, LLC ("LP") is frivolous. On September 23, 2025, Plaintiff filed the enclosed Motion to Disqualify Attorney Robin D. Maher (the "Cook County Motion to Disqualify"), which is based on the same grounds as DKT 226, in the Circuit Court of Cook County, Chancery Division, in Case No. 2022 CH 00675. For the reasons stated in the enclosed Defendants' Response to Plaintiff's Motion to Disqualify, there is no basis for the requested disqualification under the facts or the law. Critically, the Honorable Allen P. Walker denied the Cook County Motion to Disqualify, after a full hearing, on December 16, 2025. The December 16, 2025 Order and transcript of the hearing are enclosed.

Given that the Cook County Court has already considered and denied disqualification of Ms. Maher and LP based on the same grounds, DKT 226 and DKT 233 are meritless, duplicative and a waste of judicial resources.

If Plaintiff fails to withdraw DKT 226 and DKT 233, my clients will file a motion for sanctions under Rule 11(b) and 28 U.S.C. § 1927, as well as for violation of this Court's warning at the April 9, 2026 hearing directing the parties to withdraw frivolous motions" (Dkt. 250 at 15:19-16:1) seeking, among other available relief including attorneys' fees, an order prohibiting Plaintiff from filing any pleadings, filings, or lawsuits without express permission of the court (*See, e.g.*, Sassower v. Am. Bar Ass'n, 33 F.3d 733, 736 (7th Cir. 1994) (among other relief, ordering future filings be treated as presumptively frivolous because "[b]oth the defendants and the judicial system (which is to say, other litigants) are entitled to protection from [litigant's] misuse of legal processes") and dismissal of the case (*See, e.g., Curry v. Bantista*, 2026 WL 1161424 (7th Cir. 2026) (holding that repeated bad faith filings can ultimately result in the sanction of case dismissal).

Additionally, between approximately 10:00pm on May 13 and the early hours of May 14, 2026, Mr. Butler sent the enclosed Final Demand for Immediate and Unconditional Withdrawal to Ms. Maher, Jeffrey Hoffenberg, Managing Partner of LP, Jessa Baker, Chief Executive Officer of LP, Gary Blackman, General Counsel of LP, and approximately 150 other LP partners and employees. I assume you are aware of this communication because it purports to copy all counsel of record in 1:25-cv-04443. In the communication Mr. Butler threatened the following:

> Levenfeld Pearlstein, LLC, Robin D. Maher, and every partner or agent who authorized, ratified, or acquiesced in this misconduct will be added as named Defendants in a federal RICO action for tortious interference, breach of fiduciary duties to a prospective client, and RICO predicate acts; Plaintiff will seek maximum sanctions against the firm and all responsible attorneys under Fed. R. Civ. P. 11, 28 U.S.C. § 1927, and the Court's inherent authority, including but not limited to monetary sanctions, disqualification of all LP attorneys, and referral for criminal contempt if warranted.

We reserve the right to file a motion seeking to prohibit Mr. Butler from directly contacting attorneys or persons employed by the law firms representing parties in 1:25-cv-04443, as well as a pre-filing injunction or other filing restrictions prohibiting Mr. Butler, either pro se or through a lawyer, from filing lawsuits against the law firms, attorneys or persons employed by the law firms, related to the subject matter of 1:25-cv-04443. *Smith v. United States Cong.*, No. 25-1148, 2025 WL 2887021, at *2 (7th Cir. Oct. 10, 2025) (confirming that "the judiciary has 'ample' authority to curtail abusive filing practices" and affirming a filing bar against a vexatious litigant.)

Defendants reserve all other rights.

Sincerely,

*Robin Drey Maher*

Robin D. Maher

cc:     Counsel of Record

# EXHIBIT C

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

RAYMOND BUTLER II          )
                           )
    Plaintiff          )
                           )
                           )    Case No. 2022 CH 00675
  v.                      )
                           )    Honorable Allen P. Walker
ILANA EDDI and ELY EDDI, individually )
and as Trustees of the Jack Finn Irrevocable )
Trust                      )
                           )
    Defendants.        )

## ORDER

This matter coming to be heard on December 16, 2025 for hearing on Plaintiff's Motion to Disqualify Attorney Robin Maher Due to Conflicts of Interest, Plaintiff's Motion to Compel Against CIBC Delaware Trust Company, Plaintiff's Motion to Compel Against William Kanter, and Plaintiff's Motion to Compel Against Brickyard Bank; Attorney Katherine London appearing for Plaintiff Raymond Butler, Attorney Robin Maher appearing for Defendants Ilana and Ely Eddi, Attorney Kevin Connor appearing for non-party CIBC Delaware Trust Company, Attorney Bryan Kirsch appearing for non-party William Kanter, Attorney Alyssa Friedman appearing for non-party Brickyard Bank; the Court being advised that; **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion to Disqualify Attorney Robin Maher Due to Conflicts of Interest is denied for the reasons stated on the record.

2. Plaintiff's Motion to Compel CIBC Delaware's compliance with subpoena is denied for the reasons stated on the record.

3. Plaintiff's Motion to Compel William Kanter's compliance with subpoena is denied for the reasons stated on the record.

LP 25604579.1 \ 50030.147010

4. Plaintiff's Motion to Compel Brickyard Bank's compliance with subpoena is denied for the reasons stated on the record.

5. With respect to non-party subpoena respondent Brickyard Bank's request for attorneys' fees and non-party subpoena respondent CIBC Delaware's requests for attorneys' fees and that the plaintiff get prior court approval before issuing additional subpoenas to any CIBC entities, (i) Brickyard Bank shall file a written motion for attorneys' fees; (ii) Plaintiff shall file any written response on or before January 6, 2026, (iii) non-party subpoena respondents shall file any written reply on or before January 20, 2026; and (iv) status hearing on the briefing shall be held on **February 17, 2026 at 10 a.m**.

6. Plaintiffs oral request to take depositions of representatives of the non-party subpoena respondents is denied, without prejudice, for the reasons stated on the record.

7. This matter shall be heard on **January 22, 2026 at 10 a.m.** for case management and to set a date for trial.

8. The parties are to submit a proposed case management order, including dates for expert disclosures and dispositive motions, to the Court prior to the case management hearing.

ENTER:



Honorable Allen P. Walker

ENTERED
Associate Judge Allen Price Walker-2071
DEC 17 2025
MARIYANA T. SPYROPOULOS
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

# EXHIBIT D

Page 1

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

COUNTY DEPARTMENT -- CHANCERY DIVISION

RAYMOND E. BUTLER II                    )

                                        )

    Plaintiff,                          )

                                        )

      v.                              ) No. 22 CH 675

                                        )

ILLANA EDDI and ELY EDDI,               )

individually and as Trustees            )

of the Jack Finn Irrevocable Trust )

    Defendants.                         )

        Transcript of the proceedings had in the above mentioned matter before the Honorable Allen Walker on the 16th of December, 2025.

Page 2

APPEARANCES:

 KMFL LAW, by

 MS. KATHERINE LONDON

 100 Illinois Street

 Suite 200

 Saint Charles, Illinois 60174

 appeared on behalf of the plaintiff;

 LEVENFELD PEARLSTEIN, by

 MS. ROBIN DREY MAHER

 120 South Riverside Plaza

 Suite 1800

 Chicago, Illinois 60606

 appeared on behalf of the defendant;

 SWANSON, MARTIN & BELL, LLP by

 MR. BRYAN JONATHAN KIRSCH

 330 North Wabash Avenue

 Suite 1800

 Chicago, Illinois 60611

 appeared on behalf of the non-party William

Kanter;

Page 3

 DYKEMA GOSSETT, PLLC, by

 MR. KEVIN CONNOR

 10 South Wacker Drive

 Suite 2300

 Chicago, Illinois 60606

 appeared on behalf of the non-party CIBC

 KILPATRICK TOWNSEND & STOCKTON, LLP, by

 MS. ALYSSA HARLEY FRIEDMAN

 500 West Madison Street

 Suite 3700

 Chicago, Illinois 60661

 appeared on behalf of the non-party Brickyard Bank

ALSO PRESENT:

 Raymond E. Butler II, Plaintiff

Page 4

P R O C E E D I N G S

THE COURT:  Court's in session.

THE CLERK:  2022 CH 00675, Butler v. Eddi.

MS. LONDON:  Katherine London on behalf of Plaintiff Raymond Butler, who's present on Zoom.

THE COURT:  Good afternoon.

MS. FRIEDMAN:  Alyssa Friedman for third party Brickyard Bank (phonetic).

THE COURT:  Friedman, I hear you.

MR. CONNOR:  Kevin Connor, Your Honor, on behalf of non-party subpoena respondent CIBC.

MR. KIRSCH:  And Bryan Kirsch on behalf of non-party William Kanter.

MS. MAHER:  Good afternoon, Your Honor.  Robin Maher on behalf of Illana and Ely Eddi, the defendants.

THE COURT:  All right.  Is that everyone?

All right.  Let's address the motion to disqualify.

MS. LONDON:  Yes, Your Honor.  We filed a reply in support of our motion to disqualify, and I would stand on my motion, and answer any questions the Court has.

THE COURT:  Well, the Court's sort of curious.  What is it that you leads you to believe that Ms. Maher was privy to conversations with Mr. Carey?

Page 5

MS. LONDON:  Well, Your Honor, she worked there at the time, so we believe that she had conversations while they were doing a conflict check.

THE COURT:  What's the --

MS. LONDON:  And that based --

THE COURT:  Yeah.  What's the basis for that?

MS. LONDON:  I mean, that's our belief, Your Honor.  We believe that because she was there --

THE COURT:  But Ms. London, a lot of people believe a lot of things, and yet --

MS. LONDON:  Here we go.

THE COURT:  -- there is no bases for.  What is it based on that there was a conversation between the two that would lead you to file this motion?

MS. LONDON:  I don't know if there was a conversation specifically between those two attorneys, Your Honor.  I just believe that --

THE COURT:  Then let me ask you this question.  What was the confidential information that was gleaned as a consequence of a conversation, alleged conversation?

MS. LONDON:  Well, I don't know that he actually had to reveal any confidential information.

THE COURT:  Okay.  What was --

Page 6

MS. LONDON: In court --

THE COURT: Yeah. So what information did your client give that gives Ms. Maher an advantage that would violate --

MS. LONDON: Your Honor, we --

THE COURT: -- that would violate the code of ethical conduct?

MS. LONDON: I believe that when my client had conversations with Mr. Carey and the next person at the second law firm, he discussed specific details related to evidence, and the --

THE COURT: What specifically did he discuss because it's not in the email?

MS. LONDON: Well, I can have -- because I don't need -- Your Honor, we don't have to reveal what the confidential information is because that would make it --

THE COURT: Well --

(Simultaneous speaking)

MS. LONDON: -- no longer confidential. But I can have him --

THE COURT: Well, he doesn't --

MS. LONDON: -- testify.

THE COURT: -- say in his affidavit that he even

Page 7

discussed confidential information. And it's in his affidavit, right? I mean, that's why we do an affidavit to provide compelling evidence. So what in his affidavit shows that he either discussed confidential information, or he provided Mr. Carey with some information that will then give Ms. Maher, who allegedly had a conversation with Mr. Carey, but nobody says that, an advantage, or would violate her ethical obligations or the code of conduct?

MS. LONDON: He says that he discussed his case details, including trust claims and involved parties. And that Mr. Carey further revealed specific details regarding his case. He did not put those in his affidavit because they were confidential.

THE COURT: But what did he say that -- but that does not -- that's not what --

MS. LONDON: Where?

THE COURT: Where does he --

MS. LONDON: I'm sorry, Judge.

(Simultaneous speaking)

THE COURT: His affidavit, paragraph 4 says --

MS. LONDON: Yes.

THE COURT: "I initiated contact." And then he spoke with Jim Carey "to discuss my case details

Page 8

including trust claims, involved parties, and Carey requested specific details regarding my case. I further provided the requested details, which including names of parties, counsel, and interested persons."

So all of those things are necessary it seems to me for them to do a conflicts check, right?

MS. LONDON: Yes.

THE COURT: Okay. He doesn't say that Mr. Carey had a conversation with Ms. Maher, does he?

MS. LONDON: No, Judge, he doesn't say that.

THE COURT: And how many lawyers were in the firm of Leven, Schreder and Carey?

MS. LONDON: I don't know, Judge. I don't know how many lawyers were there.

THE COURT: Wouldn't that matter?

MS. LONDON: I think it matters that she was there.

THE COURT: Well, okay. She was there. If there's 250 -- hold on.

MS. LONDON: It's a small, boutique --

THE COURT: If there were -- if there were 250 lawyers there, the fact that she was there really wouldn't make much difference, would it?

MS. LONDON: I see where you're going, Your Honor.

Page 9

I believe it was a small, boutique firm in which case it would matter.

THE COURT: What's your definition of small?

MS. LONDON: Eleven, twelve attorneys.

THE COURT: Okay. So there are 12 lawyers there, and she's there. So based on the fact that there may be 12 lawyers there, the fact that she was there -- was she there on the day that Mr. Carey spoke with your client?

MS. LONDON: I don't have -- she was employed there, but I don't know if she was there that day.

THE COURT: Was she there the day after your client spoke with Mr. Carey?

MS. LONDON: I wouldn't know any of that information, Your Honor.

THE COURT: Well, kind of -- wouldn't you need to know that to determine whether or not there's a violation of some ethical allegation? I'm unfamiliar with the ethical obligation that just because she exists in a firm, that somebody in the firm has a conversation with a potential client, that you somehow or other violated the rules of ethics because you were in the firm, and you leave and go to another firm. And you go to another firm that had a -- that basically did

Page 10

a conflicts check and refused to represent your -- and decided not to represent your client, and all that happened before we get to the next firm. Show me where the ethical violation occurs.

