**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RAYMOND E. BUTLER, II, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 25-cv-4443 |
| v. | ) | |
| | ) | Judge April M. Perry |
| ELI JACKFINN EDDI, *et. al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before this Court are three pending motions for sanctions. Docs. 268, 271, 286. For the reasons that follow, the motions for sanctions against Plaintiff Raymond E. Butler II and his attorneys Racine Miller and Katherine London filed by Defendants Rajchenbach and Shabat, Doc. 271, and CIBC Bank USA, Doc. 286, are denied. The motion for sanctions against Plaintiff filed by Defendant Eddi, Doc. 268, is granted.

**BACKGROUND**

The factual and procedural background of this case are summarized in the Seventh Circuit's Order of May 27, 2026. *See Butler v. Eddi*, No. 25-2589, 2026 WL 1480932 (7th Cir. May 27, 2026). In short, Plaintiff alleges that he has been deprived of assets of a trust created by his grandfather. *Id*. at *1. He began litigating this issue in the Circuit Court of Cook County, Illinois in 2022 and continued by filing this lawsuit in the Western District of Michigan in 2025. *Id*. Both the Magistrate Judge and District Judge in the Western District of Michigan believed that Plaintiff had engaged in "harassing and threatening communications" related to the case and therefore issued a protective order barring him from directly communicating about the case with

the defendants and witnesses. *Id*. The District Judge in the Western District of Michigan then stayed the federal case pending the outcome of the state case and transferred the federal case to the Northern District of Illinois. *Id*.

Upon arriving in the Northern District of Illinois, Plaintiff vigorously challenged the stay and protective order before District Judge Georgia N. Alexakis. *Id*. at 2. Specifically, Plaintiff filed in July 2025 an emergency *ex parte* motion to vacate the stay and protective order. Doc. 167. After Judge Alexakis refused to hear the motion *ex parte*, Plaintiff promptly appealed. Docs. 169, 170. That appeal was dismissed for lack of jurisdiction. Doc. 210. Judge Alexakis then held a hearing on the motion and ultimately denied it. Doc. 208. Plaintiff filed another appeal before the Seventh Circuit, which was also unavailing. Docs. 209, 278.

At the same time as he litigated the merits of the case, Plaintiff filed numerous motions to disqualify opposing attorneys and judges. *See, e.g.,* Doc. 223 (Plaintiff's motion to disqualify Judge Alexakis); *Butler v. Eddi*, Case 25-2589 (7th Cir.) Docs. 13, 45 (Plaintiff's motions to disqualify Judge Maldonado and opposing counsel Weintraub). Plaintiff also filed a RICO lawsuit against Judges Alexakis and Maldonado accusing them of obstruction of justice, fraud, and witness tampering. *See Butler v. Alexakis*, 25-cv-10904 (N.D. Ill. filed Sept. 10, 2025). The Seventh Circuit responded to the motion to disqualify Judge Maldonado by finding that Plaintiff's accusations against Judge Maldonado were both "scurrilous and unfounded," and fined Plaintiff's Attorney Katherine London $750, publicly reprimanded her in a written order, and sent a referral to the Attorney Registration and Disciplinary Commission. *See Butler v. Eddi*, No. 25-2589, 2025 WL 3853040 (7th Cir. Nov. 7, 2025).

Judge Alexakis ultimately recused herself from this case due to the RICO lawsuit, which caused the case to be reassigned to the current judge. Docs. 239, 240, 241. Not deterred by her

Seventh Circuit sanctions, Attorney London thereafter filed a motion to disqualify this judge. Doc. 245. That motion was denied on April 9, 2026. Doc. 249. At the time of the hearing on that motion, the Court informed Attorney London as follows:

> To be clear, your motion fails under even the most lenient view of your obligations under Rule 11. … This is your one free pass. I do not like sanctioning attorneys. I think it distracts us from the actual issues in the case, and I think it is highly inefficient. But I will not tolerate any additional frivolous motions. You will be sanctioned, just as the Seventh Circuit has already sanctioned you, if you persist in this type of behavior. You didn't get any warning from the Seventh Circuit; you are getting one from me.