MS. LONDON: Judge, the rules of professional conduct explain this very clearly in terms of a small firm like this, especially where Ms. Maher was a partner.

THE COURT: All right.

MS. LONDON: The fact that --

THE COURT: Point me to the rule.

MS. LONDON: Okay. Under rule -- I believe, it's --

THE COURT: 1. --

MS. LONDON: -- 1.7.

THE COURT: -- 18?

MS. LONDON: 1. --

THE COURT: 1.18?

MS. LONDON: Yes, Judge. Let me just confirm. I believe there's also 1.7. Yes, 1.8.

THE COURT: Okay. What does 1.18 say?

MS. LONDON: 1.18 is specifically designed to protect client's confidences so they're not forced to reveal sensitive information in public filings to prove

Page 11

a conflict. That's that rule.

THE COURT: Okay. Well, there wasn't a public filing here.

MS. LONDON: Well, no, because I didn't -- he did not put it in his affidavit, Your Honor.

THE COURT: Well, all I have is his affidavit, counsel. And he never --

(Simultaneous speaking)

MS. LONDON: The entire purpose --

THE COURT: He didn't -- he doesn't say -- this is what you just said, for public files. So the rule says, "A person who consults with a lawyer about the possibility of forwarding a client/lawyer relationship with respect to a matter is a prospective client even when no client/lawyer relationship existed (inaudible) a lawyer who has learned information from a prospective client shall not use, or reveal that information except as Rule 1.9 would permit with respect to the information of a former client."

1.9 says, "The client has to waive for a potential conflict. A lawyer subject to paragraph D shall not represent a client's interest materially adverse to those of a respective client in the same or substantially related matter if the lawyer received

Page 12

information from the prospective client that would be significantly harmful to that person in the matter."

What exactly is the information that was given to Mr. Carey that would harm him because all he gave him based on his affidavit was trust information, claims, and the involved parties, based on the affidavit?

MS. LONDON: Without having my client testify, I would say that it was most likely legal strategy, and evidence that has not yet been presented in a public forum.

THE COURT: Okay. Well, number one, your client completed an affidavit, and none of this is in there. Number two, why would legal strategy be discussed if the lawyer has not yet decided to take the person as one of his clients? And --

MS. LONDON: The --

THE COURT: But more to the point, this is not an action against Mr. Carey. This is an action seeking to disqualify Ms. Maher. So where is the connection between whatever it was he told Mr. Carey and Ms. Maher other than the fact that she worked in the firm? We don't know if she was there the day of, the day after, the next day after that, or at any point. Or that she had any conversation with Mr. Carey about this. So

Page 13

that's (inaudible) --

(Simultaneous speaking)

MS. LONDON: Your Honor --

THE COURT: Hold on. You're asking the Court --

MS. LONDON: I'm sorry.

THE COURT: -- to disqualify Ms. Carey [sic] because she worked in the firm at the time?

MS. LONDON: Yes, Judge.

THE COURT: Okay. Anything else, Ms. London?

MS. LONDON: No. No, Your Honor.

THE COURT: Ms. Maher?

MS. MAHER: Thank you, Your Honor. I don't know that I have a lot to say outside of the briefs. It sounds like Your Honor has looked at this very closely. The only thing I would point out, in the affidavit of Mr. Butler, he says that he "personally corresponded with Mr. Carey," and then he attached the correspondence. There's no statement in his affidavit that he had a conversation with Mr. Carey.

So we know what he told Mr. Carey. It's in the email that he attached. And that's the only reason I would have any reason to know what's in the -- what he told Mr. Carey.

And it's simply public information, the case

Page 14

filing numbers, and the parties for a conflict check. There is no significantly harmful information. I think I addressed all of the imputation questions in the briefing, and I'm happy to answer any questions you might have, Your Honor.

THE COURT: All right. Thank you.

Ms. London, anything else you want to say?

MS. LONDON: Your Honor, I believe that there was a conversation via phone from Mr. Butler and Mr. Carey. I understand that it was not in his affidavit, but just because it's missing, doesn't mean it didn't happen.

THE COURT: Can I ask you why you wrote in paragraph 1, "Maher's audacious intrusions only underscore her contempt for ethical boundaries,"?

MS. LONDON: Let me look, Your Honor. Is that in my first filing?

THE COURT: Yes, ma'am.

MS. LONDON: I don't have a copy of that, Your Honor. But I believe that I'm sure that's what it says, if that's what you're reading. Oh, here it is. You're in the first paragraph, Your Honor?

THE COURT: Paragraph designated number one, at the end of that paragraph, the end is not (inaudible) --

Page 15

(Simultaneous speaking)

THE COURT REPORTER: Your Honor, could you repeat that? I couldn't hear you. It's the court reporter.

THE COURT: My apologies, Mr. Court Reporter. At the end of the paragraph, it says, "Plaintiff stands to reclaim what these opportunities have stolen, and Ms. Maher's audacious intrusions only underscore her contempt for ethical boundaries."

MS. LONDON: Yes, Your Honor. Yes.

THE COURT: Why did you -- why did you write that?

MS. LONDON: Because we believe that her involvement in this case stems from her knowledge that she may have gained from Mr. Carey and other people involved in this case, and attempting to come in, and not sit for depositions, not email dates back regarding depositions after we have a phone call, not providing any discovery, and not doing anything in this case to move it forward --

THE COURT: Well, but Ms. London --

MS. LONDON: -- makes it seem --

THE COURT: -- everything after the first three or four words of your response are not related to the conflict, or what caused the conflict, potential conflict.

Page 16

And looking at the email, there's nothing in the email that is as you described. He says the trust (inaudible) interest of several million dollars. He's the only beneficiary of the trust. It's been fraudulently used by the co-trustee to fund a nursing home portfolio for their own gain. If there's something you want to discuss, please let me know.

So I'm curious based on this email that you read, because it's attached to your motion, how did you get to the point where you say in paragraph 1, "Ms. Maher's audacious intrusion only underscores her contempt for ethical boundaries."

MS. LONDON: Your Honor, there are additional emails that were not included in my motion.

THE COURT: Well, why weren't they included if they're probative of a conflict?

MS. LONDON: Because they contain confidential information.

THE COURT: Well, you could have redacted those.

MS. LONDON: Understood, Your Honor.

THE COURT: (Inaudible) in paragraph 2, you say, "The Plaintiff divulged sensitive details of his claims to James Carey, a partner there, who cynically requested names of parties, counsel, and interested

Page 17

persons for the purposes of a conflict check." Why is that cynical? Isn't that what he's required to do under the law in his ethical obligation to do a conflict check?

MS. LONDON: Yes, Your Honor.

THE COURT: So why did you call it cynical?

MS. LONDON: Because he asked a bunch of confidential questions.

THE COURT: Where? When? Where the (inaudible) --

MS. LONDON: During the conversation that he had with --

THE COURT: Where's the affidavit that says that?

MS. LONDON: I understand, Your Honor, that should have been in the affidavit.

THE COURT: Who prepared the affidavit, Ms. London?

MS. LONDON: I'm sorry?

THE COURT: Who prepared the affidavit?

MS. LONDON: I prepared it and reviewed it with my client.

THE COURT: Okay. Was the affidavit prepared before or after the motion?

MS. LONDON: It was prepared at the same time. I

Page 18

did the motion. I had him review it. We discussed exactly --

THE COURT: And so --

MS. LONDON: -- what had --

THE COURT: Okay. So when you were preparing the affidavit, knowing that you had written these things in the motion, you didn't put in evidence that would justify again the comment that, "Her audacious intrusion only underscores her contempt for ethical boundaries," and that, "Mr. Carey cynically requested the names of parties, counsels, and interested persons for the purposes of a conflict check," which is his ethical obligation to do?

MS. LONDON: Judge, these were based on phone conversations held outside --

THE COURT: Yeah. But Ms. London, you prepared this affidavit for your client, and you had a conversation or conversations with your client about these allegations. And you left out anything and everything that allegedly would demonstrate these allegations you make in paragraphs 1 and 2 of your motion.

MS. LONDON: Because they're confidential, Your Honor. I think --

Page 19

THE COURT: (Inaudible).

MS. LONDON: I understand --

THE COURT: Ms. London, let me explain something to you. This Court takes a dim view of conduct that strikes me as being punitive, and for which there is apparently no basis. And this is personally directed at Ms. Maher, and Mr. Casey [sic], and impugns their integrity without any basis whatsoever that is articulated in anything that you submitted to this Court, but the motion itself.

The Court expects all of the lawyers who appear in front of it to conduct themselves in a manner that is highly professional, and courteous. You could have filed this motion claiming that Ms. Maher had violated the rules of professional conduct without any of this language. It is wholly and completely unnecessary for the purpose of this motion. It is incendiary. It impugns their integrity. And it is wholly and completely unnecessary in this Court's view.

MS. LONDON: Yes, Judge.

THE COURT: Court's denying the motion. What's next?

MR. CONNOR: One moment, Your Honor, Plaintiff -- Kevin Connor, counsel for CIBC. Apologize, I'm trying

Page 20

to turn my camera on here. We also had the Plaintiff's motion to compel production of documents by CIBC. We filed an opposition response.

THE COURT: All right. Let's discuss that.

MR. CONNOR: Certainly. Ms. London, your motion. I don't know if you want to go first.

MS. LONDON: I'll stand on my motion. Go ahead. I don't even know if you -- do you have -- I apologize, Judge. I don't know if there's an appearance on file for Mr. Connor. I've only been speaking to Mr. Rhoades.

MR. CONNOR: Mr. Rhoades is my colleague. Yes, I am a lawyer at Dykema Gossett, our firm's appearance is on file.

THE COURT: Fine. So I'm just looking through what I have. I don't see the motion to compel when I looked (inaudible). I did have your response to the motion to compel. But Ms. London, what is that you're seeking to compel?

MS. LONDON: We were seeking to compel a subpoena -- or we were seeking to compel documents from Delaware Trust Company in Delaware regarding the actual trust. However, what we received was messages about how there were no accounts in the plaintiff's name.

Page 21

I had a phone call on July 15th with Counsel Rhoades where I specifically asked him which entities his firm represented in this matter, and he specifically said he was counsel for CIBC USA, and Canadian Imperial Bank of Commerce. Those are the only two we've been engaged by related to this matter. So we sent subpoenas via UIDDA out to about six other CIBC entities requesting information about trusts that were related in this case.

When I submitted those subpoenas, repeatedly in the clerk's office somehow, all of the dates of the signing of my subpoena and the dates that the subpoena information was to be returned by were deleted. So that resulted in me filing five different subpoenas, all for the same information because it was not leaving the clerk's office with a date to compel discovery to be returned, or the subpoena information to be returned.

When we went through UIDDA on July 29th, the clerk in Delaware decided they ran out of time to send the information back. So they didn't comply. I then had to send another subpoena. So now what we have is an affidavit from CIBC regarding the Delaware Trust Company stating that in November of this year, they

Page 22

don't have any trust documents.

What we were looking for was the trust documents way back in June of this year. One of the things that happened between us issuing the subpoenas and now is the LLC for the Delaware Trust Company has been dissolved. So there is no holder of record anymore for Delaware Trust Company because it doesn't exist.

So I don't even know that we can compel something that doesn't exist anymore. We've been asking for trust documents. What I keep getting back from CIBC is we don't have any accounts. We don't have any accounts because trustees have the accounts. Not the plaintiff.

THE COURT: All right.

MS. LONDON: So.

THE COURT: Mr. Connor?

MR. CONNOR: Your Honor. I mean, there was a lot there. I'd like to keep focused. The motion was with respect to compelling CIBC Delaware. That is the only entity that the motion mentions. And we have told, as Ms. London alluded, we've told her several times, we don't have these documents. The motion seems to me to say that the documents are there, and need to be produced.

Your Honor requested that we file an affidavit

Page 23

saying that we don't have those documents. We've done that. It's attached as Exhibit A to our supplemental response. Otherwise, I don't know how many other ways to inform the plaintiff that CIBC doesn't have these documents.

Only one as -- I don't know about the issue with the return dates and the clerk's office. So I won't speak to that except to say that we don't have proper service on any of the CIBC entities except for the Delaware one. We responded that we don't have documents. There's now an affidavit on file.

The Court has previously quashed two subpoenas issued to CIBC. We're trying to cooperate, and keep things efficient. But the subpoenas just keep coming. We don't have -- we don't have these documents.

And I need to be clear. Only the Delaware one is up. The others were not properly served. As to whether that's due to some issue with the clerk's office, as I said, I can't speak to that, and I won't speak to that. But the only subpoena before the Court today is the Delaware subpoena.

We don't have the records. We told Plaintiff's counsel that. We filed an affidavit to that effect. What matters is what we have now. We don't have

Page 24

anything. As far as I can tell, we never had anything. So I think that's that.

We do have a request for fees under Rules 219 and 137. As I mentioned, Your Honor's already quashed two subpoenas. We've been, I think, sufficiently clear that CIBC does not have the records that the plaintiff seeks. This has been going on for over a year now. So I think it is appropriate that plaintiff bear the costs of this motion and briefing.

THE COURT: Ms. London, your views?

MS. LONDON: Obviously, we don't agree, Your Honor. I don't know anything about not having proper service on the other entities because they were not of counsel, and they were not representing those entities. So I certainly didn't present service to them. That was not -- what's interesting, Your Honor, is that the story about who they represent keep changing, and the names of entities keep changing.