Doc. 250 at 15–16. The Court's warning to Attorney London became moot when on April 17, 2026, the Executive Committee for the Northern District of Illinois suspended Attorney London from practicing law before this Court based on her failure to notify the Executive Committee about her Seventh Circuit sanctions. Doc. 251.

Attorney London's suspension technically left Plaintiff with Attorney Racine Miller as counsel of record. However, Attorney Miller had moved to withdraw from the case in September 2025, shortly after the hearing on the emergency motion to vacate the stay and protective order. Doc. 216. Due to Plaintiff's appeal, Judge Alexakis never addressed Attorney Miller's motion to withdraw. Doc. 227. This judge ultimately granted Attorney Miller's motion to withdraw on May 21, 2026, and Plaintiff elected to proceed *pro se*. Doc. 265.

Following Plaintiff's decision to proceed *pro se*, the Court addressed with Plaintiff a pending motion to disqualify Defendant Eddi's Attorney Robin Maher, which motion had been filed by Attorney London on Plaintiff's behalf. Doc. 285 at 12. The Court informed Plaintiff that he would be sanctioned for pursuing any motions that were frivolous or unsupported or if he used this litigation to abuse the parties, witnesses, or members of the Court's staff. *Id*. at 10. The Court asked Plaintiff if he intended to move forward with the motion to disqualify Attorney Maher. *Id*. at 12. Plaintiff stated that he did want to pursue the motion. *Id*. The Court then

warned Plaintiff that if the Court found the motion to be frivolous, Plaintiff would be sanctioned. *Id*. Plaintiff stated that he was aware of that. *Id*. The Court set a briefing schedule on the motion, and Plaintiff filed his reply brief in support of the motion on June 11, 2026. Doc. 267. Defendant Eddi's motion for sanctions based upon the motion to disqualify followed on June 18, 2026. Doc. 268.

The Court denied Plaintiff's motion to disqualify Attorney Maher on June 26, 2026. Doc. 270. In its order, the Court concluded:

> Plaintiff's motion is long on rhetoric and short on substance. Plaintiff refers to Attorney Maher as "shameless," "audacious," "arrogan[t]," "brazen" "unethical" and having committed "a deliberate assault on integrity." Doc. 226 at 1, 2, 3, 5. He insists that he is not seeking a "tactical advantage" through this motion, Doc. 267 at 4, and the Court agrees. What Plaintiff is instead doing is continuing his campaign of frivolous motions designed to harass anyone involved with the case. *See, e.g.,* Doc. 245 (Plaintiff's motion to disqualify Judge Perry); Doc. 223 (Plaintiff's motion to disqualify Judge Alexakis); *Butler v. Eddi, et. al*., Case 25-2589 (7th Cir.) Doc. 13 (Plaintiff's motion to disqualify Judge Maldonado); Doc. 45 (Plaintiff's motion to disqualify opposing counsel Weintraub); *see also Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 436 (1985) (expressing concern about the "use of disqualification motions to harass opposing counsel").

Doc. 270 at 5.

## LEGAL STANDARD

Rule 11 of the Federal Rules of Civil Procedure requires attorneys and unrepresented parties to certify that their court filings are supported by existing law or nonfrivolous legal arguments, grounded in evidence, and not filed for an improper purpose. *See* Fed. R. Civ. P. 11(b). Courts evaluate potential Rule 11 violations under an objective reasonableness standard, and the imposition of sanctions is discretionary rather than mandatory. *See N. Illinois Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 886 (7th Cir. 2017). Before sanctions may be imposed, the accused party must receive adequate notice and an opportunity to respond, and a moving party must comply with Rule 11's safe harbor provision by allowing the opposing party twenty-one

days to withdraw or correct the challenged conduct. *See* Fed. R. Civ. P. 11(c). In determining whether sanctions are warranted, courts consider factors such as the adequacy of the attorney's pre-filing investigation, the complexity of the facts, the attorney's reliance on the client for factual information, and whether the conduct reflects a pattern of past misconduct. *See Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1028 (7th Cir. 1999). Rule 11 sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." *See* Fed. R. Civ. P. 11(c)(4).