I don't know -- we were subpoenaing Delaware Trust Company. It no longer exists. It is now Private Wealth. When Mr. Connor says just Delaware, CIBC Delaware, that is not who I sent our subpoenas to.

We were specifically asking about the GPN and the Doros (phonetic) trusts. They continually said that

Page 25

they don't have any accounts. We were trying to clarify. I was bombarded with emails from Mr. Rhoades, which were in direct conflict with the conversation that we had had on July 15th.

And the affidavit that they sent says they don't have records now as of November 6th, 2025. It doesn't say they never had records. It says, "After a diligent search," I don't know when that was, we've been asking for these things since June.

I believe a lot of things have happened since June including the fact that the Delaware Trust Company now doesn't exist. So that is why we continued to send these subpoenas. I understand that now they are saying they represent these other entities, but they didn't at the time.

MR. CONNOR: Your Honor, may I respond to that?

THE COURT: Yeah.

MR. CONNOR: Your Honor, Mr. Rhoades, my co-counsel whom Ms. London has been referring to, did, in fact, send her two separate letters on August 4th when we got these.

And with respect to who CIBC represents, Your Honor, CIBC is not a party to this case. So we don't represent as of record any party until they're properly

Page 26

served with a subpoena. Nonetheless, Mr. Rhoades wrote two letters to Ms. London attached as Exhibit C and D to our supplemental response dated August 4th.

He identifies all seven CIBC entities, Bank Corp, Delaware, CBC National, the Private Wealth Group, Private Management, they're all laid out. And he offers to accept service on behalf of those entities. Ms. London did not take him up on that offer.

Nonetheless, we sent a supplemental letter explaining that none of these entities have the documents that she seeks. That letter is dated and was sent August 4th.

So with reference to the affidavit being filed in November, Your Honor may or may not recall that we were here a few months ago when this issue came up, and we explained everything I just explained to Your Honor.

And Your Honor asked us to file an affidavit into the record to make it official, so we did that. That's why that was done in November. It's not because there was something going on in between August and November.

As Mr. Rhoades' letter makes out in August 4th -- on August 4th, we didn't have any records then. This was sent very shortly after the subpoenas were issued. We offered to accept service on behalf of all seven

Page 27

entities. That was offer was not taken up.

Nonetheless, in the interest in getting this thing done, we let Ms. London know that none of those entities have the documents you needs.

THE COURT: You're referring to a letter that was Exhibit H?

MR. CONNOR: Excuse me, Your Honor. It's A and B. I mistake. I said C and D. It's A and B to the original response to the motion to compel, which was filed on August 22nd.

THE COURT: Because the affidavit indicates that they don't have the any records, the Court is going to deny the motion to compel.

Where are we otherwise with this case?

MR. KIRSCH: Your Honor, there's one more pending motion against my client, to compel William Kanter.

THE COURT: All right. I don't know that I've had an opportunity to look at that, but let's talk about it.

MR. CONNOR: Your Honor, I'm sorry, I don't mean to cut off counsel. But just with respect to -- I understand the motion to compel is denied. CIBC is getting --

(Simultaneous speaking)

Page 28

THE COURT: You've requested fees.

Ms. London, did you file a response to the request for fees?

MS. LONDON: Honestly, Your Honor, I would have to check. I filed so many things in this case. I don't believe that I did.

THE COURT: Okay. Would you like an opportunity to file a response to their request for fees?

MS. LONDON: Yes, Your Honor.

THE COURT: How much time?

MS. LONDON: Twenty-one days.

THE COURT: That's fine. Would you like a reply, Mr. Connor?

MR. CONNOR: Sure, Your Honor. Twenty-one days, that puts us into the new year. I guess, yeah, 14 days after that?

THE COURT: That's fine.

MR. CONNOR: Okay. Thank you.

THE COURT: We'll set the matter for status in February.

Jerry (phonetic), do we have a February date for a status?

THE CLERK: Your Honor, yes, we do. Would you like mid-February?

Page 29

THE COURT: Yeah.

THE CLERK: Yeah. We can have the parties back then. We could do February 17th at 10:00 o'clock.

THE COURT: Yeah. February 17th for status on the briefing on their fee issue.

MR. CONNOR: Thank you, Your Honor. And we also requested that the plaintiff be required to get approval prior to issuing any subsequent subpoenas to the CIBC parties. I don't know if Ms. London wants to include that in her response.

MS. LONDON: Yes, I would. Thank you.

THE COURT: All right.

MS. LONDON: If that's okay with Your Honor.

THE COURT: All right. Mr. Kirsch?

MR. KIRSCH: Yes, Your Honor. It's not my motion. It's against my client, but Ms. London filed a motion to compel against Mr. Kanter related to a subpoena that she issued to Mr. Kanter earlier this summer. The motion reflects that we produced no documents and provided no information.

As I set forth in my response, that was incorrect. We did provide documents. We provided an affidavit of completeness. I provided a privileged log that discussed anything and everything that Mr. Kanter had

Page 30

available to him. So I'm not sure what the motion to compel is addressing given that we've produced all available information.

THE COURT: (Inaudible).

And Ms. London?

MS. LONDON: Your Honor, there was an email going back between Mr. Kanter and my client where he explicitly laid out the documents that he had in his possession. Those are the documents that we requested.

I apologize. The emails were between the very first counsel that my client had and Mr. Kanter.

THE COURT: All right. So you requested those?

MS. LONDON: Yes, Your Honor.

THE COURT: (Inaudible).

MS. LONDON: They were documents that his client claimed that he had.

THE COURT: And they were in an email?

MR. KIRSCH: Well, the email discusses, Your Honor that -- Mr. Kanter did work on this matter back in 1993. So the email said at one point I had these materials. I don't have a file any longer. This is what I still have in a Word fashion or a Word document draft fashion.

I produced everything that he had. There were a

Page 31

couple of documents that are essentially privileged. The privilege belongs to the estate of Mr. Kanter's client. He cannot waive that privilege, which is why I prepared and produced a privilege log of those documents. And we provided an affidavit of completeness. There's nothing left. We --

THE COURT: All right. Ms. London.

MR. KIRSCH: -- gave everything he has.

THE COURT: Ms. London?

MS. LONDON: Judge, we disagree that that is what it said. He said he had that information right at that time, and would provide it to the first counsel, and never did. Their operative trust agreements.

THE COURT: All right. So counsel's indicated there's an affidavit of completeness. Have you seen that?

MS. LONDON: Yes. And it failed to discuss the documents in question. It just completely left them out.

THE COURT: Well, I don't know because I don't have it in front of me, but they usually indicate that we did a thorough search, we've looked for these documents, and we provided whatever information that we have. And anything we didn't provide, we didn't have.

Page 32

I'm sort of generally paraphrasing the way it usually works.

So Mr. Kirsch, perhaps you can provide some clarity on what your certificate of completion said.

MR. KIRSCH: I can share -- if I'm able to share my screen, I can show you the certificate.

THE COURT: (Inaudible). Okay.

MR. KIRSCH: I'm sorry. Wrong document. Can you see that, Your Honor? Am I sharing the right screen?

THE COURT: I don't know. This says --

MR. KIRSCH: It says verification at the top. I'm trying to make it bigger. Oh, it's a --

THE COURT: No. I'm looking at some sort of pleading in the 16th Judicial Circuit.

MR. KIRSCH: Yeah, that's not the right one. Let me see if I can do this again. I apologize. I hit - Now I think I got the right one.

THE COURT: Well, where's the rest of the document? What is it -- what is it attached to?

MR. KIRSCH: It's attached to our production. I think the primary -- two through five say "none" other than 5 says "see attached." So I'll focus on answering number 1. That's the one that asks for the materials.

MS. LONDON: Your Honor, is there a file stamp on

Page 33

this document? I don't know what this is.

MR. KIRSCH: You don't file discovery responses. We would have filed a proof of service. But I don't file -- we don't file discovery responses.

THE COURT: All right. Let's just do this, Mr. Kirsch. Amend your certification and indicate that you have -- that there's been a search of the records and that -- if they don't exist or they are not in your client's possession, and they don't have -- your client doesn't have control over them, indicate that. Be specific as to the specific request to produce, and what documents that Ms. London has asked for.

MR. KIRSCH: Okay. Will do, Your Honor.

THE COURT: How soon can you do that?

MR. KIRSCH: By the end of the week.

THE COURT: All right. That's fine. Anything else?

MS. FRIEDMAN: Yes, Your Honor. This is Alyssa Friedman on behalf of non-party Brickyard Bank.

THE COURT: Ms. Friedman, I can't hear you.

MS. FRIEDMAN: Can you hear me now, Judge?

THE COURT REPORTER: Could you speak up please?

THE COURT: That's a little better.

MS. FRIEDMAN: Is this any better, Judge?

Page 34

THE COURT: That's a little bit better. Mr. Court Reporter, can you hear her now?

THE COURT REPORTER: Just a little better, Your Honor, but she's still faint.

MS. FRIEDMAN: Apologies. I'll try to speak loud, if that helps at all.

Yes, Judge, I represent Brickyard Bank, a non-party. We were also served with two subpoenas that were the same. We're here on Plaintiff's motion to compel.

We sent a response letter in response to the first subpoena stating that we conducted a diligent search, and we found no responsive documents, and we did not find any records of plaintiff even being associated with any account at Brickyard Bank.

And then we subsequently got a second subpoena seeking the same documents. We emailed counsel, and reiterated that we have previously provided a response that we do not have any responsive documents. And we never received a response to that email. And the next thing that happened was plaintiff filed a motion to compel on August 12th. So at this point, Brickyard Bank had represented twice that we conducted a diligent search and could not find any responsive documents.

Page 35

And to the extent that there was any question on that matter at all, Brickyard Bank filed a supplemental response in this matter on November 18th that had attached to it a sworn declaration once again affirming that Brickyard Bank had diligently searched for records, and did not find any documents responsive to this subpoena.

THE COURT: Ms. London?

MS. LONDON: Yes, Your Honor, I did receive that supplemental response with the affidavit. Again, we're not looking for accounts. We're looking for trust documents. And we are very specific about that, which is why we keep sending multiple subpoenas because our responses we get are they don't have any accounts, and we're not looking for accounts, we're looking for trust document.

As you know, we've been diligently looking for discovery in this matter, and have been also attempting to try to depose people like the banks, including the vice president here who did his declaration. This declaration was just done November 18th, so we haven't done anything since then. But we would like to be able to move forward, and depose people who are claiming they don't have any documents for accounts.

Page 36

THE COURT: Well, Ms. Friedman, are you referring to an email that was sent on July 30th?

MS. FRIEDMAN: Yes. That was Brickyard Bank's first response to the first subpoena.

THE COURT: All right. So that one says they don't have any documents.

MS. FRIEDMAN: Correct, Judge.

THE COURT: And I'm trying to find in my files your supplemental. One second. And when did you say the supplemental --

MS. FRIEDMAN: We filed it on November 18th, Judge.

THE COURT: Well, I don't believe I have that. I don't. But Ms. London says they're not asking about accounts. They're asking about trust documents.

MS. FRIEDMAN: Regardless of whether it's trust documents or accounts, we reiterated that we did not have any documents responsive to these subpoena.

THE COURT: (Inaudible).

MS. FRIEDMAN: We have said that twice now.

THE COURT: You did that --

MS. FRIEDMAN: We also filed a declaration.

THE COURT: You did that in your supplemental response, and in the declaration, you indicated you

Page 37

have no documents?

MS. FRIEDMAN: Yes.

THE COURT: Or no accounts?

MS. FRIEDMAN: Yes, Judge. After a diligent search, no records --

THE COURT: All right.

MS. FRIEDMAN: -- responsive to the documents.

THE COURT: Can you put that up on the screen because I don't have it in my file --

MS. FRIEDMAN: Yeah.

THE COURT: -- documents?

MS. FRIEDMAN: One moment. Judge, can you see my screen?

THE COURT: Yes.

MS. FRIEDMAN: Okay. I'm referring to paragraph 5.

THE COURT: All right. So Ms. London, paragraph 5 says, "After a diligent search, no records responsive to the document requested included in the above subpoena were located." Why is that not sufficient?

MS. LONDON: Your Honor, I believe that they are referring to documents related to accounts, not trust agreements.

THE COURT: Well, they say relative to the

Page 38

subpoena, so what did the subpoena say?

MS. LONDON: I understand, Judge.

THE COURT: Did the subpoena --

MS. LONDON: I understand, Judge.

THE COURT: Okay. All right. So the motion to compel is going to be denied because they have answered.

Is there anything else?

MS. LONDON: Your Honor, can we get permission to depose this person who signed this affidavit so that we can drill down into the details about what kind of documents they're talking about?

THE COURT: Well --

MS. FRIEDMAN: Judge, we'd of course object. I --

THE COURT: All right. Ms. Friedman.

(Simultaneous speaking)

MS. FRIEDMAN: (Inaudible) harassment now.

THE COURT: And my understanding is that you sent a subpoena, and you asked for documents. Their response was they've reviewed the subpoena and they've done a search, and they don't have those documents. Do you have some evidence that indicates that they do?

MS. LONDON: Not that I can provide the Court today.

Page 39

THE COURT: Okay. So here's what we're going to do. I'm going to deny your request to depose the affiant and without prejudice. If at some point, you provide the Court with some evidence that the things that are said in their reply are inaccurate, then the Court will look again at this issue. Okay?

MS. LONDON: Thank you, Judge.

MS. FRIEDMAN: Judge, apologies.

THE COURT: Yes.

MS. FRIEDMAN: One more issue. We would also ask for attorney's fees incurred in having to draft motions and argue this matter.