Courts also have inherent authority to sanction misconduct. Sanctions imposed under a court's inherent authority "are appropriate where a party has willfully abused the judicial process or otherwise conducted litigation in bad faith." *Tucker v. Williams*, 682 F.3d 654, 662 (7th Cir. 2012). Inherent authority sanctions must be used "sparingly" to punish misconduct that is "not adequately dealt with by other rules." *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co.*, 313 F.3d 385, 391 (7th Cir. 2002). "[W]hen there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991).

## ANALYSIS

### I. DEFENDANTS RAJCHENBACH'S AND SHABAT'S SANCTIONS MOTION

In July 2026, Defendants Rajchenbach and Shabat filed the pending motion for sanctions based upon Plaintiff's emergency motion to vacate the stay and protective order, which was litigated in August 2025. Docs. 271, 208. Specifically, Defendants request that Plaintiff, Attorney London, and Attorney Miller be issued monetary sanctions and be barred from filing anything in this case without leave of court, and that this case be dismissed with prejudice. Doc. 272.

As a preliminary matter, the Court notes that it is difficult to gain traction on a sanctions motion that is based entirely upon conduct that predates a judge's assignment to the case. This judge, at least, prefers to be able to make findings regarding credibility and good faith (or lack thereof) after having observed the alleged misconduct at issue. This judge also prefers to have the opportunity to give feedback and warnings to attorneys and parties in real-time. The fact is that incompetence, failure of memory, mental illness, lack of preparation, and bad faith can all look very similar on the cold pages of a transcript. Defendants' motion is based on conduct that occurred in or before August 2025—more than a year ago, and more than six months before this judge was assigned to the case. For this reason alone, the Court would be inclined to exercise its discretion and deny Defendants' motion for sanctions.

Additionally, for this judge to sanction behavior that occurred prior to the judge's assignment to the case, the record in support of sanctions would need to be very clear. Here, it is not. At the hearing of which Defendants complain, Judge Alexakis made a lack of credibility finding regarding portions of Plaintiff's testimony but did not make any findings on the record regarding frivolousness or bad faith by either Plaintiff or his counsel.[1] *See* Doc. 218. Given that the judge assigned to the case at the time of the misconduct at issue did not make such findings after having observed the alleged misconduct, this judge will not do so now.

Finally, given the events that have transpired in the last year, sanctioning conduct from August 2025 is unnecessary. For example, since Attorney London's alleged misconduct in August 2025, Attorney London has been fined and publicly reprimanded by the Seventh Circuit,

[1] To the contrary, at several points during the hearing Judge Alexakis made comments arguably inconsistent with a bad faith finding. *See, e.g.,* Doc. 218 at 101 (describing Plaintiff's and his counsels' "erroneous understanding of how preliminary injunction hearings operate"); *id.* at 103 (concluding that Plaintiff's prior testimony that he is the beneficiary of various trusts is "a sincere conviction, a sincere belief").

suspended from the practice of law before the Northern District of Illinois, and referred to the Attorney Registration and Disciplinary Commission for investigation. To the extent that sanctions are intended to deter future misconduct, one would hope that Attorney London (and any who might follow in her footsteps) has been sufficiently chastened. As for Attorney Miller, she moved to withdraw from this case just one week after the hearing on the emergency motion of which Defendants complain and has had no substantive involvement with the case since September 2, 2025.[2] The Court therefore does not conclude that sanctions against Attorney Miller are warranted or necessary to deter future misconduct.[3] Finally, the Court does not believe it appropriate to sanction Plaintiff for litigation positions taken by his attorneys.[4] Parties should be directly sanctioned only for misconduct that is clearly their own. The Court therefore denies Defendants' motion to sanction Plaintiff for the litigation of the emergency motion.

For all of these reasons, Defendants Rajchenbach's and Shabat's motion for sanctions based upon Plaintiff's emergency motion to vacate the stay and protective order is denied.[5]

---

[2] Moreover, Defendants do not specifically identify what misconduct Attorney Miller (as opposed to Attorney London or Plaintiff) is believed to have committed. As already noted, it is difficult enough for this judge to make a bad faith finding when the judge was not present for the relevant proceedings. It is even more difficult when the filing at issue was signed and argued by more than one lawyer.