THE COURT: All right. I don't know if you filed a motion because I don't have it, but if you have it, you can. And we'll put these both on the same schedule. (Inaudible).

MS. FRIEDMAN: Thank you, Judge.

THE COURT: Anything else, folks?

MR. CONNOR: Nothing --

MS. MAHER: Not for --

MR. CONNOR: Sorry. Go ahead, counsel.

THE COURT: So where are we, Ms. London?

MS. MAHER: I was --

THE COURT: Ms. Maher?

Page 40

MS. MAHER: I was just going to address the case more broadly. I believe prior to the motion for disqualification being filed, this matter had been set for trial. There was a order putting discovery deadlines into place ordering certain things to happen.

You may recall Ms. London indicated she was going to voluntarily dismiss this case, and then we had a time period in which she attempted to remand to the federal court, which was unsuccessful.

So there's been a bit of time that have passed based on these intervening causes. But I do think we need to get this back on track to close discovery, complete discovery, and set it for trial.

There may be a motion that we may be filing, a case dispositive motion. So I would suggest that we get a case management schedule in place so that we can bring this to a conclusion.

THE COURT: All right. So there wasn't a case -- Ms. London, do you recall whether or not there was a case management order entered in this case already?

MS. LONDON: I don't believe that there was, Judge.

THE COURT: (Inaudible).

MS. MAHER: I believe it was August 18, 2025.

Page 41

MS. LONDON: No.

MS. MAHER: Or it could have been 13. I'm looking at the order, and it's a little unclear. But it is --

MS. LONDON: Sorry.

MS. MAHER: -- filed and stamped.

THE COURT: August --

MS. LONDON: It's been so long.

THE COURT: August 13th, you said?

MS. MAHER: 18th potentially.

THE CLERK: It looks like from the docket that it was the 13th.

MS. MAHER: The 13th --

THE COURT: Yes. Okay.

MS. MAHER: Sorry.

THE COURT: Okay.

MS. MAHER: My copy's a little unclear.

THE COURT: Yeah. And it's not on the Court's record (inaudible).

All right. So let's do this. I'm going to let you folks put together a case management order. Use the form that's available on the Court's website.

And Jerry, can we have them back in sometime in the week of January 20th?

THE CLERK: This is for what exactly, Your Honor?

Page 42

THE COURT: Case management order.

THE CLERK: Okay. So are we still having them in for --

THE COURT: Yeah.

THE CLERK: -- February 17th?

THE COURT: Yes.

THE CLERK: Okay. So, yeah, we could have them in -- we could do February 22nd at 10:00 o'clock.

THE COURT: All right. February 22nd --

THE CLERK: Sorry.

THE COURT: -- for presenting --

THE CLERK: Sorry. I meant, January 22nd.

THE COURT: Yes. January 22nd, for presenting of case management.

MS. MAHER: Yes. Your Honor, do you want us to present it on that date, or do you want us to submit it in advance?

THE COURT: You can submit it in advance. Work out the discovery as well as expert discovery, F2 and 3. On that date, we'll give you a trial date. Also include your motion for -- a date for dispositive motions to be filed by. Okay?

MS. MAHER: Will do, Your Honor. Thank you.

THE COURT: Anything else, folks

Page 43

MS. MAHER: I don't believe so. Thank you very much, Your Honor.

THE COURT: Ms. London, anything else?

MS. LONDON: No, Your Honor. Thank you.

THE COURT: All right. Then you folks have a good holiday.

MS. MAHER: Same to you.

THE COURT: Thank you. Court's in recess.

Oh, Mr. Court Reporter, do you need anything from the Court?

THE COURT REPORTER: Would any of the attorneys like to order a copy of the transcript?

MS. LONDON: I would. Thank you.

THE COURT REPORTER: I'll have our office contact you, certainly.

MS. LONDON: Thank you.

THE COURT: All right. Court's in recess.

(The proceedings were concluded.)

Page 44

DIGITALLY SIGNED CERTIFICATE

THOMPSON REPORTERS hereby certifies that the attached pages represent an accurate transcript of the electronic sound recording of the proceedings in the Circuit Court for Cook County in the matter of:

Civil No. 22 CH 00675

RAYMOND E. BUTLER II

v.

ILLANA EDDI and ELY EDDI, individually and as Trustees of the Jack Finn Irrevocable Trust

By: _____

JAMI MCNEAR

Thompson Court Reporters

**0**

**00675** 4:3

**1**

**1** 10:14,17 14:13 16:10 18:21 32:23
**1.18** 10:18,21,22
**1.7** 10:15,20
**1.8** 10:20
**1.9** 11:18,20
**10:00** 29:3 42:8
**12** 9:5,7
**12th** 34:22
**13** 41:2
**137** 24:4
**13th** 41:8,11,12
**14** 28:15
**15th** 21:1 25:4
**16th** 32:14
**17th** 29:3,4 42:5
**18** 10:16 40:24
**18th** 35:3,21 36:11 41:9
**1993** 30:20

**2**

**2** 16:21 18:21
**2022** 4:3
**2025** 25:6 40:24
**20th** 41:23
**219** 24:3
**22nd** 27:10 42:8,9,12, 13
**250** 8:19,21
**29th** 21:19

**3**

**3** 42:20
**30th** 36:2

**4**

**4** 7:21

**4th** 25:20 26:3,12,21, 22

**5**

**5** 32:22 37:16,17

**6**

**6th** 25:6

**A**

**able** 32:5 35:22
**about** 11:12 12:24 18:18 20:23 21:7,8 23:6 24:12,17,23 27:18 35:12 36:14,15 38:11,12
**above** 37:19
**accept** 26:7,24
**account** 34:15
**accounts** 20:24 22:11, 12 25:1 35:11,14,15, 24 36:15,17 37:3,22
**action** 12:18
**actual** 20:22
**actually** 5:22
**additional** 16:13
**address** 4:17 40:1
**addressed** 14:3
**addressing** 30:2
**advance** 42:17,18
**advantage** 6:3 7:8
**adverse** 11:22
**affiant** 39:3
**affidavit** 6:24 7:2,3,4, 14,21 11:5,6 12:5,6, 12 13:15,18 14:10 17:13,15,16,19,22 18:6,17 21:23 22:24 23:11,23 25:5 26:13, 17 27:11 29:22 31:5, 15 35:10 38:10
**affirming** 35:4
**after** 9:12 12:22,23 15:16,21 17:23 25:7 26:23 28:16 37:4,18
**afternoon** 4:6,14

**again** 18:8 32:16 35:4, 10 39:6
**against** 12:18 27:16 29:16,17
**ago** 26:15
**agree** 24:11
**agreements** 31:13 37:23
**ahead** 20:7 39:21
**all** 4:16,17 8:5 10:2,9 11:6 12:4 14:3,6 19:11 20:4 21:11,15 22:13 26:4,6,24 27:17 29:12,14 30:2,12 31:7,14 33:5,16 34:6 35:2 36:5 37:6,17 38:5,15 39:13 40:18 41:19 42:9 43:5,17
**allegation** 9:18
**allegations** 18:19,21
**alleged** 5:20
**allegedly** 7:7 18:20
**alluded** 22:20
**already** 24:4 40:20
**also** 10:20 20:1 29:6 34:8 35:18 36:22 39:10 42:20
**Alyssa** 4:7 33:18
**am** 20:13 32:9
**Amend** 33:6
**an** 6:3 7:2,8 12:12,17, 18 20:3,9 21:22 22:24 23:11,23 26:17 27:18 28:7 29:22 30:6,17 31:5,15 36:2
**and** 4:12,15,20,21 5:5, 10 6:9,11 7:1,11,12, 23 8:1,4,11,12 9:6,23 10:1,2 11:7 12:6,8,12, 15,20 13:17,21,24 14:1,4,9 15:6,13,14, 17 16:1,24 17:20 18:3,10,11,17,19,21 19:5,6,7,13,16,18 21:3,4,12 22:4,19,22 23:7,13,16,19 24:3,9, 14,17,23 25:5,22 26:2,6,11,15,17,20 27:7,8 29:6,19,24 30:5,7,11,17 31:4,5, 12,17,23,24 33:6,7,9,

**11** 34:13,16,17,19,20, 24 35:1,6,12,14,18,23 36:8,9,24 38:18,19, 20,21 39:3,12,15 40:7,13 41:3,5,17,22 42:19
**another** 9:23,24 21:22
**answer** 4:21 14:4
**answered** 38:7
**answering** 32:22
**any** 4:21 5:23 9:14 12:23,24 13:22 14:4 15:17 19:8,15 22:1,11 23:9 25:1,24 26:22 27:12 29:8 30:21 33:24 34:14,15,19,24 35:1,6,14,24 36:6,18 43:11
**anymore** 22:6,9
**anything** 13:9 14:7 15:17 18:19 19:9 24:1,12 29:24 31:24 33:16 35:22 38:8 39:18 42:24 43:3,9
**apologies** 15:4 34:5 39:8
**apologize** 19:24 20:8 30:10 32:16
**apparently** 19:6
**appear** 19:11
**appearance** 20:9,13
**appropriate** 24:8
**approval** 29:8
**are** 8:5 9:5 15:22 16:13 21:5 22:22 25:13 27:14 30:9 31:1 33:8 35:12,14,23 36:1 37:21 39:5,22 42:2
**argue** 39:12
**articulated** 19:9
**as** 5:20 11:18 12:14 16:2 19:5 22:19 23:2, 6,17,19 24:1,4 25:6, 24 26:2,21 29:21 33:11 35:17 42:19
**ask** 5:18 14:12 39:10
**asked** 17:7 21:2 26:17 33:12 38:19
**asking** 13:4 22:9 24:23 25:8 36:14,15

**asks** 32:23
**associated** 34:14
**at** 5:1 6:9 12:23 13:7, 14 14:22 15:4 16:1 17:24 19:7 20:13 25:14 27:18 29:3 30:20 31:11 32:11,13 34:6,15,22 35:2 39:3, 6 41:3 42:8
**attached** 13:17,21 16:9 23:2 26:2 32:19, 20,22 35:4
**attempted** 40:8
**attempting** 15:14 35:18
**attorney's** 39:11
**attorneys** 5:16 9:4 43:11
**audacious** 14:13 15:7 16:11 18:8
**August** 25:20 26:3,12, 20,21,22 27:10 34:22 40:24 41:6,8
**available** 30:1,3 41:21

**B**

**back** 15:15 21:21 22:3,10 29:2 30:7,19 40:12 41:22
**Bank** 4:8 21:5 26:4 33:19 34:7,15,23 35:2,5
**Bank's** 36:3
**banks** 35:19
**based** 5:5,13 9:6 12:5, 6 16:8 18:14 40:11
**bases** 5:12
**basically** 9:24
**basis** 5:6 19:6,8
**be** 9:7 12:1,13 21:13, 17 22:22 23:16 29:7 33:10 35:22 38:6 40:14 42:22
**bear** 24:8
**because** 5:8 6:13,14, 16 7:14 9:19,22 11:4 12:4 13:7 14:11 15:11 16:9,17 17:7 18:23 21:15 22:7,12 24:13 26:19 27:11 31:20

35:13 37:9 38:6 39:14

**been** 12:9 16:4 17:15 20:10 21:6 22:5,9 24:5,7 25:8,19 33:7 35:17,18 40:3,10 41:2,7

**before** 10:3 17:23 23:20

**behalf** 4:4,10,12,15 26:7,24 33:19

**being** 19:5 26:13 34:14 40:3

**belief** 5:7

**believe** 4:23 5:2,8,10, 17 6:8 9:1 10:12,20 14:8,19 15:11 25:10 28:6 36:13 37:21 40:2,21,24 43:1

**belongs** 31:2

**beneficiary** 16:4

**better** 33:23,24 34:1,3

**between** 5:13,16 12:20 22:4 26:20 30:7,10

**bigger** 32:12

**bit** 34:1 40:10

**bombarded** 25:2

**both** 39:15

**boundaries** 14:14 15:8 16:12 18:10

**boutique** 8:20 9:1

**Brickyard** 4:8 33:19 34:7,15,22 35:2,5 36:3

**briefing** 14:4 24:9 29:5

**briefs** 13:13

**bring** 40:17

**broadly** 40:2

**Bryan** 4:12

**bunch** 17:7

**but** 5:9 6:20 7:7,15 9:11 12:17 14:10,19 15:19 18:16 19:10 20:18 23:14,20 25:14 27:18,21 29:16 31:21 33:3 34:4 35:22 36:14 39:14 40:11 41:3