[3] That said: Attorney Miller's motion to withdraw did not divest her of her obligations to the Court. Local Rule 83.17 of the Northern District of Illinois mandates that an attorney of record may not withdraw without obtaining leave of court. Attorney Miller's choice to disappear from this case immediately upon the filing of her motion to withdraw fell below the standards expected of an attorney appearing before this Court. Miller's motion for her own expenses for having to respond to this motion is therefore denied. Given all that has transpired in this case since Attorney Miller chose not to involve herself in the proceedings, there was support for the motion for sanctions and Attorney Miller should consider herself lucky to have avoided professional repercussions.

[4] Moreover, Federal Rule 11(c)(5)(A) outright prohibits monetary sanctions against a party for frivolous legal arguments presented by his attorney.

[5] On September 15, 2026, non-party CIBC Bank USA filed its own motion for sanctions, based upon Plaintiff's alleged misconduct in 2024 and CIBC's motion to enforce the protective order in August 2025. Doc. 286. Given that CIBC's motion was filed after this opinion was in draft form, the Court did not request full briefing on it. CIBC's motion is denied for the reasons Defendants Rajchenbach's and

## II. DEFENDANT EDDI'S SANCTIONS MOTION

Defendant Eddi's motion for sanctions based upon Plaintiff's motion for the disqualification of Attorney Maher arrives before this Court in a substantially different posture from Defendants Rajchenbach's and Shabat's sanctions motion. Specifically, Plaintiff pursued the disqualification motion *pro se* after having received ample notice that frivolous motions would not be tolerated. Plaintiff chose to pursue his motion to disqualify Attorney Maher even after: (1) this judge denied another motion for disqualification and issued a warning that she would "not tolerate additional frivolous motions," Doc. 250 at 15;[6] (2) Plaintiff's attorney was sanctioned for similar misconduct; and (3) this judge gave Plaintiff the option to abandon the motion and explicitly warned Plaintiff that if the Court found the motion to be frivolous, Plaintiff would be sanctioned, Doc. 285 at 12. Moreover, Plaintiff did not just rest on his counsel's previously-filed brief; he also filed a *pro se* brief in strident support of the motion. *See* Doc. 267. Thus, there is no plausible argument that only Plaintiff's attorneys were to blame for the motion, or that Plaintiff was not on notice regarding the possibility of sanctions if he continued to advance frivolous arguments.[7]

---

Shabat's motion is denied. CIBC's motion for sanctions is in fact on weaker ground, given that Judge Alexakis outright denied CIBC's contemporaneous request for fees. Doc. 218 at 114. That the denial was without prejudice likely indicates that Judge Alexakis wanted to leave open the door to consider sanctions at a later time, after evaluating whether there had been any future misconduct. But CIBC does not allege that there has been any misconduct by Plaintiff since August 2025. As for CIBC's argument that it is entitled to fees under Rules 26(c)(1) and 37(a)(5), these rules apply to payment of expenses related to motions to obtain protective orders, not motions for sanctions after a party has violated a protective order. CIBC did not file the motion to obtain the protective order; that was filed by Defendants Rajchenbach and Shabat. *See* Doc. 88.

[6] Although Plaintiff was not present at this hearing, he filed a motion to correct the transcript on May 1, 2026, which motion stated that Plaintiff had conducted a "careful review" of the transcript of the proceeding. *See* Doc. 254 at 2.

[7] Plaintiff argues that he did not get the benefit of Rule 11's twenty-one-day safe harbor before Defendant Eddi's motion for sanctions was filed. The Court disagrees. On May 14, 2026, Defendant Eddi's counsel sent Attorney Miller a letter requesting the withdrawal of the motion to disqualify and arguing that the

Additionally, the disqualification motion regarding Attorney Maher was objectively unreasonable. As previously outlined in the Court's opinion denying that motion, which is incorporated herein by reference, the motion was unsupported by credible facts and was instead frivolous and designed to harass Attorney Maher. Doc. 270 at 5. In reaching this conclusion, the Court finds it relevant that the motion was brought after three unsuccessful disqualification motions in the federal case and three disqualification motions in state court.[8] In fact, at the time Plaintiff chose to pursue the disqualification motion in this Court, a motion to disqualify Attorney Maher on the same grounds had already been denied by the Illinois state judge. That judge concluded that the motion had no apparent basis in fact. Doc. 268 at 69.[9] But Plaintiff was undeterred and continued his campaign of aggression rather than good faith argument.