**Butler** 4:3,5 13:16 14:9

**by** 16:5 20:2 21:6,13 33:15 42:22

---

**C**

**call** 15:16 17:6 21:1

**came** 26:15

**camera** 20:1

**can** 6:14,20 14:12 22:8 24:1 29:2 32:3,5,6,8, 16 33:14,21 34:2 37:8,12 38:9,11,23 39:15 40:16 41:22 42:18

**can't** 23:19 33:20

**Canadian** 21:5

**cannot** 31:3

**Carey** 4:24 6:9 7:5,7, 12,24 8:1,8,12 9:8,13 12:4,18,20,24 13:6, 17,19,20,23 14:9 15:13 16:23 18:10

**case** 7:10,13,24 8:2 9:1 13:24 15:12,14,17 21:9 25:23 27:14 28:5 40:1,7,15,16,18,20 41:20 42:1,14

**Casey** 19:7

**caused** 15:23

**causes** 40:11

**CBC** 26:5

**certain** 40:5

**certainly** 20:5 24:15 43:15

**certificate** 32:4,6

**certification** 33:6

**CH** 4:3

**changing** 24:17,18

**check** 5:3 8:6 10:1 14:1 17:1,4 18:12 28:5

**CIBC** 4:11 19:24 20:2 21:4,7,23 22:10,18 23:4,9,13 24:6,21 25:22,23 26:4 27:22 29:9

**Circuit** 32:14

**claimed** 30:16

**claiming** 19:14 35:23

**claims** 7:11 8:1 12:5 16:22

**clarify** 25:2

**clarity** 32:4

**clear** 23:16 24:5

**clearly** 10:6

**clerk** 4:3 21:19 28:23 29:2 41:10,24 42:2,5, 7,10,12

**clerk's** 21:11,16 23:7, 18

**client** 6:3,8 9:9,13,21 10:2 11:14,17,19,20, 23 12:1,7,11 17:21 18:17,18 27:16 29:16 30:7,11,15 31:3 33:9

**client's** 10:23 11:22 33:9

**client/lawyer** 11:13,15

**clients** 12:15

**close** 40:12

**closely** 13:14

**co-** 25:18

**co-trustee** 16:5

**code** 6:6 7:9

**colleague** 20:12

**come** 15:14

**coming** 23:14

**comment** 18:8

**Commerce** 21:5

**Company** 20:22 21:24 22:5,7 24:20 25:11

**compel** 20:2,16,18,19, 20,21 21:16 22:8 27:9,13,16,22 29:17 30:2 34:10,22 38:6

**compelling** 7:3 22:18

**complete** 40:13

**completed** 12:12

**completely** 19:16,19 31:18

**completeness** 29:23 31:6,15

**completion** 32:4

**comply** 21:21

**concluded** 43:18

**conclusion** 40:17

**conduct** 6:7 7:9 10:6

19:4,12,15

**conducted** 34:12,23

**confidences** 10:23

**confidential** 5:19,23 6:16,20 7:1,5,14 16:17 17:8 18:23

**confirm** 10:19

**conflict** 5:3 11:1,21 14:1 15:23,24 16:16 17:1,4 18:12 25:3

**conflicts** 8:6 10:1

**connection** 12:19

**Connor** 4:10 19:23,24 20:5,10,12 22:15,16 24:21 25:16,18 27:7, 20 28:13,14,18 29:6 39:19,21

**consequence** 5:20

**consults** 11:12

**contact** 7:23 43:14

**contain** 16:17

**contempt** 14:14 15:8 16:11 18:9

**continually** 24:24

**continued** 25:12

**control** 33:10

**conversation** 5:13,16, 20,21 7:7 8:9 9:21 12:24 13:19 14:9 17:11 18:18 25:3

**conversations** 4:24 5:2 6:9 18:15,18

**cooperate** 23:13

**copy** 14:18 43:12

**copy's** 41:16

**Corp** 26:4

**Correct** 36:7

**corresponded** 13:16

**correspondence** 13:18

**costs** 24:8

**could** 15:2 16:19 19:13 29:3 33:22 34:24 41:2 42:7,8

**couldn't** 15:3

**counsel** 8:4 11:7 16:24 19:24 21:1,4 23:23 24:14 25:19 27:21 30:11 31:12 34:17 39:21

**counsel's** 31:14

**counsels** 18:11

**couple** 31:1

**course** 38:14

**court** 4:2,6,9,16,21,22 5:4,6,9,12,18,24 6:1, 2,6,12,18,22,24 7:15, 18,21,23 8:8,11,15, 18,21 9:3,5,12,16 10:9,11,14,16,18,21 11:2,6,10 12:11,17 13:4,6,9,11 14:6,12, 17,22 15:2,3,4,10,19, 21 16:15,19,21 17:6, 9,13,16,19,22 18:3,5, 16 19:1,3,4,10,11,21 20:4,15 22:13,15 23:12,20 24:10 25:17 27:5,11,12,17 28:1,7, 10,12,17,19 29:1,4, 12,14 30:4,12,14,17 31:7,9,14,20 32:7,10, 13,18 33:5,14,16,20, 22,23 34:1,3 35:8 36:1,5,8,13,19,21,23 37:3,6,8,11,14,17,24 38:3,5,13,15,18,23 39:1,4,6,9,13,18,22, 24 40:9,18,23 41:6,8, 13,15,17 42:1,4,6,9, 11,13,18,24 43:3,5,8, 9,10,11,14,17

**Court's** 4:2,22 19:19, 21 41:17,21 43:8,17

**courteous** 19:13

**curious** 4:22 16:8

**cut** 27:21

**cynical** 17:2,6

**cynically** 16:23 18:10

---

**D**

**date** 21:16 28:21 42:16,20,21

**dated** 26:3,11

**dates** 15:15 21:11,12 23:7

**day** 9:8,11,12 12:22, 23

**days** 28:11,14,15

**deadlines** 40:5

**decided** 10:2 12:14 21:20

**declaration** 35:4,20, 21 36:22,24

**defendants** 4:15

**definition** 9:3

**Delaware** 20:22 21:20,23 22:5,7,18 23:10,16,21 24:19,21, 22 25:11 26:5

**deleted** 21:13

**demonstrate** 18:20

**denied** 27:22 38:6

**deny** 27:13 39:2

**denying** 19:21

**depose** 35:19,23 38:10 39:2

**depositions** 15:15,16

**described** 16:2

**designated** 14:22

**designed** 10:22

**details** 6:10 7:11,12,24 8:2,3 16:22 38:11

**determine** 9:17

**did** 6:2,12 7:13,15 9:24 11:4 15:10 16:9 17:6 18:1 20:17 25:19 26:8,18 28:2,6 29:22 30:19 31:13,22 34:13 35:6,9,20 36:9,17,21, 23 38:1,3

**didn't** 11:4,10 14:11 18:7 21:21 24:15 25:14 26:22 31:24

**difference** 8:23

**different** 21:14

**diligent** 25:7 34:12,23 37:4,18

**diligently** 35:5,17

**dim** 19:4

**direct** 25:3

**directed** 19:6

**disagree** 31:10

**discovery** 15:17 21:16 33:2,4 35:18 40:4,12, 13 42:19

**discuss** 6:12 7:24 16:7 20:4 31:17

**discussed** 6:10 7:1,4, 10 12:13 18:1 29:24

**discusses** 30:18

**dismiss** 40:7

**dispositive** 40:15 42:21

**disqualification** 40:3

**disqualify** 4:18,20 12:19 13:6

**dissolved** 22:6

**divulged** 16:22

**do** 7:2 8:6 17:2,3 18:13 20:8 24:3 28:21,23 29:3 32:16 33:5,13,14 34:19 38:21,22 39:2 40:11, 19 41:19 42:8,15,16, 23 43:9

**docket** 41:10

**document** 30:22 32:8, 19 33:1 35:16 37:19

**documents** 20:2,21 22:1,2,10,21,22 23:1, 5,11,15 26:11 27:4 29:19,22 30:8,9,15 31:1,5,18,23 33:12 34:13,17,19,24 35:6, 12,24 36:6,15,17,18 37:1,7,11,22 38:12, 19,21

**does** 7:16,18 8:9 10:21 24:6

**doesn't** 6:22 8:8 11:10 14:11 22:9 23:4 25:6, 12 33:10

**doesn't** 8:10 22:7

**doing** 5:3 15:17

**dollars** 16:3

**don't** 5:15,22 6:14,15 8:13 9:10,11 12:22 13:12 14:18 20:6,8,9, 16 22:1,8,11,21 23:1, 3,6,8,10,15,22 24:11, 12,19 25:1,5,8,23 27:12,17,20 28:5 29:9 30:21 31:20 32:10 33:1,2,3,4,8,9 35:14, 24 36:6,13,14 37:9 38:21 39:13,14 40:21 43:1

**done** 23:1 26:19 27:3

35:21,22 38:21

**don't** 23:24

**Doros** 24:24

**down** 38:11

**draft** 30:23 39:11

**drill** 38:11

**due** 23:18

**During** 17:11

**Dykema** 20:13

---

**E**

**earlier** 29:18

**Eddi** 4:3,15

**effect** 23:23

**efficient** 23:14

**either** 7:4

**Eleven** 9:4

**else** 13:9 14:7 33:17 38:8 39:18 42:24 43:3

**Ely** 4:15

**email** 6:13 13:21 15:15 16:1,2,8 30:6, 17,18,20 34:20 36:2

**emailed** 34:17

**emails** 16:14 25:2 30:10

**employed** 9:10

**end** 14:23 15:5 33:15

**engaged** 21:6

**entered** 40:20

**entire** 11:9

**entities** 21:2,8 23:9 24:13,14,18 25:14 26:4,7,10 27:1,4

**entity** 22:19

**especially** 10:7

**essentially** 31:1

**estate** 31:2

**ethical** 6:7 7:8 9:18,19 10:4 14:14 15:8 16:12 17:3 18:9,13

**ethics** 9:22

**even** 6:24 11:14 20:8 22:8 34:14

**everyone** 4:16

**everything** 15:21 18:20 26:16 29:24

30:24 31:8

**evidence** 6:11 7:3 12:9 18:7 38:22 39:4

**exactly** 12:3 18:2 41:24

**except** 11:17 23:8,9

**Excuse** 27:7

**Exhibit** 23:2 26:2 27:6

**exist** 22:7,9 25:12 33:8

**existed** 11:15

**exists** 9:20 24:20

**expects** 19:11

**expert** 42:19

**explain** 10:6 19:3

**explained** 26:16

**explaining** 26:10

**explicitly** 30:8

**extent** 35:1

---

**F**

**F2** 42:19

**fact** 8:22 9:6,7 10:10 12:21 25:11,20

**failed** 31:17

**faint** 34:4

**far** 24:1

**fashion** 30:22,23

**February** 28:20,21 29:3,4 42:5,8,9

**federal** 40:9

**fee** 29:5

**fees** 24:3 28:1,3,8 39:11

**few** 26:15

**file** 5:14 20:9,14 22:24 23:11 26:17 28:2,8 30:21 32:24 33:2,4 37:9

**filed** 4:19 19:14 20:3 23:23 26:13 27:10 28:5 29:16 33:3 34:21 35:2 36:11,22 39:13 40:3 41:5 42:22

**files** 11:11 36:8

**filing** 11:3 14:1,16 21:14 40:14

**filings** 10:24

**find** 34:14,24 35:6 36:8

**fine** 20:15 28:12,17 33:16

**firm** 6:10 8:11 9:1,20, 23,24 10:3,7 12:21 13:7 21:3

**firm's** 20:13

**first** 14:16,21 15:21 20:6 30:11 31:12 34:11 36:4

**five** 21:14 32:21

**focus** 32:22

**focused** 22:17

**folks** 39:18 41:20 42:24 43:5

**for** 4:7 5:6,12 8:6 11:11,20 14:1,14 15:8,15 16:6,11 17:1 18:9,12,17 19:5,16,24 20:10 21:4,15 22:2,5, 6,9 23:9 24:3,7 25:9 28:3,8,19,21 29:4 31:22 32:23 33:12 35:5,11,15,17,24 38:19 39:11,20 40:2, 4,13 41:24 42:3,11, 13,21

**forced** 10:23

**form** 41:21

**former** 11:19

**forth** 29:21

**forum** 12:10

**forward** 15:18 35:23

**forwarding** 11:13

**found** 34:13

**four** 15:22

**fraudulently** 16:5

**Friedman** 4:7,9 33:18, 19,20,21,24 34:5 36:1,3,7,11,16,20,22 37:2,4,7,10,12,15 38:14,15,17 39:8,10, 17

**from** 11:16 12:1 14:9 15:12,13 20:21 21:23 22:10 25:2 41:10 43:9

**front** 19:12 31:21

**fund** 16:5

**further** 7:12 8:3

___

**G**

**gain** 16:6

**gained** 15:13

**gave** 12:4 31:8

**generally** 32:1

**get** 10:3 16:9 29:7 35:14 38:9 40:12,16

**getting** 22:10 27:2,23

**give** 6:3 7:6 42:20

**given** 12:3 30:2

**gives** 6:3

**gleaned** 5:19

**go** 5:11 9:23,24 20:6,7 39:21

**going** 8:24 24:7 26:20 27:12 30:6 38:6 39:1, 2 40:1,6 41:19

**good** 4:6,14 43:5

**Gossett** 20:13

**got** 25:21 32:17 34:16

**GPN** 24:23

**Group** 26:5

**guess** 28:15

___

**H**

**had** 5:2,23 6:8 7:7 8:9 9:24 12:24 13:19 17:11 18:1,4,6,17 19:14 20:1 21:1,21 24:1 25:4,7 27:17 29:24 30:8,11,16,20, 24 31:11 34:23 35:3,5 40:3,7

**happen** 14:11 40:5

**happened** 10:3 22:4 25:10 34:21

**happy** 14:4

**harassment** 38:17

**harm** 12:4

**harmful** 12:2 14:2

**has** 4:21 9:20 11:16,20 12:9,14 13:14 22:5 23:12 24:7 25:19 31:8 33:12

**have** 6:14,15,21 9:10

11:6 13:13,22 14:5,18 15:6,13,16 16:19 17:15 19:13 20:8,16, 17 21:22 22:1,11,12, 19,21 23:1,4,8,10,15, 22,24 24:3,6 25:1,6, 10 26:10,22 27:4,12 28:4,21 29:2 30:21,22 31:15,21,24 33:3,7,9, 10 34:18,19 35:14,18, 24 36:6,13,18,20 37:1,9 38:6,21,22 39:14 40:10 41:2,22 42:7 43:5,14

**haven't** 35:21

**having** 12:7 24:12 39:11 42:2

**he** 5:22 6:10,12,22,24 7:4,5,10,13,15,18,23 8:8,9,10 11:4,7,10 12:4,20 13:16,17,19, 20,21,22 16:2 17:7,11 21:3,4 26:4,6 30:7,8, 16,24 31:3,8,11