The Court further finds it a significant aggravating factor that Plaintiff's inappropriate rhetoric is not confined to arguments in filings or the courtroom. This judge is now the third to conclude that Plaintiff's out-of-court statements are abusive and serve no legitimate purpose. Plaintiff was already directed by both the Magistrate Judge and District Judge in the Western District of Michigan to stop harassing and threatening communications with witnesses and defendants. Now, Defendant Eddi has presented evidence—which Plaintiff has not challenged—

---

motion was frivolous. Doc. 268 at 57–58. Plaintiff himself responded to the letter on May 17, 2026, stating "[t]here will be no withdrawal of the motion for Disqualification of Sanctions, and I will show NO mercy for Robin Mahar [sic]"). Doc. 268 at 52. Defendant Eddi then served a copy of the proposed sanctions motion on Plaintiff on May 26, 2026 and filed it on June 18, 2026, more than twenty-one days later. Docs. 268; 269. Plaintiff's argument that the sanctions motion was filed (as opposed to served) on May 26, 2026, Doc. 274 at 3, is totally unsupported by the record.

[8] The Court takes judicial notice of the docket in Cook County Case No. 2022CH00675, which shows a June 16, 2025 motion to disqualify opposing counsel, a September 23, 2025 motion to disqualify opposing counsel, and a December 17, 2025 motion to disqualify the judge.

[9] Plaintiff was present via Zoom for the state court hearing on the motion to disqualify Attorney Maher. *See* Doc. 268 at 65. At that hearing, the state court judge noted the same problem with the disqualification motion that this Court had; namely, that Plaintiff's affidavit and email to Attorney Carey did not support a finding that he had disclosed any confidential information to Attorney Carey. *See, e.g.*, *id.* at 67–68.

that instead of just litigating the motion to disqualify, Plaintiff sent an email to more than 150 partners and employees of Attorney Maher's law firm stating that they would "be added as named Defendants in a federal RICO action for tortious interference, breach of fiduciary duties to a prospective client, and RICO predicate acts." Doc. 268 at 21–24; 18–19. Plaintiff also threatened to refer them for "criminal contempt." *Id*. at 24. This type of communication clearly crosses the line from zealous and aggressive good faith advocacy to vexatious harassment.

For all of these reasons, Defendant Eddi's motion for sanctions against Plaintiff is granted. Plaintiff is ordered to pay reasonable attorneys' fees and costs attributable to the motion to disqualify Attorney Maher, accruing from May 21, 2026, the date that Plaintiff was granted permission to proceed *pro se* and indicated that he would pursue the motion himself. To the extent Plaintiff files future frivolous motions or harasses or abuses those involved in the litigation of this case, further sanctions will follow, including possible dismissal of this action.[10] The Court declines Defendant Eddi's request to issue a filing bar against Plaintiff at this time, as this case is stayed and no filings are authorized in any event. As for Defendant Eddi's request for a bar against Plaintiff filing additional RICO actions, that is outside of this Court's power. However, Plaintiff should take note that he seems to have a fundamental misunderstanding about what a sustainable RICO action entails. Plaintiff is encouraged to read Practice Series: RICO A Guide to Civil RICO Litigation in Federal Courts, available at https://www.jenner.com/a/web/taV21sfHsERD37g5Wk8dA6/4HRMZQ/2021_RICO_Guide.pdf, before filing or threatening to file any additional RICO actions. Failure to do so may result in future judges reaching the conclusion that Plaintiff's filing of unsupportable RICO causes of

[10] Plaintiff correctly argues that Rule 11 does not govern threats that occur outside of court filings and arguments made pursuant to such filings. This is true. But the Court has inherent authority to sanction litigation abuses that occur outside of the docket and courthouse and will do so.

action is done out of malice, rather than ignorance.

Dated: September 17, 2026

April M. Perry

APRIL M. PERRY
United States District Judge