**he's** 16:3 17:2

**hear** 4:9 15:3 33:20,21 34:2

**held** 18:15

**helps** 34:6

**her** 7:8 14:14 15:7,11, 12 16:11 18:8,9 22:20 25:20 29:10 34:2

**here** 5:11 11:3 14:20 20:1 26:15 34:9 35:20

**here's** 39:1

**highly** 19:13

**him** 6:21 12:4 18:1 21:2 26:8 30:1

**his** 6:24 7:1,4,10,13,21 11:5,6 12:5,15 13:18 14:10 16:22 17:3 18:12 21:3 30:8,15 35:20

**hit** 32:16

**hold** 8:19 13:4

**holder** 22:6

**holiday** 43:6

**home** 16:6

**Honestly** 28:4

**Honor** 4:10,14,19 5:1, 8,17 6:5,15 8:24 9:15

11:5 13:3,10,12,14 14:5,8,15,19,21 15:2, 9 16:13,20 17:5,14 18:24 19:23 22:16,24 24:12,16 25:16,18,23 26:14,16,17 27:7,15, 20 28:4,9,14,23 29:6, 13,15 30:6,13,18 32:9,24 33:13,18 34:4 35:9 37:21 38:9 41:24 42:15,23 43:2,4

**Honor's** 24:4

**how** 8:11,14 16:9 20:24 23:3 28:10 33:14

**However** 20:23

___

**I**

**I'D** 22:17

**I'LL** 20:7 32:22 34:5 43:14

**I'M** 7:19 9:18 13:5 14:4,19 16:8 17:18 19:24 20:15 27:20 30:1 32:1,5,8,11,13 36:8 37:15 39:2 41:2, 19

**I'VE** 20:10 27:17

**identifies** 26:4

**if** 5:15 8:18,21 9:11 11:24 12:13,22 14:20 16:6,15 20:6,8,9 29:9, 13 32:5,16 33:8 34:6 39:3,13,14

**Illana** 4:15

**Imperial** 21:5

**impugns** 19:7,18

**imputation** 14:3

**in** 4:2,19 6:1,13,24 7:1,3,13 8:11 9:1,20, 23 10:6,24 11:5,23 12:2,9,12,21 13:7,15, 18,20,22 14:3,10,12, 15,21 15:12,14,17 16:1,10,14,21 17:3,15 18:6,7,21 19:9,11,12, 19 20:22,24 21:3,9, 10,14,20,24 22:3 25:3,19 26:13,19,20, 21 27:2 28:5,19 29:10,21 30:8,17,19,

22 31:18,21 32:14 33:8 34:11 35:3,18 36:8,23,24 37:9,19 39:5,11 40:8,16,20 41:22 42:2,8,17,18 43:8,17

**inaccurate** 39:5

**inaudible** 11:15 13:1 14:24 16:3,21 17:10 19:1 20:17 30:4,14 32:7 36:19 38:17 39:16 40:23 41:18

**incendiary** 19:17

**include** 29:10 42:21

**included** 16:14,15 37:19

**including** 7:11 8:1,3 25:11 35:19

**incorrect** 29:21

**incurred** 39:11

**indicate** 31:21 33:6,10

**indicated** 31:14 36:24 40:6

**indicates** 27:11 38:22

**inform** 23:4

**information** 5:19,23 6:2,16 7:1,5,6 9:15 10:24 11:16,17,19 12:1,3,5 13:24 14:2 16:18 21:8,13,15,17, 21 29:20 30:3 31:11, 23

**initiated** 7:23

**integrity** 19:8,18

**interest** 11:22 16:3 27:2

**interested** 8:4 16:24 18:11

**interesting** 24:16

**intervening** 40:11

**into** 26:17 28:15 38:11 40:5

**intrusion** 16:11 18:9

**intrusions** 14:13 15:7

**involved** 7:11 8:1 12:6 15:14

**involvement** 15:12

**is** 4:16,23 5:12 6:16 10:22 11:6,10,14 12:3,12,17,18,19

22 31:18,21 32:14
14:2,15,20,23 16:2 17:1 18:12 19:5,6,8, 12,16,17,18 20:12,13, 18 21:22 22:4,6,10,18 23:16,21,24 24:8,16, 20,22 25:12,23 26:11 27:12,22 30:2,21 31:3,10 32:19,24 33:1,18,24 35:13 37:20 38:6,8,18 41:3, 24

**Isn't** 17:2

**issue** 23:6,18 26:15 29:5 39:6,10

**issued** 23:13 26:23 29:18

**issuing** 22:4 29:8

**it** 4:23 5:12 6:17 8:5, 16,23 9:1,2 11:5 12:8, 20 13:13 14:10,11,19, 20 15:5,18,20 17:6, 20,24 18:1 19:12,16, 17,18 21:15 22:7 24:8,20 25:6,7 26:18 27:19 31:11,12,17,18, 21 32:1,11,12,19 35:4 36:11 37:9 39:14 40:13,24 41:2,3,10 42:16,18

**it's** 6:13 7:1 8:20 10:13 13:20,24 14:11 15:3 16:4,9 23:2 26:19 27:7,8 29:15,16 32:12,20 36:16 41:3, 7,17

**itself** 19:10

___

**J**

**James** 16:23

**January** 41:23 42:12, 13

**Jerry** 28:21 41:22

**Jim** 7:24

**Judge** 7:19 8:10,13 10:5,19 13:8 18:14 19:20 20:9 31:10 33:21,24 34:7 36:7,12 37:4,12 38:2,4,14 39:7,8,17 40:22

**Judicial** 32:14

**July** 21:1,19 25:4 36:2
**June** 22:3 25:9,10
**just** 5:17 9:19 10:19 11:11 14:10 20:15 23:14 24:21 26:16 27:21 31:18 33:5 34:3 35:21 40:1
**justify** 18:8

**K**

**Kanter** 4:13 27:16 29:17,18,24 30:7,11, 19
**Kanter's** 31:2
**Katherine** 4:4
**keep** 22:10,17 23:13, 14 24:17,18 35:13
**Kevin** 4:10 19:24
**kind** 9:16 38:11
**Kirsch** 4:12 27:15 29:14,15 30:18 31:8 32:3,5,8,11,15,20 33:2,6,13,15
**know** 5:15,22 8:13 9:11,14,17 12:22 13:12,20,22 16:7 20:6,8,9 22:8 23:3,6 24:12,19 25:8 27:3,17 29:9 31:20 32:10 33:1 35:17 39:13
**knowing** 18:6
**knowledge** 15:12

**L**

**laid** 26:6 30:8
**language** 19:16
**law** 6:10 17:3
**lawyer** 11:12,16,21,24 12:14 20:13
**lawyers** 8:11,14,22 9:5,7 19:11
**lead** 5:14
**leads** 4:23
**learned** 11:16
**leave** 9:23
**leaving** 21:15
**left** 18:19 31:6,18

**legal** 12:8,13
**let** 5:18 10:19 14:15 16:7 19:3 27:3 32:15 41:19
**let's** 4:17 20:4 27:18 33:5 41:19
**letter** 26:9,11,21 27:5 34:11
**letters** 25:20 26:2
**Leven** 8:12
**like** 10:7 13:14 22:17 28:7,12,24 35:19,22 41:10 43:12
**likely** 12:8
**little** 33:23 34:1,3 41:3,16
**LLC** 22:5
**located** 37:20
**log** 29:23 31:4
**London** 4:4,19 5:1,5, 7,9,11,15,22 6:1,5,8, 14,20,23 7:10,17,19, 22 8:7,10,13,16,20,24 9:4,10,14 10:5,10,12, 15,17,19,22 11:4,9 12:7,16 13:3,5,8,9,10 14:7,8,15,18 15:9,11, 19,20 16:13,17,20 17:5,7,11,14,17,18, 20,24 18:4,14,16,23 19:2,3,20 20:5,7,18, 20 22:14,20 24:10,11 25:19 26:2,8 27:3 28:2,4,9,11 29:9,11, 13,16 30:5,6,13,15 31:7,9,10,17 32:24 33:12 35:8,9 36:14 37:17,21 38:2,4,9,23 39:7,22 40:6,19,21 41:1,4,7 43:3,4,13,16
**long** 41:7
**longer** 6:20 24:20 30:21
**look** 14:15 27:18 39:6
**looked** 13:14 20:17 31:22
**looking** 16:1 20:15 22:2 32:13 35:11,15, 17 41:2
**looks** 41:10

**lot** 5:9,10 13:13 22:16 25:10
**loud** 34:5

**M**

**ma'am** 14:17
**Maher** 4:14,15,23 6:3 7:6 8:9 10:7 12:19,20 13:11,12 19:7,14 39:20,23,24 40:1,24 41:2,5,9,12,14,16 42:15,23 43:1,7
**Maher's** 14:13 15:7 16:10
**make** 6:16 8:23 18:21 26:18 32:12
**makes** 15:20 26:21
**management** 26:6 40:16,20 41:20 42:1, 14
**manner** 19:12
**many** 8:11,14 23:3 28:5
**materially** 11:22
**materials** 30:21 32:23
**matter** 8:15 9:2 11:14, 24 12:2 21:3,6 28:19 30:19 35:2,3,18 39:12 40:3
**matters** 8:16 23:24
**may** 9:6 15:13 25:16 26:14 40:6,14
**me** 5:18 8:6 10:3,11, 19 14:15 16:7 19:3,5 21:14 22:21 27:7 31:21 32:16 33:21
**mean** 5:7 7:2 14:11 22:16 27:20
**meant** 42:12
**mentioned** 24:4
**mentions** 22:19
**messages** 20:23
**mid-february** 28:24
**might** 14:5
**million** 16:3
**missing** 14:11
**mistake** 27:8
**moment** 19:23 37:12

**months** 26:15
**more** 12:17 27:15 39:10 40:2
**most** 12:8
**motion** 4:17,20,21 5:14 16:9,14 17:23 18:1,7,22 19:10,14, 17,21 20:2,5,7,16,18 22:17,19,21 24:9 27:9,13,16,22 29:15, 16,19 30:1 34:9,21 38:5 39:14 40:2,14,15 42:21
**motions** 39:11 42:22
**move** 15:18 35:23
**Mr** 4:10,12,24 6:9 7:5, 7,12 8:8 9:8,13 12:4, 18,20,24 13:16,17,19, 20,23 14:9 15:4,13 18:10 19:7,23 20:5, 10,12 22:15,16 24:21 25:2,16,18 26:1,21 27:7,15,20 28:13,14, 18 29:6,14,15,17,18, 24 30:7,11,18,19 31:2,8 32:3,5,8,11,15, 20 33:2,5,13,15 34:1 39:19,21 43:9
**Ms** 4:4,7,14,19,23 5:1, 5,7,9,11,15,22 6:1,3, 5,8,14,20,23 7:6,10, 17,19,22 8:7,9,10,13, 16,20,24 9:4,10,14 10:5,7,10,12,15,17, 19,22 11:4,9 12:7,16, 19,20 13:3,5,6,8,9,10, 11,12 14:7,8,15,18 15:6,9,11,19,20 16:10,13,17,20 17:5, 7,11,14,16,18,20,24 18:4,14,16,23 19:2,3, 7,14,20 20:5,7,18,20 22:14,20 24:10,11 25:19 26:2,8 27:3 28:2,4,9,11 29:9,11, 13,16 30:5,6,13,15 31:7,9,10,17 32:24 33:12,18,20,21,24 34:5 35:8,9 36:1,3,7, 11,14,16,20,22 37:2, 4,7,10,12,15,17,21 38:2,4,9,14,15,17,23 39:7,8,10,17,20,22, 23,24 40:1,6,19,21,24

41:1,2,4,5,7,9,12,14, 16 42:15,23 43:1,3,4, 7,13,16
**much** 8:23 28:10 43:2
**multiple** 35:13
**my** 4:21 6:8 7:24 8:2 12:7 14:16 15:4 16:14 17:20 20:1,7,12 21:12 25:18 27:16 29:15,16, 21 30:7,11 32:6 36:8 37:9,12 38:18 41:16

**N**

**name** 20:24
**names** 8:4 16:24 18:11 24:18
**National** 26:5
**necessary** 8:5
**need** 6:15 9:16 22:22 23:16 40:12 43:9
**needs** 27:4
**never** 11:7 24:1 25:7 31:13 34:20
**new** 28:15
**next** 6:9 10:3 12:23 19:22 34:20
**no** 5:12 6:20 8:10 11:4,15 13:10,18 14:2 19:6 20:24 22:6 24:20 29:19,20 32:13 34:13 37:1,3,5,18 41:1 43:4
**nobody** 7:7
**non-** 4:12 34:7
**non-party** 4:11 33:19
**none** 12:12 26:10 27:3 32:21
**Nonetheless** 26:1,9 27:2
**not** 6:13 7:13,16 9:17 10:2,23 11:5,17,21 12:9,14,17 14:10,23 15:15,16,17,22 16:14 21:15 22:12 23:17 24:6,12,13,14,16,22 25:23 26:8,14,19 27:1 29:15 30:1 32:15 33:8 34:13,19,24 35:6,11, 15 36:14,17 37:20,22 38:23 39:20 40:19 41:17

**nothing** 16:1 31:6 39:19

**November** 21:24 25:6 26:14,19,20 35:3,21 36:11

**now** 21:22 22:4 23:11, 24 24:7,20 25:6,11,13 32:17 33:21 34:2 36:20 38:17

**number** 12:11,13 14:22 32:23

**numbers** 14:1

**nursing** 16:5

**O**

**o'clock** 29:3 42:8

**object** 38:14

**obligation** 9:19 17:3 18:13

**obligations** 7:9

**Obviously** 24:11

**occurs** 10:4

**of** 4:4,11,12,15,20,22 5:9,10,20 6:6 7:9 8:4, 5,12 9:3,14,16,18,22 10:5,6 11:13,19,23 12:12,15,22 13:13,15 14:3,18,23 15:5,22 16:3,4,16,22,24 17:1, 7 18:11,12,21 19:4, 11,12,15,17 20:2 21:5,11,12,20,24 22:3,6 23:9 24:9,13, 18 25:6,10,24 26:7, 10,24 27:3 29:22 31:1,2,4,5,15,21 32:1, 4,13,18 33:3,7,15,19 34:14 36:16 38:11,14 40:10 41:23 42:13 43:11,12

**off** 27:21

**offer** 26:8 27:1

**offered** 26:24

**offers** 26:7

**office** 21:11,16 23:7, 19 43:14

**official** 26:18

**Oh** 14:20 32:12 43:9

**okay** 5:24 8:8,18 9:5 10:12,21 11:2 12:11

13:9 17:22 18:5 28:7, 18 29:13 32:7 33:13 37:15 38:5 39:1,6 41:13,15 42:2,7,22

**on** 4:4,5,10,12,15,21 5:13 8:19 9:6,8 12:5,6 13:4 16:8 18:14 20:1, 7,9,14 21:1,19 23:9, 11 24:7,13 25:4,20 26:7,8,20,22,24 27:10 29:4,5 30:19 32:4,22, 24 33:19 34:9,22 35:1,3 36:2,11 37:8 39:15 40:11,12 41:17, 21 42:16,20

**once** 35:4

**one** 12:11,15 14:22 19:23 22:3 23:6,10,16 27:15 30:20 32:15,17, 23 36:5,9 37:12 39:10

**only** 13:15,21 14:13 15:7 16:4,11 18:9 20:10 21:5 22:18 23:6,16,20

**operative** 31:13

**opportunities** 15:6

**opportunity** 27:18 28:7

**opposition** 20:3

**or** 7:5,8,9 9:17,22 11:17,23 12:23 15:21, 23 17:23 18:18 20:21 21:17 26:14 30:22 33:8 36:17 37:3 40:19 41:2 42:16

**order** 40:4,20 41:3,20 42:1 43:12

**ordering** 40:5

**original** 27:9

**other** 9:22 12:21 15:13 21:7 23:3 24:13 25:14 32:21

**others** 23:17

**otherwise** 23:3 27:14

**our** 4:20 5:7 20:13 23:2 24:22 26:3 32:20 35:13 43:14

**out** 13:15 18:19 21:7, 20 26:6,21 30:8 31:19 42:19

**outside** 13:13 18:15

**over** 24:7 33:10

**own** 16:6

**P**

**paragraph** 7:21 11:21 14:13,21,22,23 15:5 16:10,21 37:15,17

**paragraphs** 18:21

**paraphrasing** 32:1

**parties** 7:11 8:1,4 12:6 14:1 16:24 18:11 29:2,9

**partner** 10:8 16:23

**party** 4:7,13 25:23,24 34:8

**passed** 40:10

**pending** 27:15

**people** 5:9 15:13 35:19,23

**perhaps** 32:3

**period** 40:8

**permission** 38:9

**permit** 11:18

**person** 6:9 11:12 12:2, 14 38:10

**personally** 13:16 19:6

**persons** 8:4 17:1 18:11

**phone** 14:9 15:16 18:14 21:1

**phonetic** 4:8 24:24 28:21

**place** 40:5,16

**plaintiff** 4:5 15:5 16:22 19:23 22:12 23:4 24:6,8 29:7 34:14,21

**plaintiff's** 20:1,24 23:22 34:9

**pleading** 32:14

**please** 16:7 33:22

**point** 10:11 12:17,23 13:15 16:10 30:20 34:22 39:3

**portfolio** 16:6

**possession** 30:9 33:9

**possibility** 11:13

**potential** 9:21 11:20 15:23

**potentially** 41:9

**prejudice** 39:3

**prepared** 17:16,19,20, 22,24 18:16 31:4

**preparing** 18:5

**present** 4:5 24:15 42:16

**presented** 12:9

**presenting** 42:11,13

**president** 35:20

**previously** 23:12 34:18

**primary** 32:21

**prior** 29:8 40:2

**Private** 24:20 26:5,6

**privilege** 31:2,3,4

**privileged** 29:23 31:1

**privy** 4:24

**probative** 16:16

**proceedings** 43:18

**produce** 33:11

**produced** 22:23 29:19 30:2,24 31:4

**production** 20:2 32:20

**professional** 10:5 19:13,15

**proof** 33:3

**proper** 23:8 24:12

**properly** 23:17 25:24

**prospective** 11:14,16 12:1

**protect** 10:23

**prove** 10:24

**provide** 7:3 29:22 31:12,24 32:3 38:23 39:4

**provided** 7:5 8:3 29:20,22,23 31:5,23 34:18

**providing** 15:16

**public** 10:24 11:2,11 12:9 13:24

**punitive** 19:5

**purpose** 11:9 19:17

**purposes** 17:1 18:12

**put** 7:13 11:5 18:7 37:8 39:15 41:20

**puts** 28:15

**putting** 40:4

**Q**

**quashed** 23:12 24:4

**question** 5:18 31:18 35:1

**questions** 4:21 14:3,4 17:8

**R**

**ran** 21:20

**Raymond** 4:5

**read** 16:8

**reading** 14:20

**really** 8:22

**reason** 13:21,22

**recall** 26:14 40:6,19

**receive** 35:9

**received** 11:24 20:23 34:20

**recess** 43:8,17

**reclaim** 15:6

**record** 22:6 25:24 26:18 41:18

**records** 23:22 24:6 25:6,7 26:22 27:12 33:7 34:14 35:6 37:5, 18

**redacted** 16:19

**reference** 26:13

**referring** 25:19 27:5 36:1 37:15,22

**reflects** 29:19

**refused** 10:1

**regarding** 7:13 8:2 15:15 20:22 21:23

**Regardless** 36:16

**reiterated** 34:18 36:17

**related** 6:10 11:24 15:22 21:6,9 29:17 37:22

**relationship** 11:13,15

**relative** 37:24

remand 40:8

repeat 15:2

repeatedly 21:10

reply 4:19 28:12 39:5

reporter 15:2,3,4 33:22 34:2,3 43:9,11, 14

represent 10:1,2 11:22 24:17 25:14,24 34:7

represented 21:3 34:23

representing 24:14

represents 25:22

request 24:3 28:2,8 33:11 39:2

requested 8:2,3 16:24 18:10 22:24 28:1 29:7 30:9,12 37:19

requesting 21:8

required 17:2 29:7

respect 11:14,18 22:18 25:22 27:21

respective 11:23

respond 25:16

responded 23:10

respondent 4:11

response 15:22 20:3, 17 23:3 26:3 27:9 28:2,8 29:10,21 34:11,18,20 35:3,10 36:4,24 38:20

responses 33:2,4 35:14

responsive 34:13,19, 24 35:6 36:18 37:7,18

rest 32:18

resulted 21:14

return 23:7

returned 21:13,17,18

reveal 5:23 6:15 10:24 11:17

revealed 7:12

review 18:1

reviewed 17:20 38:20

Rhoades 20:11,12 21:2 25:2,18 26:1

Rhoades' 26:21

right 4:16,17 7:2 8:6 10:9 14:6 20:4 22:13 27:17 29:12,14 30:12 31:7,11,14 32:9,15,17 33:5,16 36:5 37:6,17 38:5,15 39:13 40:18 41:19 42:9 43:5,17

Robin 4:14

rule 10:11,12 11:1,11, 18

rules 9:22 10:5 19:15 24:3

--- 

**S**

said 11:11 21:4 23:19 24:24 27:8 30:20 31:11 32:4 36:20 39:5 41:8

same 11:23 17:24 21:15 34:9,17 39:15 43:7

say 6:24 7:15 8:8,10 10:21 11:10 12:8 13:13 14:7 16:10,21 22:22 23:8 25:7 32:21 36:9 37:24 38:1

saying 23:1 25:13

says 7:8,10,21 11:12, 20 13:16 14:20 15:5 16:2 17:13 24:21 25:5,7 32:10,11,22 36:5,14 37:18

schedule 39:16 40:16

Schreder 8:12

screen 32:6,9 37:8,13

search 25:8 31:22 33:7 34:12,24 37:5,18 38:21

searched 35:5

second 6:10 34:16 36:9

see 8:24 20:16 32:9, 16,22 37:12

seeking 12:18 20:19, 20,21 34:17

seeks 24:7 26:11

seem 15:20

seems 8:5 22:21

seen 31:15

send 21:20,22 25:12, 20

sending 35:13

sensitive 10:24 16:22

sent 21:7 24:22 25:5 26:9,12,23 34:11 36:2 38:18

separate 25:20

served 23:17 26:1 34:8

service 23:9 24:13,15 26:7,24 33:3

session 4:2

set 28:19 29:21 40:3, 13

seven 26:4,24

several 16:3 22:20

shall 11:17,21

share 32:5

sharing 32:9

she 5:1,2,8 8:16,18,22 9:7,8,10,11,12,19 12:21,22,23 13:7 15:13 26:11 29:18 40:6,8

she's 9:6 34:4

shortly 26:23

should 17:14

show 10:3 32:6

shows 7:4

sic 13:6 19:7

signed 38:10

significantly 12:2 14:2

signing 21:12

simply 13:24

simultaneous 6:19 7:20 11:8 13:2 15:1 27:24 38:16

since 25:9,10 35:22

sit 15:15

six 21:7

small 8:20 9:1,3 10:6

so 5:2 6:2 7:3 8:5 9:5,6 10:23 11:11 12:19,24 13:20 16:8 17:6 18:3, 5 20:15 21:6,13,21,22 22:6,8,14 23:7 24:2,7, 15 25:12,23 26:13,18 28:5 30:1,12,20 31:14

32:3,22 34:22 35:21 36:5 37:17 38:1,5,10 39:1,22 40:10,15,16, 18 41:7,19 42:2,7 43:1

some 7:6 9:18 23:18 32:3,13 38:22 39:3,4

somebody 9:20

somehow 9:21 21:11

something 16:7 19:3 22:8 26:20

sometime 41:22

soon 33:14

sorry 7:19 13:5 17:18 27:20 32:8 39:21 41:4,14 42:10,12

sort 4:22 32:1,13

sounds 13:14

speak 23:8,19,20 33:22 34:5

speaking 6:19 7:20 11:8 13:2 15:1 20:10 27:24 38:16

specific 6:10 7:12 8:2 33:11 35:12

specifically 5:16 6:12 10:22 21:2,4 24:23

spoke 7:24 9:8,13

stamp 32:24

stamped 41:5

stand 4:20 20:7

stands 15:5

statement 13:18

stating 21:24 34:12

status 28:19,22 29:4

stems 15:12

still 30:22 34:4 42:2

stolen 15:6

story 24:17

strategy 12:8,13

strikes 19:5

subject 11:21

submit 42:16,18

submitted 19:9 21:10

subpoena 4:11 20:21 21:12,17,22 23:20,21 26:1 29:17 34:12,16 35:7 36:4,18 37:20 38:1,3,19,20

subpoenaing 24:19

subpoenas 21:7,10,14 22:4 23:12,14 24:5,22 25:13 26:23 29:8 34:8 35:13

subsequent 29:8

subsequently 34:16

substantially 11:24

sufficient 37:20

sufficiently 24:5

suggest 40:15

summer 29:18

supplemental 23:2 26:3,9 35:2,10 36:9, 10,23

support 4:20

sure 14:19 28:14 30:1

sworn 35:4

---

**T**

take 12:14 26:8

taken 27:1

takes 19:4

talk 27:18

talking 38:12

tell 24:1

terms 10:6

testify 6:23 12:7

than 12:21 32:22

Thank 13:12 14:6 28:18 29:6,11 39:7,17 42:23 43:1,4,8,13,16

that 4:16,23 5:2,5,6,8, 13,14,17,19,22 6:3,6, 8,16,24 7:4,6,8,10,12, 15 8:8,10,15,16,22 9:6,7,8,11,14,17,19, 20,21,24 10:2,10 11:1,17 12:1,2,3,4,8, 9,21,23 13:13,16,19, 21 14:8,10,15,18,19, 23 15:3,10,11,12 16:2,8,14 17:2,11,13, 14 18:6,7,8,10,20 19:4,8,9,12,14 20:4, 18 21:8,12,14,24 22:3,8,9,18,19,22,24 23:1,2,4,8,10,19,20, 23 24:2,6,8,15,16,22,

24 25:4,5,8,11,12,13, 16 26:8,10,11,14,18, 19 27:1,3,5,11,17,18 28:6,15,16 29:7,10, 17,19,21,23,24 30:2, 8,9,11,15,16,19,24 31:1,3,10,11,16,21,23 32:9,23 33:6,7,8,10, 12,14 34:6,8,12,18, 19,20,21,23 35:1,2,3, 5,9,12 36:2,3,5,13,17, 20,21,23 37:8,20,21 38:10,18,22,23 39:4,5 40:10,14,15,16,21 41:10 42:16,20

**that's** 5:7 7:2,16 11:1 13:1 14:19,20 23:18 24:2 26:18 28:12,17 29:13 32:15,23 33:16, 23 34:1 41:21

**that's** 13:21

**the** 4:2,3,6,9,15,16,17, 21,22 5:2,4,6,9,12,13, 18,19,24 6:2,6,9,11, 12,13,15,18,22,24 7:9,15,18,21,23 8:3,8, 11,15,18,21,22 9:3,5, 6,7,8,12,16,19,20,22, 23 10:3,4,5,9,10,11, 14,16,18,21 11:2,6,9, 10,11,12,18,20,23,24 12:1,2,3,6,11,14,16, 17,19,21,22,23 13:4, 6,7,9,11,13,15,17,20, 21,22,24 14:1,3,6,12, 17,21,22,23 15:2,3,4, 5,10,19,21,22,23 16:1,2,4,5,10,15,19, 21,22 17:1,3,6,9,11, 13,15,16,19,22,23,24 18:1,3,5,7,8,11,12,16 19:1,3,10,11,15,17,21 20:1,4,15,16,17,22,24 21:5,11,12,15,16,17, 19,20,23 22:2,3,4,5, 12,13,15,17,18,19,21, 22 23:4,6,7,9,12,14, 16,17,18,20,21,22 24:6,8,10,13,16,17,23 25:3,5,11,15,17 26:5, 10,13,18,23 27:2,4,5, 8,9,11,12,13,17,22 28:1,2,7,10,12,15,17, 19,23 29:1,2,4,7,9,12,

14,18 30:1,4,8,9,10, 12,14,17,18,20 31:2, 7,9,12,14,17,20 32:1, 6,7,9,10,11,13,14,15, 17,18,21,23 33:5,7, 11,14,15,16,20,22,23 34:1,3,9,11,17,20 35:1,8,10,19 36:1,4,5, 8,10,13,19,21,23,24 37:3,6,7,8,11,14,17, 19,24 38:1,3,5,11,13, 15,18,20,23 39:1,2,4, 5,9,13,15,18,22,24 40:1,2,8,18,23 41:3,6, 8,10,11,12,13,15,17, 21,23,24 42:1,2,4,5,6, 7,9,10,11,12,13,18, 19,24 43:3,5,8,10,11, 12,14,17,18

**their** 16:6 19:7,18 28:8 29:5 31:13 38:19 39:5

**them** 8:6 24:15 31:18 33:10 41:22 42:2,7

**themselves** 19:12

**then** 5:18 7:6,23 13:17 21:21 26:22 29:3 34:16 35:22 39:5 40:7 43:5

**there** 5:1,8,12,13,15 8:14,17,18,21,22 9:5, 6,7,8,11,12 11:2 12:12,22 14:2,8 16:13,23 19:5 20:24 22:6,16,17,22 26:19 30:6,24 32:24 35:1 38:8 40:4,14,18,19,21

**there's** 8:19 9:17 10:20 13:18 16:1,6 20:9 23:11 27:15 31:6,15 33:7 40:10

**these** 15:6 18:6,14,19, 20 22:21 23:4,15 25:9,13,14,21 26:10 30:20 31:22 36:18 39:15 40:11

**they** 5:3 7:14 16:15,17 21:20,21,24 24:13,14, 17,24 25:1,5,7,13,14 27:12 30:15,17 31:21 33:8,9 35:14,24 36:5 37:21,24 38:6,21,22

**they're** 10:23 16:16

18:23 25:24 26:6 36:14,15 38:12

**they've** 38:20

**thing** 13:15 27:2 34:21

**things** 5:10 8:5 18:6 22:3 23:14 25:9,10 28:5 39:4 40:5

**think** 8:16 14:2 18:24 24:2,5,8 32:17,21 40:11

**third** 4:7

**this** 5:14,18 10:6,7 11:10 12:12,17,18,24 13:14 15:12,14,17 16:8 18:17 19:4,6,9, 14,15,17,19 21:3,6,9, 24 22:3 24:7,9 25:23 26:15,22 27:2,14 28:5 29:18 30:19,21 32:10, 16 33:1,5,18,24 34:22 35:3,7,18,20 38:10 39:6,12 40:3,7,12,17, 20 41:19,24

**thorough** 31:22

**those** 5:16 7:13 8:5 11:23 16:19 21:5,10 23:1 24:14 26:7 27:3 30:9,12 31:4 38:21

**three** 15:21

**through** 20:15 21:19 32:21

**time** 5:2 13:7 17:24 21:20 25:15 28:10 31:12 40:8,10

**times** 22:20

**to** 4:17,20,23,24 5:14, 23 6:11,15 7:3,24 8:5, 6 9:16,17,23,24 10:1, 2,3,11,22,23,24 11:14,18,20,21,22 12:2,3,14,17,18 13:6, 13,22 14:4,7 15:5,14, 17,22 16:5,7,9,10,23 17:2,3 18:13 19:4,9, 12 20:1,2,6,10,16,17, 18,19,20,21 21:6,7, 13,16,17,20,22 22:17, 18,21,22 23:2,4,8,13, 16,17,18,19,20,23 24:15,22 25:1,12,16, 19,22,23 26:2,3,7,13, 16,17,18,24 27:5,8,9,

12,13,16,18,21,22 28:2,4,8 29:7,8,9,17, 18 30:1 31:2,12,17 32:5,12,19,20 33:11 34:5,9,11,20,21 35:1, 4,6,19,22,23 36:2,4,8, 18 37:7,15,19,22,24 38:5,6,9 39:1,2,11 40:1,2,5,7,8,12,17 41:19 42:15,16,22 43:7,12

**today** 23:21 38:24

**together** 41:20

**told** 12:20 13:20,23 22:19,20 23:22

**top** 32:11

**track** 40:12

**transcript** 43:12

**trial** 40:4,13 42:20

**trust** 7:11 8:1 12:5 16:2,4 20:22,23 21:23 22:1,2,5,7,10 24:19 25:11 31:13 35:11,15 36:15,16 37:22

**trustees** 22:12

**trusts** 21:8 24:24

**try** 34:5 35:19

**trying** 19:24 23:13 25:1 32:12 36:8

**turn** 20:1

**twelve** 9:4

**Twenty-one** 28:11,14

**twice** 34:23 36:20

**two** 5:13,16 12:13 21:6 23:12 24:4 25:20 26:2 32:21 34:8

---

**U**

**UIDDA** 21:7,19

**unclear** 41:3,16

**under** 10:12 17:3 24:3

**underscore** 14:14 15:7

**underscores** 16:11 18:9

**understand** 14:10 17:14 19:2 25:13 27:22 38:2,4

**understanding** 38:18

12,13,16,18,21,22 28:2,4,8 29:7,8,9,17, 18 30:1 31:2,12,17 32:5,12,19,20 33:11 34:5,9,11,20,21 35:1, 4,6,19,22,23 36:2,4,8, 18 37:7,15,19,22,24 38:5,6,9 39:1,2,11 40:1,2,5,7,8,12,17 41:19 42:15,16,22 43:7,12

**Understood** 16:20

**unfamiliar** 9:18

**unnecessary** 19:16,19

**unsuccessful** 40:9

**until** 25:24

**up** 23:17 26:8,15 27:1 33:22 37:8

**us** 22:4 26:17 28:15 42:15,16

**USA** 21:4

**use** 11:17 41:20

**used** 16:5

**usually** 31:21 32:1

---

**V**

**verification** 32:11

**very** 10:6 13:14 26:23 30:10 35:12 43:1

**via** 14:9 21:7

**vice** 35:20

**view** 19:4,19

**views** 24:10

**violate** 6:4,6 7:8

**violated** 9:22 19:14

**violation** 9:18 10:4

**voluntarily** 40:7

---

**W**

**waive** 11:20 31:3

**want** 14:7 16:7 20:6 42:15,16

**wants** 29:9

**was** 4:24 5:8,13,15,19, 24 8:16,18,22 9:1,7, 10,11,12 10:7 12:3,5, 8,20,22 14:8,10 17:22,24 20:23 21:4, 13,15 22:2,16,17 24:16 25:2,8 26:11, 19,20,23 27:1,5,9 29:21 30:6 34:21 35:1,21 36:2,3 38:20 39:23 40:1,4,6,9,19, 21,24 41:11

**wasn't** 11:2 40:18

**way** 22:3 32:1

**ways** 23:3

**we** 4:19 5:2,8,11 6:5, 15 7:2 10:3 12:21 13:20 15:11,16 18:1 20:1,2,20,21,23 21:7, 19,22 22:2,8,11,19, 20,24 23:1,8,10,15, 22,23,24 24:1,3,11, 19,23 25:1,4,12,21,23 26:9,14,15,18,22,24 27:3,14 28:21,23 29:2,3,6,19,22 30:9 31:5,6,10,22,23,24 33:3,4 34:8,11,12,13, 16,17,18,19,23 35:12, 13,14,21,22 36:11,17, 20,22 38:9,10 39:10, 22 40:7,11,14,15,16 41:22 42:2,7,8

**we'd** 38:14

**we'll** 28:19 39:15 42:20

**we're** 23:13 34:9 35:10,11,15 39:1

**we've** 21:6 22:9,20 23:1 24:5 25:8 30:2 31:22 35:17

**Wealth** 24:21 26:5

**website** 41:21

**week** 33:15 41:23

**well** 4:22 5:1,22 6:14, 18,22 8:18 9:16 11:2, 4,6 12:11 15:19 16:15,19 30:18 31:20 32:18 36:1,13 37:24 38:13 42:19

**went** 21:19

**were** 5:3 7:14 8:11,14, 21 9:22 16:14 18:5,14 20:20,21,24 21:8,13 22:2 23:17 24:13,14, 19,23 25:1,3 26:14,23 30:10,15,17,24 34:8,9 37:20 43:18

**weren't** 16:15

**what** 4:23 5:12,19,24 6:2,12,15 7:3,15,16 10:21 11:11 12:3 13:20,22 14:19,20 15:6,23 17:2 18:4 20:16,18,23 21:22 22:2,10 23:24 30:1,22 31:10 32:4,19 33:1,12

38:1,11 39:1 41:24

**what's** 5:4,6 9:3 13:22 19:21 24:16

**whatever** 12:20 31:23

**whatsoever** 19:8

**when** 6:8 11:15 17:9 18:5 20:16 21:10,19 24:21 25:8,20 26:15 36:9

**where** 7:17,18 8:24 10:3,7 12:19 16:10 17:9 21:2 27:14 30:7 39:22

**where's** 17:13 32:18

**whether** 9:17 23:18 36:16 40:19

**which** 8:3 9:1 18:12 19:5 21:2 25:3 27:9 31:3 35:12 40:8,9

**while** 5:3

**who** 7:6 11:12,16 16:23 17:16,19 19:11 24:17,22 25:22 35:20, 23 38:10

**who's** 4:5

**wholly** 19:16,18

**whom** 25:19

**why** 7:2 12:13 14:12 15:10 16:15 17:1,6 25:12 26:19 31:3 35:13 37:20

**will** 7:6 33:13 39:6 42:23

**William** 4:13 27:16

**with** 4:24 6:9 7:5,7,24 8:9 9:8,13,19,21 11:12,14,18 12:24 13:17,19 17:12,20 18:18 21:1,16 22:17 23:6,18 25:2,3,22 26:1,13 27:14,21 29:13 34:8,15 35:10 39:4

**without** 12:7 19:8,15 39:3

**won't** 23:7,19

**Word** 30:22

**words** 15:22

**work** 30:19 42:18

**worked** 5:1 12:21 13:7

**works** 32:2

**would** 4:20 5:14 6:4,6, 16 7:8 8:23 9:2 11:18 12:1,4,8,13 13:15,22 18:7,20 28:4,7,12,23 29:11 31:12 33:3 35:22 39:10 40:15 43:11,13

**wouldn't** 8:15,23 9:14,16

**write** 15:10

**written** 18:6

**Wrong** 32:8

**wrote** 14:12 26:1

---

**Y**

**yeah** 5:6 6:2 18:16 25:17 28:15 29:1,2,4 32:15 37:10 41:17 42:4,7

**year** 21:24 22:3 24:7 28:15

**yes** 4:19 7:22 8:7 10:19,20 13:8 14:17 15:9 17:5 19:20 20:12 28:9,23 29:11,15 30:13 31:17 33:18 34:7 35:9 36:3 37:2,4, 14 39:9 41:13 42:6, 13,15

**yet** 5:10 12:9,14

**you** 4:9,23 5:14,18 9:16,21,22,23,24 11:11 13:12 14:4,6,7, 12 15:2,3,10 16:2,7,8, 9,10,19,21 17:6 18:5, 6,7,16,17,19,21 19:4, 9,13 20:6,8 27:4 28:2, 7,12,18,23 29:6,11 30:12 31:15 32:3,6,8 33:2,6,14,20,21,22 34:2 35:17 36:1,9,21, 23,24 37:8,12 38:18, 19,22 39:3,7,13,14, 15,17 40:6,19 41:8,20 42:15,16,18,20,23 43:1,4,5,7,8,9,13,15, 16

**you're** 8:24 13:4 14:20,21 20:18 27:5

**You've** 28:1

**your** 4:10,14,19 5:1,7, 17 6:2,5,15 8:24 9:3, 8,12,15 10:1,2 11:5 12:11 13:3,10,12,14 14:5,8,15,18,21 15:2, 9,22 16:9,13,20 17:5, 14 18:17,18,21,23 19:23 20:5,17 22:16, 24 24:4,10,11,16 25:16,18,22 26:14,16, 17 27:7,15,20 28:4,9, 14,23 29:6,13,15 30:6,13,18 32:4,9,24 33:6,8,9,13,18 34:3 35:9 36:9,23 37:21 38:9 39:2 41:24 42:15,21,23 43:2,4

---

**Z**

**Zoom** 4:5